**23-1699**

---

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

---

**OPERATING ENGINEERS' LOCAL 324
FRINGE BENEFIT FUNDS;  TRUSTEES
OF THE OPERATING ENGINEERS' LOCAL
324 FRINGE BENEFIT FUNDS,**

*Plaintiffs-Appellants,*

v.

**RIETH-RILEY CONSTRUCTION CO., INC.,**

*Defendant-Appellee.*

---

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Hon. David M. Lawson
Case No. 20-10323

---

**APPELLANTS' BRIEF**

---

Nancy H. Pearce (P38323)
Daniel G. LeVan (P48776)
FINKEL WHITEFIELD FELDMAN
32300 Northwestern Highway, Ste. 200
Farmington Hills, MI  48334
(248) 855-6500
npearce@fwf-law.com
dlevan@fwf-law.com

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Sixth Circuit Case Number: 23-1699

Case Name:    Operating Engineers' Local 324 Fringe Benefit Funds; Trustees of
the Operating Engineers' Local 324 Fringe Benefit Funds v. Rieth
Riley Construction Co., Inc.

Pursuant to 6 Cir. R. 26.1, Operating Engineers' Local 324 Fringe Benefit Funds
and Trustees of the Operating Engineers' Local 324 Fringe Benefit Funds make the
following disclosure:

1. Are either of said parties a subsidiary or affiliate of a publicly owned
corporation?  If yes, list the identity of the parent corporation or affiliate and
the relationship between it and the named party:

   NO

2. Is there a publicly owned corporation, not a party to the appeal, that has a
financial interest in the outcome?  If yes, list the identity of such corporation
and the nature of the financial interest:

   NO

/s/ Nancy H. Pearce
Nancy H. Pearce (P38323)
Attorney for Operating Engineers' Local 324
Fringe Benefit Funds

ii

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ................................................................................ ii

TABLE OF AUTHORITIES .....................................................................v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................................... ix

STATEMENT OF JURISDICTION...........................................................1

STATEMENT OF ISSUES ......................................................................2

STATEMENT OF THE CASE..................................................................5

    A.   The Parties .............................................................................5

    B.   The Trust Agreements and their Audit and Collection Provisions ...........6

    C.   The Collective Bargaining Agreement and Related Events......................8

    D.   The Audit Requests ................................................................11

    E.   The NLRB Matters Did Not Involve Fund Contribution Claims ............13

    F.   The Prior District Court Proceedings .........................................14

    G.   The Prior Appeal And Remand Order..........................................15

    H.   District Court Proceedings After Remand ...............................15

    I.   The District Court's Summary Judgment Opinion and Funds' Notice of Appeal.....................................................................17

SUMMARY OF THE ARGUMENT .........................................................18

ARGUMENT .......................................................................................25

I.    STANDARD OF REVIEW .............................................................25

II.   THE FUNDS' TRUST AGREEMENT AUDIT RIGHTS AND OBLIGATIONS ARE REQUIRED AND ENFORCEABLE UNDER ERISA AND LMRA 301 ...................................................................26

III.  THE LOWER COURT ERRED IN DISMISSING THE FUNDS' CLAIMS TO AUDIT PRE-CBA-EXPIRATION TIME PERIODS (BEFORE 6/1/18)..........................................................................30

    A.   The Funds Pled Valid Claims To Audit Pre-CBA-Expiration Time Periods ...............................................................................30

    B.   The Funds Did Not Forfeit Pre-Expiration Audit Claims.......................33

    C.   The Funds May Audit Pre-Expiration Time Periods After Expiration....33

IV. THE LOWER COURT ERRED IN DISMISING THE FUNDS' CLAIMS TO AUDIT POST-CBA-EXPIRATION TIME PERIODS (FROM 6/1/18 FORWARD) ................................................................................... 36

    A. The Plan Documents Require Employer Audits Enforceable Under ERISA and/or LMRA § 301 .................................................... 37

    B. Sixth Circuit Precedent Permits Fund Collection Actions After Expiration of a Labor Agreement Where the Employer's Conduct Evidences its Intent to Comply With the Expired Agreement's Benefit Provisions ............................................................................ 38

    C. This Court's Opinion in General Materials Did Not Preclude Consideration of Defendant's Fringe Benefit Report Certifications ....... 41

    D. The Trust Agreements Survived Expiration of the CBA ........................ 45

    E. The Lower Court Erred In Finding a Lack of Required Mutual Assent To Contract Based on the Funds' and/or Union's Conduct At Issue in the *Thompson* Litigation ........................................................ 46

    F. Mutual Mistake ........................................................................................ 50

    G. The Lower Court Erred In Dismissing The Funds' LMRA Section 301 Claims ...................................................................................................... 51

    H. The Funds Did Not Forfeit Their LMRA Claims ................................... 52

CONCLUSION ........................................................................................................ 54

CERTIFICATE OF COMPLIANCE ...................................................................... 55

CERTIFICATE OF SERVICE ................................................................................ 56

# TABLE OF AUTHORITIES

## Cases

Alexander v. CareSource, 576 F.3d 551 (6th Cir. 2009)..........................................25

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...........................................25

Auciello Iron Works, Inc v NLRB, 517 U.S. 781 (1996).......................................48

Bldg. Serv. Emps. Pension Tr. v. Horsemen's Racing Ass'n,
   609 F. Supp. 1075 (N.D. Cal. 1985).......................................................................36

Cent. States Areas Pension Fund v. Kraftco, Inc.,
   799 F.2d 1098 (6th Cir. 1986)..............................................................................35

Cent. States Pension Fund v. Gen. Materials, Inc.,
   535 F.3d 506 (6th Cir. 2008)......................................... 23, 24, 41, 42, 43, 45, 46

Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.,
   883 F.2d 454 (6th Cir. 1989)..3, 18, 22, 23, 24, 25, 27, 30, 33, 34, 37, 38, 39, 44,
   49, 50, 51

Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,
   472 U.S. 559 (1985) ....................................................... 18, 19, 21, 27, 28, 34, 37

Cincinnati, I. & W.R. Co. v. Indianapolis Union Ry. Co.,
   36 F.2d 323 (6th Cir. 1929).................................................................................50

DeMarco v. C & L Masonry, Inc.,
   891 F.2d 1236 (6th Cir. 1989)...................................................................... 28, 37

Iron Workers Plan v Carter Construction,
   530 F.Supp.2d 1021 (N.D. Ill. 2008)...................................................................48

JGR, Inc. v. Thomasville Furniture Indus., Inc., 550 F.3d 529 (6th Cir. 2008)......33

John Deklewa & Sons, 282 NLRB 1375 (1987), *enforced sub nom.*,
   Iron Workers Local 3 v NLRB, 843 F.2d 770 (3rd Cir. 1988) .............................48

Litton Printing v. NLRB, 501 U.S. 190 (1991) ................................................ 21, 35

Luterbach Constr. Co, 315 NLRB 976 (1994)...........................................................48

Merrimen v. Paul F. Rost Elec., Inc., 861 F.2d 135 (6th Cir. 1988) ............... 40, 49

Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Nw. Const., Inc.,
    116 F.3d 1480 (6th Cir. 1997).................. 3, 23, 37, 38, 39, 40, 42, 46, 49, 50, 51

Nw. Adm'rs, Inc. v. Midland Trucking,
    2006 WL 2192220 (W.D. Wash. July 31, 2006)...................................................36

Op. Eng. 324 Health Care Plan v. G & W Const.,
    783 F.3d 1045 (6th Cir. 2015).............................................................................35

Operating Engineers' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.,
    Inc., 2023 WL 4409096, at *1 (E.D. Mich. July 6, 2023)...................................17

Orrand v. Scassa Asphalt, Inc., 794 F.3d 556 (6th Cir. 2015).................................25

Plumbers, Pipe Fitters v. B & B Mech. Servs., Inc.,
    813 F.3d 603 (6th Cir. 2015)............................................. 3, 23, 24, 37, 42, 44, 50

Rieth-Riley Constr. Co. v. Operating Engineers' Loc. 324 Fringe Benefit Funds,
    143 S. Ct. 775, 215 L. Ed. 2d 46 (2023) .............................................................15

Robbins v. Lynch, 836 F.2d 330 (7th Cir.  1988)......................................................40

Rudd v. Baker Furniture,
    967 F. Supp. 984 (M.D. Tenn. 1997) .......................................... 21, 30, 33, 34, 36

Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.,
    920 F.2d 1491 (9th Cir. 1990)..............................................................................29

Schneider Moving and Storage Co. v. Robbins, 466 U.S. 364 (1984)....................52

Scott v. Harris, 550 U.S. 372 (2007) .......................................................................25

Shumate v. City of Adrian, Michigan, 44 F.4th 427 (6th Cir. 2022) ......................25

<u>Trustees the Painters Union Deposit Fund v. Euginio Painting Co.</u>,
    2023 WL 6850570 (E.D. Mich. Oct. 17, 2023) ...................................... 21, 30, 34

<u>United States v. Morris</u>, 259 F.3d 894 (7th Cir. 2001) ............................................33

<u>Van Gunten v. Cent. States, Se. & Sw. Areas Pension Fund</u>,
    672 F.2d 586 (6th Cir. 1982) .......................................................................... 19, 26

## Statutes

28 U.S.C. § 1291 ............................................................................................................1

29 U.S.C. § 1002(37) ....................................................................................................5

29 U.S.C. § 1104(1)(D) ................................................................................... 19, 29, 30

29 U.S.C. § 1132(a)(3) ..................................................................... 22, 27, 34, 37

29 U.S.C. §1145 .............................................................................. 22, 26, 34, 37

Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ...................5

ERISA Section 502(a), 29 U.S.C. § 1132(a) ................................................... 27, 37

ERISA Section 502(e), 29 U.S.C. § 1132(e) ...........................................................27

LMRA Section 301(a), 29 U.S.C. § 185(a) ............................................. 27, 37, 52

Taft Hartley Act, 29 U.S.C. § 186, LMRA § 302, *et seq.* .......................................5

## Rules

6 Cir. R. 28(b)(1)(A)(i) ..............................................................................................57

6 Cir. R. 30(g)(1) .........................................................................................................57

6 Cir. R. 32(b) ..............................................................................................................55

Fed. R. Civ. P. 56(a) ...................................................................................................25

Fed.R.App.P. 3(a)(1) .....................................................................................................1

Fed.R.App.P. 32(a)(5) ................................................................................................55

Fed.R.App.P. 32(a)(6)...........................................................................55

Fed.R.App.P. 32(a)(7)(B) ....................................................................55

Fed.R.App.P. 32(f)...............................................................................55

Fed.R.App.P. 4(a)(1)(A) ........................................................................1

Fed.R.Civ.P. 56 ..................................................................................40

## Regulations

29 CFR § 2530.200b-2(a) .............................................................. 19, 26

## Other Authorities

DOL Class Prohibited Transaction Exemption (PTE) 76-1 ............................ 18, 26

DOL/EBSA Field Assistance Bulletin No. 2008-0 ................................................18

Restatement (Second) of Contracts § 153.................................................51

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellants request oral argument. The case already has been litigated in the lower court and appealed to this Court on a previous occasion. There are distinct issues raised by the present appeal and differences between the initial proceedings and post-remand proceedings, along with the other district court proceedings involving the Funds discussed in the lower court's opinion at issue in the present appeal, that will benefit from oral argument.

## STATEMENT OF JURISDICTION

On July 7, 2023, the district court entered its Opinion and Order Granting Defendant's Motion for Summary Judgment, Denying Plaintiffs' Motion for Summary Judgment, and Dismissing Case With Prejudice, dated July 6, 2023, *R.* 86, Page ID# 4072-4101, and on July 18, 2023, entered a corresponding Corrected Judgment[1] dismissing the case with prejudice. *R.* 88, Page ID# 4103. This was a final decision appealable as of right by filing a notice of appeal within 30 days after the judgment or order appealed from. 28 U.S.C. § 1291; Fed.R.App.P. 3(a)(1); Fed.R.App.P. 4(a)(1)(A). On August 2, 2023, the Funds filed a timely Notice of Appeal. *R.* 90, Page ID# 4105-4107.

---

[1] The district court previously filed a document entitled "Judgment" on July 18, 2023, but replaced it with the Corrected Judgment. *See* Order Striking Judgment, *R.* 89, Page ID# 4104.

## STATEMENT OF ISSUES

1.    Whether the district court erred in issuing its Opinion and Order Granting Defendant's Motion for Summary Judgment, Denying Plaintiffs' Motion for Summary Judgment, and Dismissing Case With Prejudice [*R.* 86]?

> Plaintiff/Appellant Funds answer "yes"
> Defendant/Appellee Rieth Riley answers "no"
> The District Court would answer "no"

2.    Whether Defendant's participation in and contributions to the Funds on behalf of its employees give rise to audit obligations under the Funds' Trust Agreements which are enforceable under ERISA, pursuant to the provisions of and policies underlying ERISA?

> Plaintiff/Appellant Funds answer "yes"
> Defendant/Appellee Rieth Riley answers "no"
> The District Court answered "no"

3.    Whether the Funds pled claims to audit periods prior to the expiration of the Road Agreement (the "CBA"), where, *inter alia*, the Funds' Complaint expressly requests the court to compel an audit covering periods prior to the expiration of the CBA as to several of Defendant's locations in Michigan?

> Plaintiff/Appellant Funds answer "yes"
> Defendant/Appellee Rieth Riley answers "no"
> The District Court answered "no"

4.    Whether the Funds have legally valid claims to audit periods prior to expiration of the CBA, where, *inter alia*, the parties undisputedly were subject to a

"live" labor agreement during that period and courts within this and other Circuits repeatedly have found audit rights to survive the expiration or termination of a labor agreement?

> Plaintiff/Appellant Funds answer "yes"
> Defendant/Appellee Rieth Riley answers "no"
> The District Court answered "no"

5.      Whether there is a sufficient contractual basis for the Funds' claims under ERISA and/or LMRA § 301 to audit periods after the May 31, 2018 expiration of CBA, where, *inter alia*:

> a.  The Trust Agreements containing the audit obligation are *plan documents* that are enforceable by plan trustees under ERISA's express enforcement provisions.  *See, e.g.,* 29 U.S.C. § 1132(a)(3) (allowing a civil action "to enforce any provisions of this subchapter or <u>the terms of the plan</u>") (emphasis added); 29 U.S.C. §1145;

> b.  Defendant has repeatedly and unequivocally agreed in writing to comply with the fringe benefit provisions of the expired CBA and the Funds' Trust Agreements containing the audit obligations in its fringe benefit reports submitted after the expiration;

> c.  The Funds have accepted all Defendants' contributions and fringe benefit report certifications submitted after the expiration;

> d.  Sixth Circuit precedent allows post-expiration fund collection actions under the facts of this case.  E.g., <u>Behnke</u>, <u>Bricklayers</u>, <u>B&B Mechanical</u>.

> Plaintiff/Appellant Funds answer "yes"
> Defendant/Appellee Rieth Riley answers "no"
> The District Court answered "no"

3

6.      Whether the district court erred in dismissing the Funds' claims based on conduct of the Funds over a four-month period resulting from the mistaken belief of all involved parties as to the legal bargaining status of Defendant, where, *inter alia*, the Funds accepted all the contributions and fringe reports (going forward and retroactively back to the date of expiration) upon discovery of Defendant's 9(a) status, and if Defendant correctly had disclosed its 9(a) status from the beginning the contributions would have continued without objection by the Funds, and cases permitting an ERISA action clearly would apply.    Behnke, Bricklayers, B&B Mechanical.

> Plaintiff/Appellant Funds answer "yes"
> Defendant/Appellee Rieth Riley answers "no"
> The District Court answered "no"

7.      Whether the Fund retained its right to bring substantive LMRA claims on remand from this Court's earlier opinion in this case despite the footnote in its opinion regarding the Funds' LMRA arguments, where, *inter alia*, the earlier district court dismissal and appeal dealt solely with a preliminary issue of whether there was subject matter jurisdiction for the district court to hear the claims, not the merits of the claims, and the Funds submit this Court intended only that the Funds waived LMRA arguments for purposes of the earlier appeal.

> Plaintiff/Appellant Funds answer "yes"
> Defendant/Appellee Rieth Riley answers "no"
> The District Court answered "no"

## STATEMENT OF THE CASE

### A. The Parties

The Plaintiff-Appellant Fringe Benefit Funds consist of seven independent multiemployer fringe benefit funds (the "Funds"), established pursuant to individual Trust Agreements, to provide benefits to employees in accordance with collective bargaining agreements or other written agreement to make contributions to the Trust Funds.  *See* Trust Agreements, *R.* 77-2 through 77-7, PageID 3436-3609,[2] at p. 1, Art. I, Definitions – Employer or Contributing Employer ¶ (b).  The Funds provide medical, vacation, and retirement benefits, and training and other benefits for their participants and beneficiaries under benefit plans.  The Funds were created and are governed under the Taft Hartley Act, 29 U.S.C. § 186, LMRA § 302, *et seq.*, and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").  They are "multiemployer" funds under ERISA.  29 U.S.C. § 1002(37).

The Funds are jointly sponsored by the Union and multiple employer associations. *See, e.g.*, Trust Agreements, *R.* 77-2 through 77-7, PageID 3436-3609.  As required by the Taft-Hartley Act, the Funds are administered by joint Boards of Trustees, half of whom are Employer Trustees appointed by the employer

---

[2]The Trust Agreements for each of the Funds are included in the record below as follows:   *R.* 77-2, PageID 3436-3471 (Pension Fund);   *R.* 77-3, PageID 3472-3494 (Health Care Plan);   *R.* 77-4, PageID 3495-3518 (Retiree Benefit Fund);   *R.* 77-5, PageID 3519-3547 (Defined Contribution Pension Plan);   *R.* 77-6, PageID 3548-3573 (JATF);   *R.* 77-7, PageID 3574-3609 (Vacation).

5

associations and half of whom are Union Trustees appointed by the Union.  No action may be taken by the Funds in the absence of majority Trustee support of each Fund's Board of Trustees.  *See id.,* at p. 4, Trust Agreements, Art. IV – Action by Trustees, Sec. 1;  First Amended Complaint ("FAC"), ECF 12, Page ID# 61-72;  10-6-20 LaLonde Declaration, ¶4, *R.* 77-11, PageID 3664-3669.  As required by Taft-Hartley, each of the Funds, the Union, and Associations, are completely separate and distinct entities.  As discussed in more detail, *infra*, the Funds are regulated and obligated under ERISA to monitor and enforce contribution obligations.

Defendant-Appellee Rieth-Riley Construction, Inc. ("Defendant" or "Rieth-Riley") is a large road construction contractor and contributing employer to the Funds.

### B.    The Trust Agreements and their Audit and Collection Provisions

The Agreements and Declarations of Trust ("Trust Agreements") are the documents establishing each of the Funds, their governing bodies, their scope of operation and certain legal rights and obligations.  The Funds thus operate through their respective Trust Agreements, the terms of which are substantially the same for each of the Funds.  *See* Trust Agreements, *R.* 77-2 through 77-7, PageID 3436-3609. Under the Trust Agreements, the definition of Employer includes any "Employer engaged in work coming within the jurisdiction of the Union who contributes to the Trust Fund or who is obliged by a collective bargaining agreement, or other written

agreement, to make Contributions to the Trust Fund." *Id.*, Trust Agreements, p.1

(emphasis added); 10-6-20 LaLonde Declaration, ¶16, *R.* 77-11, PageID 3664-3669.

Each Trust Agreement requires employers to produce records for audit as

follows:

> Each Employer shall promptly furnish to the Trustees on request, or
> upon established periodic intervals, any and all records concerning the
> classification of his/her Employees, their names, social security
> numbers, amounts of wages paid and hours worked and any other
> payroll records and information that the Trustees may request in
> connection with the administration of the Trust Fund and Pension Plan
> and for no other purpose. The Trustees or their authorized
> representative may examine the payroll books and other relevant
> records of each Employer whenever such examination is deemed
> necessary or advisable by the Trustees in connection with the proper
> administration of the Trust and the collection of Contributions claimed
> to be due or past due from such Employer.

*See* Article VII, Section 1 of each Trust Agreement, *R.* 77-2 through 77-7, PageID

3436-3609, at p. 9.

The Trust Agreements also require employers to comply with "any policy

and/or procedure adopted by the Trustees from time to time regarding the

enforcement and collection of Contributions, in addition to all other contractual and

legal remedies available to the Trustees." *Id.*, Article VII, Section 2 of each Trust

Agreement.  In turn, the Funds enacted a Policy on Payment of Employer

Contributions and Audit Procedures (the "Policy on Payment"), addressing

employer obligations.  10-6-20 LaLonde Declaration ¶17, *R.* 77-11, PageID 3664-

3669;  Policy on Payment, *R.* 77-8, PageID 3610-3615.[3]

The Policy on Payment specifies that the Funds shall audit employers "for the

purpose of verifying the accuracy of contributions paid to the Funds and for any

other purpose deemed appropriate to further the Funds' Trustees' performance of

their duties." *Id.* at p.3, ¶1.  The Policy on Payment also authorizes the Funds to

"select an Employer for audit at any time."  *Id.*

The Policy on Payment also describes records required for audit:

> At the request of the Funds, each Employer shall promptly furnish to
> the Funds, or a designated representative, all records of the Employer,
> including documents reflecting the payment of wages, fringe benefit
> contributions and any amounts paid to subcontractors, as well as the
> number of hours worked by employees or other persons performing
> work for the Employer, regardless of craft or occupation, or how
> classified by the Employer . . . .

*Id.*, at p.3, ¶2.  It also enumerates records subject to audit, including records relating

to transactions with subcontractors as well as other records that the Funds reasonably

request.  *Id.* at p. 3-5.

### C.    The Collective Bargaining Agreement and Related Events

---

[3]The Policy on Payment quoted herein was adopted in December 2018, *R.* 77-
8, PageID 3610-3615, and included only minor revisions of previous versions from
2016 and 2008.  *See* 2016 Policy on Payment, *R.* 84-2, PageID 4059-4064;  2008
Policy on Payment, *R.* 84-3, PageID 4065-4070, which Fund records indicate were
mailed to contributing employers including Defendant.  *See*, Funds' Rply. In Sprt.
Of SJ Motion at p. 3, *R.* 84, PageID 4052.  The present 2018 version did not
substantively change the audit obligations from the previous policies.

On March 14, 2013, the Union and the Michigan Infrastructure and Transportation Association ("MITA") (one of the sponsoring Associations of the Funds at that time) entered into a multiemployer collective bargaining agreement with the Union referred to as the Road Agreement. Road Agreement, *R.* 77-9, PageID 3616-3661. MITA acted as the Association members' representative in the negotiation of the Road Agreement (on behalf of its individual members who authorized MITA to so act). *Id.* p. 1. The Road Agreement is known as a "multiemployer" agreement because it covers a number of different employers – as opposed to an individual collective bargaining agreement negotiated and entered into between a single employer and the Union. Defendant was one of the employers bound by the Road Agreement, and its relationship with the Union was governed by Section 9(a) of the National Labor Relations Act. Road Agreement; 10-6-20 LaLonde Declaration ¶5, *R.* 77-11, and discussion, *infra*.

Under the Road Agreement, Defendant was required to pay fringe benefit contributions to each of the Funds based on hours worked and income earned by its employees. Road Agreement, p. 26-29, *R.* 77-9, PageID 3644-3647. Rieth-Riley also agreed in the Road Agreement to comply with all other requirements established by the Funds' Trustees. Road Agreement, Art. V, p. 26, *R.* 77-9, PageID 3644. MITA terminated the Road Agreement on behalf of numerous employers, including Defendant, effective May 31, 2018, when it sent the Union timely notice pursuant to

the CBA's termination provisions.  *See* Road Agreement, p. 38, *R.* 77-9, PageID 3656.  Thereafter, in submitting monthly contributions to the Funds, Defendant agreed in each of its Fringe Benefit Report Certifications to comply with the Funds' Trust Agreements.

For every month from June 2018 and continuing to date, Defendant has paid fringe benefit contributions to the Funds based on hourly work performed by its employees that Defendant contends were covered under the Road Agreement.  *See, e.g.*, Ex. 10, 10-6-20 LaLonde Declaration p. 2-3; Ex. 11, 12-16-22 LaLonde Declaration.

Further, from June 2018 and continuing to date, Defendant submitted hundreds of separate Fringe Benefits Reports ("Reports") to the Funds from its six offices in Michigan for work performed every month from June 2018 through September 2022.  The Reports stated the names of employees and detailed their hours worked and wages earned.  10-6-2- LaLonde Declaration ¶11, *R.* 77-11, PageID 3667; 12-16-22 LaLonde Declaration, *R.* 77-12, PageID 3670-3673; Reports, *R.* 77-13, *R.* 77-14 & *R.* 77-15, Page ID 758 through 1493;  *R.* 27-3 through 27-9, PageID 758 through 1493.  On each of its Fringe Benefits Reports for work from June 2018 onward, Defendant expressly denoted that the work performed was covered by the Road Agreement.  *Id.*

Each of the Fringe Benefits Reports Defendant submitted to the Funds for

work from June 2018 onward contained language of agreement, immediately above

the Employer signature line, which stated as follows:

> By filing this report, the above-named Employer certifies the accuracy
> of information of the report and agrees to be bound by all terms of
> payment to the foregoing named Funds, as set forth in the current
> applicable Collective Bargaining Agreements between Operating
> Engineers Local 324 and Employer Associations, and to all the terms
> of the Trust Agreements of these Funds.

*See* 10-6-20 LaLonde Declaration ¶11, *R.* 77-11, PageID 3667; 12-16-22 LaLonde

Declaration, *R.* 77-12, PageID 3670-3671; Fringe Benefits Reports, *R.* 77-13, *R.* 77-

14 & *R.* 77-15 & Page ID 758 through 1493. The Funds accepted the contributions

and Reports and an authorized representative of Defendant signed beneath this

certification on many of the Reports that had space for a signature. *Id.*

For work from June 2018 onward, Defendant continued to comply with

certain provisions in the Funds' collection policies, including the policies on

underpayments and overpayments of fringe benefit contributions, by paying

underpayments and taking credits for overpayments after receiving notices from the

Funds' offices. *E.g.,* 10-6-20 LaLonde Declaration ¶ 15, *R.* 77-11; 12-16-22

LaLonde Declaration ¶7, *R.* 77-12, PageID 3670-3673.

### D. The Audit Requests

In accordance with the Funds' Trust Agreements, on October 1, 2019, the

Funds, through their payroll auditors, requested an audit of the records of

Defendant's locations in Michigan for periods of time since the most recent audits,

11

from January or June 2016, 2017 or 2018 through the present. Audit Letter, *R.* 77-10, PageID 3662-3663;  Auditor Declaration ¶3, *R.* 77-16, PageID 3929-3932. *See, also,* 10-6-20 Auditor Dec., *R.* 27-17, PageID 1667-1668. Thus, the audit request was not limited to periods after the May 31, 2018 expiration of the Road Agreement. Three of the locations had audit time frames starting *before* June 2018, *i.e.* Charlevoix (January 2017 through present), Lansing (January 2017 through present), and Ada (January 2016 through present). *Id.*

The Funds seek to enforce the audit requested in the October 1, 2019 correspondence, and to require Rieth-Riley to pay any shortfalls discovered by the auditors from the audit.   Complaint ¶ 18-19 & relief requested ¶ 1 & 2 [ECF 12, PageID# 67-68, 70-71];  Nichols Declaration, *R.* 77-16, PageID 3929-3932.

Although Defendant produced some of the documents requested in the audit letter for each of the locations, it has not produced all the documents requested. Defendants produced some payroll records of only those employees whom it selected. It also failed to produce records requested of subcontractors, information about jobs and equipment used on them, Federal and Michigan tax forms, payroll records of all employees and even the identities of all employees operating equipment covered under the Road Agreement. Auditor Declaration ¶4, *R.* 77-16, PageID 3929-3932.

12

Defendant refuses to specifically explain or describe the group of employees on behalf of whom it has produced information in response to the audit requests, or the distinguishing facts used in determining such employees (e.g., job tile, job duties, date of hire, prior Union membership, etc.), but states that it will supplement "should Plaintiffs prove they are contractually entitled to contributions and/or an audit in the first instance."  Df's Resp. to 2d Rogs, No. 11-12, p. 12-14, *R.* 77-18, PageID 3951-3953.

Moreover, there is reason to believe that Defendant, from 2017 and possibly after, utilized management employees (sometimes referred to as "ESOP" employees) to operate machinery covered under the Road Agreement.  *See*, *e.g.,* 12-16-22 LaLonde Declaration ¶ 8-9, *R.* 77-12, PageID 2-3.  To the extent these employees performed bargaining unit work, contributions are owing in relation to the number of hours worked.  *See, e.g.,* Road Agreement, Art. IV, ¶ 1, *R.* 77-9, PageID 3625 (an employee is covered when  "assign[ed]" to perform work "on equipment covered under the terms of this Agreement").

### E.   The NLRB Matters Did <u>Not</u> Involve Fund Contribution Claims

This lower court's prior decision in this matter (pre-remand) started from an *incorrect* conclusion that "the Funds are currently litigating [Defendant's] deficient contributions before the NLRB."  Opinion, *R.* 62, Page ID# 2380, 2386, 2392.  The Court was mistaken in this respect.  The Funds were not parties to the NLRB matters,

and the Funds made no claim for contributions or audit in the NLRB matters. *See, e.g.,* Df's Resp. to 2d Rqst. for Admissions, Nos. 7–11, *R.* 77-17, PageID 3934-3936.

### F.    The Prior District Court Proceedings

The Funds filed their initial Complaint in this matter on February 7, 2020. Complaint, *R.* 1, Page ID# 1-12, followed by a First Amended Complaint on June 3, 2020.  FAC, *R.* 12, Page ID# 61-72.  Defendant filed an Answer on June 24, 2020, *R.* 13, Page ID# 73-88, and an Amended Answer on August 24, 2020.  *R.* 18, Page ID# 123-139.  The Funds' complaint sought to compel an audit and collection of any unpaid contributions discovered by audit.  The Funds did not allege that Defendant violated its duty to bargain, committed an unfair labor practice, or violated the National Labor Relations Act (NLRA) in any way.

On August 25, 2020, Defendant filed a Rule 12(h)(3) Motion To Dismiss For Lack of Subject-Matter Jurisdiction.  Motion to Dismiss, *R.* 19, Page ID# 140-175. On October 6, 2020, the Funds filed their Brief in Opposition ("Response"), *R.* 25, 25-1 and 25-2, Page ID# 636-718, amended/corrected by another copy of the Response filed on October 7, 2020.  10-7-20 Response, *R.* 27, Page ID# 720-1716. Defendant filed a reply on October 21, 2020.  Reply, *R.* 28, Page ID# 1717-1725.

The Court conducted a hearing on the Motion to Dismiss by video conference on November 10, 2020.  *See* Transcript, *R.* 68, Page ID# 2407-2434.

14

The Court issued its Opinion and Order Granting Defendant's Motion to Dismiss, Dismissing Case Without Prejudice, and Dismissing Other Pending Motions, on February 4, 2021. Opinion, *R.* 62, Page ID# 2379-2397. *See* Operating Engineers' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co., Inc., 517 F. Supp. 3d 675 (E.D. Mich. 2021), *rev'd and remanded*, 43 F.4th 617 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 775, 215 L. Ed. 2d 46 (2023).

### G.    The Prior Appeal And Remand Order

On March 4, 2021, the Funds filed a notice of appeal.   Notice of Appeal, *R.* 47, Page ID # 1989-1990.   After briefing and oral argument, this Court issued an opinion reversing the district court's jurisdictional decision and remanding for further proceedings.  This Court issued a narrow jurisdictional ruling, holding that the question of whether a contract exist in an ERISA collection case is a merits issue, not a jurisdictional issue to be decided on a motion contesting jurisdiction. Operating Engineers' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co., 43 F.4th 617 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 775 (2023).

Defendant thereafter petitioned the Supreme Court for a writ of certiorari, which was denied on February 21, 2023.   Rieth-Riley Constr. Co. v. Operating Engineers' Loc. 324 Fringe Benefit Funds, 143 S. Ct. 775, 215 L. Ed. 2d 46 (2023)

### H.    District Court Proceedings After Remand

15

After remand, the district court conducted a status conference on September 8, 2022, and then issued a scheduling order permitting discovery through November 30, 2022, and dispositive motions by December 19, 2023.   Order Amending Scheduling Order, *R.* 72, PageID 2451.   The Funds submitted written discovery. Among other things, it conclusively established that the lower court was incorrect in previously holding that the Funds were already litigating the contribution issue in the NLRB. *See* Df's Resp. to 2d Rqst. for Admissions, Nos. 7–11, *R.* 77-17, PageID 3934-3936.   Further, Defendant acknowledged that it had not submitted contributions on all persons, but refused to provide an explanation of the factors it used to determine which employees to submit contributions for and which to withhold contributions.  Df's Resp. to 2d Rogs, No. 11-12, p. 12-14, *R.* 77-18, PageID 3951-3953.

On December 19, 2022, the parties filed cross-motions for summary judgment.  *See* Funds' SJ Motion, *R.* 77, PageID 3406-3434;  Df's SJ Motion, *R.* 75, PageID 2455-2489.

As to relief, the Funds' motion sought only to require Defendant to comply with the audit requests of the Funds' auditor (with the case to proceed further to the extent necessary after the audit, if it discloses unpaid contributions to be owing to the Funds).  Funds' SJ Motion, *R.* 77, PageID 3407, 3433.  The Funds' audit arguments were based primarily on the Funds' Trust Agreements and Defendants'

16

Certifications and express agreements to comply with the Trust Agreements as to post-CBA-expiration time periods; and, as to pre-expiration time periods (Pre-June 2018), the addition of the CBA which undisputedly applied as to those periods.

## I.     The District Court's Summary Judgment Opinion and Funds' Notice of Appeal

On July 6, 2023, the lower court issued its Opinion and Order Granting Defendant's Motion for Summary Judgment, Denying Plaintiffs' Motion for Summary Judgment, and Dismissing Case With Prejudice.  July 2023 Op., *R.* 86, PageID 4072-4095.

The lower court ruled that the evidence on remand "demonstrates what the Court previously determined:  there is no continuing labor contract, and the defendant's conduct is unequivocally linked to its statutory obligations.  The plaintiffs, therefore, cannot prevail on their ERISA claims, and their complaint must be dismissed."  7/6/23 Opinion, p. 2, *R.* 86, PageID 4073.

The court drew its factual findings largely from its findings in its earlier opinion on the jurisdictional issue.   <u>Operating Engineers' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co., Inc.</u>, 2023 WL 4409096, at *1 (E.D. Mich. July 6, 2023).  Addressing a point of error raised by the Funds in the earlier appeal, the lower court referenced the NLRB charges that were pending between the Union and Defendant, but correctly noted that the Funds are not parties to those charges, and have not made claims for contributions or an audit in the NLRB cases.  *Id.* at * 2.

17

On August 2, 2023, the Funds filed a timely notice of appeal regarding the lower Court's July 2023 Opinion and Order.  Notice of Appeal, *R.* 90, Page ID# 4105-4107.

## SUMMARY OF THE ARGUMENT

This appeal implicates important public policy concerns relating to ERISA and the ability of employee benefit fund fiduciaries (trustees) to audit contributing employers to ensure that all required contributions have been paid.  *See, e.g.,* Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc., 883 F.2d 454 (6th Cir. 1989) (ERISA and its provision authorizing remedies "were instituted to assure prompt payment of contributions and to facilitate recovery of costs incurred in recovering delinquencies").

The Funds' Trustees are obligated to audit contributing employers and collect deficient contributions in accordance with ERISA and the Funds' Trust Agreements. Enforceable audit rights are critical to permit the plan trustees to comply with their fundamental obligation to ensure that benefits are adequately funded.   *See*, *e.g.*, Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 572, 580 (1985);  DOL/EBSA Field Assistance Bulletin No. 2008-0; DOL Class Prohibited Transaction Exemption (PTE) 76-1.  If benefits are accrued without receipt of corresponding contributions, the Funds will be underfunded. *See, e.g.,* 29

18

CFR § 2530.200b-2(a); (Van Gunten v. Cent. States, Se. & Sw. Areas Pension Fund, 672 F.2d 586, 589 (6th Cir. 1982).

The Funds must be able to determine Defendant's compliance with its contribution obligations to ensure proper funding for the benefit rights created.  *See*, *e.g.*, Cent. Transp., 472 U.S. at 580 (multiemployer plan trustees have fiduciary duty to avoid "unfunded liabilities").  Thwarting the Funds' ability to audit Defendant causes the Funds to violate ERISA by requiring them to operate contrary to their Trust Agreements and other written documents.  *See, id.*; 29 U.S.C. § 1104(1)(D).

The lower court erred when it denied the Funds' Rule 56 motion for partial summary judgment seeking to compel an audit of the Defendant employer and granted Defendant's Rule 56 motion to dismiss.  The lower court engaged in erroneous fact-finding to hold that a lack of mutual assent to extend the expired CBA required denial of the Funds' requested audit relief, contrary to Sixth Circuit decisions which allow post-expiration ERISA collection actions to proceed under similar facts, and contrary to ERISA's purpose of making it *easier* for funds to collection employer contributions.

The Funds' audit claims involve two distinct time periods: (1) the pre-CBA-expiration period *prior* to the May 31, 2018 expiration of the Road Agreement; and (2) the post-CBA-expiration period from June 1, 2018 forward.  The record evidence

is sufficient to permit enforcement of the Funds' audit claims under ERISA and/or the LMRA.

Defendant paid contributions and submitted hundreds of fringe benefit reports ("Reports") – both before after expiration of the Road Agreement – which certified the accuracy of the information in each Report and *expressly agreed* to be bound by the payment terms of the applicable CBA and all terms of the Funds' Trust Agreements which contain unequivocal, detailed audit obligations.  It is undisputed that the Funds have accepted all Defendants contributions and the corresponding Reports.

At the very least, each Report, and its acceptance by the Funds, evidence an express, mutual agreement between Defendant and the Funds as to the time-period covered by the Report.

Pre-expiration period

Even under the Advanced Lightweight theories relied upon by the lower court, it is undisputed that the parties were subject to a contract prior to the CBA's expiration date (*i.e.* prior to June 1, 2018).  The lower court held that the Funds did not plead a claim to audit this period because the Complaint cited *specific* concerns regarding Defendants' fringe benefit reports only during post-expiration periods.  It is evident from the face of the Complaint and its incorporated attachments, however,

that the Funds claims *expressly* sought to compel an audit as to pre-expiration periods for several Defendant locations.

The lower court's refusal to order an audit of pre-expiration periods because the Complaint only cited specific concerns regarding post-expiration periods is contrary to Supreme Court precedent, the audit rights spelled out in the Funds' Trust Agreements, and the policies underlying ERISA. The Supreme Court has specifically authorized <u>random</u> audits provided for in trust agreements (*i.e.* no specific cause for audit is required). *See, e.g.,* <u>Cent. States Pension Fund v. Cent. Transp., Inc.</u>, 472 U.S. 559, 584 n. 4 (1985). The fact that the Complaint cites specific cause to audit post-expiration periods does not establish a basis to deny audit relief as to pre-expiration time periods – especially viewed through the prism of ERISA's policies. *E.g.,* <u>Behnke</u>, *supra*.

The lower court erroneously held that the Funds did not retain the right, post-expiration, to enforce an audit as to pre-expiration time periods. The ruling is contrary to cases within this and other Circuits recognizing the right of a Fund *after* CBA expiration to enforce audit time period *prior* to the expiration. *See, e.g.*, <u>Rudd v. Baker Furniture</u>, 967 F. Supp. 984, 989 (M.D. Tenn. 1997); <u>Trustees the Painters Union Deposit Fund v. Euginio Painting Co.</u>, 2023 WL 6850570, at *7 (E.D. Mich. Oct. 17, 2023) & discussion, *infra*, as well as the principles underlying the Supreme Court's ruling in <u>Litton Printing v. NLRB</u>, 501 U.S. 190, 205-208 (1991) (holding

structural/remedial arbitration provision in a CBA enforceable after expiration). Further, an audit necessarily is a backward-looking remedy/procedure and given the six-year statute of limitations applicable to collection actions, it is appropriate that audit rights be exercisable *after* expiration.

> Post-expiration period

The Trust Agreements and collection policy are *plan documents*, and the audit provisions therein are enforceable by plan trustees under ERISA's express enforcement provisions. *See, e.g.,* 29 U.S.C. § 1132(a)(3); 29 U.S.C. §1145.

The lower court erred in concluding that there was no mutual agreement to extend the expired CBA so as to preclude the Funds' claims. An ERISA action is not limited to claims based on a collective bargaining agreement. *See, e.g.,* Behnke, 883 F.2d at 459.

The lower court erred in rejecting the contribution reports as "boilerplate" and "unequivocally referable to [Defendant's] statutory obligations." July 2023 Op, p. 2, *R.* 86 PageID 4073. There is no "boilerplate" defense to application of unequivocal contract terms. There is nothing in the Defendant's contribution reports referencing the statutory obligation – on the contrary – the reports *expressly* reference the expired CBA as the basis for the contributions and *expressly* agree to comply with the Trust Agreements. There is no authority that an agreement "referable" to a statutory obligation eliminates the right to bring an ERISA action.

22

On the contrary, Sixth Circuit authority *allows* ERISA actions based on agreements post-CBA-expiration, brought in the context of a statutory obligation to maintain the status quo.  *See*, *e.g.,* Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Nw. Const., Inc., 116 F.3d 1480 (6th Cir. 1997) (table unpublished) & *infra*.

Sixth Circuit precedent permits ERISA collection actions after expiration of a CBA where – as here – the employer's conduct evidences an intent to comply with the benefit fund provisions of the expired CBA.  *See, e.g.,* Behnke, *supra*; Bricklayers, *supra*; Plumbers, Pipe Fitters v. B & B Mech. Servs., Inc., 813 F.3d 603 (6th Cir. 2015).  Given Defendant's clear and unequivocal agreements in fringe benefit certifications *after* the expiration, and the Fund's acceptance of them, the present case falls squarely under Sixth Circuit precedent allowing post-CBA-expiration cases to proceed under ERISA.

This case is just like Bricklayers, where the defendant (like Defendant here) was obligated under labor law to maintain the status quo after expiration of the labor agreement; and held to be subject to liability for post-expiration contributions under ERISA as a result of conduct going beyond that required to maintain the status quo, primarily *by agreeing to virtually identical certification language as in the present case*.

The lower court erred in relying upon Cent. States Pension Fund v. Gen. Materials, Inc., 535 F.3d 506 (6th Cir. 2008), to reject the contribution report

certifications. This Court subsequently indicated in <u>B&B Mechanical</u> that <u>General Materials</u>' ruling was specific to "the facts of that case" and that certification language *is* significant to the extent it incorporates <u>other</u> written agreements with the employer. <u>B&B Mechanical</u>, 813 F.3d at 613. Giving effect to <u>Behnke</u>, <u>Bricklayers</u>, and <u>General Materials</u>, as clarified by <u>B&B Mechanical</u>, Defendant's submission of hundreds of certifications **after** the expiration, all of which incorporated the terms of the expired CBA, is sufficient to support the Funds' ERISA claims. *See* discussion, *infra*.

The <u>Thompson</u> litigation, upon which the lower court primarily relied, is irrelevant here. For approximately four months, it was believed that *all* of a certain group of contractors (which included Defendant) were 8(f) employers, but it ultimately was discovered and agreed that the relationship between Defendant and the Union was governed under section 9(a) of the NLRA. Although the Funds initially refused to accept Defendant's contributions during the four-month period, this was based on the mutual mistake of all involved as to the nature of the parties' NLRA bargaining relationship. The mutual mistake renders the conduct during that period insufficient to negate application of ERISA and Sixth Circuit decisions allowing Fund audit and/or collection actions under analogous facts.

## ARGUMENT

## I.    STANDARD OF REVIEW

"A grant of summary judgment is reviewed de novo."    <u>Orrand v. Scassa</u> <u>Asphalt, Inc.</u>, 794 F.3d 556, 560–61 (6th Cir. 2015).  A "district court's interpretation of the contractual agreements between the parties is also reviewed de novo."  *Id.*, *citing* <u>Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.</u>, 883 F.2d 454, 458 (6th Cir.1989).

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " <u>Alexander v. CareSource</u>, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)).

"At the summary judgment stage, courts are required to 'view the facts and draw reasonable inferences in "the light most favorable to the party opposing the summary judgment motion"'". <u>Shumate v. City of Adrian, Michigan</u>, 44 F.4th 427, 438 (6th Cir. 2022) (quoting <u>Scott v. Harris</u>, 550 U.S. 372 (2007).

## II.    THE FUNDS' TRUST AGREEMENT AUDIT RIGHTS AND OBLIGATIONS ARE REQUIRED AND ENFORCEABLE UNDER ERISA AND LMRA 301

By design and pursuant to law, the Funds have rights and obligations to carry out audits of contributing employers.  If benefits are accrued without receipt of corresponding contributions, benefit plan funding will not be secure.  *See, e.g.,* Trust Agreements at p. 9, *R.* 77-2 through 77-7, PageID 3436-3609;  29 CFR § 2530.200b-2(a) (requiring crediting of each hour of service "for which an employee is paid, or entitled to payment . . . ."); Van Gunten v. Cent. States, Se. & Sw. Areas Pension Fund, 672 F.2d 586, 589 (6th Cir. 1982) ("the mere fact that pension contributions are not made on behalf of an employee does not provide a basis for denying the employee relief if the employee alleges that contributions were wrongfully withheld"); DOL/EBSA Field Assistance Bulletin No. 2008-01 (DOL has "long held the view that if the plan is not making systematic, reasonable and diligent efforts to collect delinquent employer contributions,"  such failure "may be deemed to be a prohibited transaction under section 406 of ERISA"); DOL Class Prohibited Transaction Exemption (PTE) 76-1 (forgives a failure to collect contributions owed to a plan only where  the plan has made "reasonable, diligent and systematic efforts" to collect the contributions).

ERISA § 515, 29 U.S.C. § 1145 makes an obligation to contribute to a multiemployer plan a statutory ERISA obligation.  It states:

**Delinquent contributions**

> Every employer who is obligated to make contributions to a multiemployer plan <u>under the terms of the plan</u> or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.  [emphasis added]

Employer obligations falling under ERISA Section 515 thus are ERISA obligations. In turn, Sections 502(a) and (e) of ERISA, 29 U.S.C. § 1132 (a) and (e), establish exclusive jurisdiction of the federal district courts to enforce Section 515 of ERISA.

Notably, "[t]he statutory duty imposed by this section . . . is not dependent on the existence of a collective bargaining agreement, as illustrated by the section's recognition that the obligation to contribute may arise 'under the terms of the plan *or* under the terms of a collectively bargained agreement.'" <u>Cent. States Pension Fund v. Behnke, Inc.</u>, 883 F.2d 454, 459 (6th Cir. 1989); 29 U.S.C. § 1145.

Further, ERISA, 29 U.S.C. § 1132(a)(3) permits an action by a plan's fiduciaries (e.g., trustees) "to enforce any provisions of . . . the terms of the plan" which, here, would include the Funds' Trust Agreements and the audit obligations set forth therein.

In an action brought under ERISA and LMRA § 301, the Supreme Court specifically held that multiemployer funds are empowered to conduct *random* audits of signatory employers provided for in fund trust agreements, enforceable by court action, to confirm employers' compliance with their fringe benefit obligations. <u>Cent.</u>

27

States Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 584 n. 4 (1985). This

includes the right to audit records relating to workers *other than those which the*

*employer concedes are subject to a fund contribution obligation. Id.*

The Central Transport Court reasoned that, under the common law of trusts,

trustees are understood to have all such powers as are necessary or appropriate for

the carrying out of the purposes of the trust:

> In general, trustees' responsibilities and powers under ERISA
> reflect Congress' policy of "assuring the equitable character" of the
> plans. Thus, rather than explicitly enumerating *all* of the powers and
> duties of trustees and other fiduciaries, Congress invoked the common
> law of trusts to define the general scope of their authority and
> responsibility. Under the common law of trusts, as under the Central
> States trust agreements, trustees are understood to have all "such
> powers as are necessary or appropriate for the carrying out of the
> purposes of the trust." 3 A. Scott, Law of Trusts § 186, p. 1496 (3d ed.
> 1967) (hereinafter Scott).

> \* \* \*

> An examination of the structure of ERISA in light of the
> particular duties and powers of trustees under the common law leaves
> no doubt as to the validity and weight of the audit goals on which
> Central States relies. ERISA clearly assumes that trustees will act to
> ensure that a plan receives all funds to which it is entitled, so that those
> funds can be used on behalf of participants and beneficiaries . . . .

Cent. Transport, 472 U.S. at 570–72 (emphasis added).

This Circuit, applying Central Transport, likewise recognizes fund trustee

audit rights as enforceable and permitted under ERISA. DeMarco v. C & L

Masonry, Inc., 891 F.2d 1236, 1240 (6th Cir. 1989) ("the audit of the disputed

28

records to cross-check the accuracy of the other records is an appropriate method for administering the plan"). Accordingly, the Funds pursuant to their Trust Agreements are entitled to conduct audits and pursue owed contributions for each month they were submitted and accepted by the Funds.

The fact that Defendant here has participated in the Fund and accepted Fund benefits for its employees is sufficient to bind Defendant to the Trust Agreement's audit provisions, as held in <u>Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.</u>, 920 F.2d 1491 (9th Cir. 1990), where the Court reasoned and held as follows:

> While Miramar is not a signatory to the Trust Agreement, it is undisputed that it contributed to the Fund and intended its employees to receive the benefits from the Fund. Miramar would not make contributions if it did not intend its employees to receive benefits from the Fund.
>
> If Miramar's employees are participants in the Fund, then it necessarily follows that Miramar is an employer under the Trust Agreement. Miramar cannot have it both ways. The Trust Agreement contemplates that contributing employers be either signatories or contributors under a collective bargaining agreement and be bound to the terms of the Trust Agreement. Miramar and its employees cannot receive the benefits of the Fund yet escape its attendant burdens, in this case, the provision of the Trust Agreement permitting the Trustees to audit an employer's books and records.

*Id.* at 1494.

Thus, the court in <u>Miramar</u> did not rely on the specific terms of the CBA in requiring an audit, finding that the fund's trust agreements authorized the audit and ERISA § 404(a)(1)(D) required the trustees to act "in accordance with the documents

29

and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter." Miramar, *supra* at 1493, *quoting* 29 U.S.C. § 1104(a)(1)(D).  No "live" CBA is required.

## III.  THE LOWER COURT ERRED IN DISMISSING THE FUNDS' CLAIMS TO AUDIT PRE-CBA-EXPIRATION TIME PERIODS (BEFORE 6/1/18)

It is fundamental to ERISA and otherwise well-established that "[a] pension or welfare trust is understood to be a third-party beneficiary of a CBA that receives contributions and issues payments negotiated by others." Behnke, 883 F.2d at 460.

### A.  The Funds Pled Valid Claims To Audit Pre-CBA-Expiration Time Periods

Defendant's primary argument below, that it had no contractual obligation to contribute or undergo an audit after the May 31, 2018 expiration of the Road Agreement, do not apply to audit periods *preceding* that date.   It is undisputed that Defendant has not produced all the information requested by the auditor for periods prior to June 1, 2018 for three of Defendant's Michigan locations.  *See*, *e,g.,* Nichols Declaration, *R.* 77-16, PageID 3930-3931.  Even if a CBA has expired, a fund may audit post-expiration regarding periods when the CBA was in effect.  *See, e.g.*, Rudd v. Baker Furniture, 967 F. Supp. 984, 989 (M.D. Tenn. 1997) (rejecting argument that fund's audit right lapsed when collective bargaining agreement expired); Trustees the Painters Union Deposit Fund v. Euginio Painting Co., No. 2:22-CV-

12416, 2023 WL 6850570, at *7 (E.D. Mich. Oct. 17, 2023) ("An audit is by definition retrospective. Courts have repeatedly found audit rights to survive the expiration or termination of a labor agreement").

In denying the Funds' request to audit this period, the lower court held that the Fund did not plead a valid claim to audit pre-expiration time periods.   In doing so, the court recounted certain allegations in the Funds' Complaint, and concluded that the Funds "plainly demand an audit to seek records generated, and to enforce rights purportedly accrued, after the Road Agreement expired."  July 2023 Op., p. 25, *R.* 86, PageID 4096.   This was error.

The Complaint did not limit the relief requested to time periods after expiration of the Road Agreement and did request to audit pre-CBA-expiration periods.  Complaint, p. 7-8, ¶ 18-19 & relief requested ¶ 1 & 2, ECF 12, PageID 67-68, 70-71.  The Complaint expressly seeks to enforce the audit requested in the auditor's October 1, 2019 correspondence, and to require Rieth-Riley to pay any shortfalls discovered by the auditors from the audit.  Complaint ¶ 18-19 & relief requested  1 & 2 [ECF 12, PageID# 67-68, 70-71];  Nichols Declaration, *R.* 77-16, PageID 3929-3932.  Three of Defendant's locations had audit time frames starting *before* June 2018, *i.e.* Charlevoix (January 2017 through present), Lansing (January 2017 through present), and Ada (January 2016 through present).  *Id.*

31

Though the Complaint alleges specific concerns regarding the period from August 2019 onward (regarding Defendant selectively paying contributions for covered work) it further states "Defendant may owe additional money to the Funds based on other work performed by employees of Defendant or work of its subcontractors, the amount of which can only be determined through Defendant producing records that the Funds requested to enable completion of the requested audit" and requests for relief that, among other things, Defendant "[p]ay the Funds all amounts determined to be owing as disclosed in an audit or other means." Complaint ¶ 19, PageID 68, 71 (emphasis added).[4]

The lower courts' holding that the Funds may not audit pre-expiration periods because the Complaint cited specific concerns regarding post-expiration periods is contrary to Supreme Court precedent, the audit rights spelled out in the Funds' Trust Agreements, and the policies underlying ERISA. *See, e.g.,* Cent. Transp., 472 U.S. at 584 (allowing *random* audits provided for in trust agreement).

In light of the above, the fact that the Complaint cites specific cause to audit post-expiration time periods does not establish a basis to deny audit relief as to pre-expiration time periods – especially when viewed through the prism of ERISA's

---

[4]The auditor declaration submitted by the Funds in response to Defendant's earlier motion to dismiss (prior to this Court's earlier opinion in this case) did not limit the non-compliance with the audit request to periods from July 2019 forward. *See* 10-6-20 Nichols Declaration, ¶ 4, ECF 27-17, PageID 1667-1668.

policies of facilitating Fund collection activities and ensuring that employees receive their promised benefits. *See, e.g.,* Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc., 883 F.2d 454, 459 (6th Cir. 1989) (ERISA and its provision authorizing remedies "were instituted to assure prompt payment of contributions and to facilitate recovery of costs incurred in recovering delinquencies").

### B.    The Funds Did Not Forfeit Pre-Expiration Audit Claims

Defendant's argument that the Funds "forefeited" claims to audit pre-expiration time periods is without merit.   The prior motion to dismiss and appeal dealt solely with the preliminary issue of subject matter jurisdiction, not the merits, and therefore could not constitute "forfeiture" of claims on the merits.   The cases relied upon by Defendant in support of its forfeiture/waiver arguments were decided on the merits in the trial courts and otherwise are inapposite here. *See* Df's Br, p. 22, PageID 4007; JGR, Inc. v. Thomasville Furniture Indus., Inc., 550 F.3d 529, 531 (6th Cir. 2008) (appeal of a case taken to jury verdict); United States v. Morris, 259 F.3d 894, 896 (7th Cir. 2001) (appeal of a criminal verdict by guilty plea).

### C.    The Funds May Audit Pre-Expiration Time Periods After Expiration

The lower court ruled that, even as to periods prior to June 2018, the Funds' audit rights could not be exercised after the May 31, 2018 expiration of the Road Agreement under the circumstances of this case, declining to apply the holding in Rudd v. Baker Furniture, 967 F. Supp. 984, 989 (M.D. Tenn. 1997).  July 2023 Op.,

33

p. 23-24, *R.* 86, PageID 4094-4095.  This determination, likewise, was contrary to precedent, the policies underlying ERISA, and the express provisions of the Funds' Trust Agreements and Defendant's post-expiration benefit certifications.

Cases within the Sixth Circuit and others recognize the right of a Fund, *after* expiration of a CBA, to enforce audit rights set forth in the CBA, so long as the audit covered periods and obligations existing under the CBA prior to the expiration.  *See*, *e.g.*, Rudd v. Baker Furniture, 967 F. Supp. 984, 989 (M.D. Tenn. 1997) (rejecting argument that fund's audit right lapsed when collective bargaining agreement expired);  Trustees the Painters Union Deposit Fund v. Euginio Painting Co., No. 2:22-CV-12416, 2023 WL 6850570, at *7 (E.D. Mich. Oct. 17, 2023) ("An audit is by definition retrospective. Courts have repeatedly found audit rights to survive the expiration or termination of a labor agreement") & discussion, *infra*.

Audit rights arising under trust agreements or other plan documents are enforceable under Central Transport.  That is precisely the case here, where the audit right is clearly provided for in the Fund's Trust Agreements and plan policies and procedures to which Defendant expressly agreed in hundreds of Reports.  *See* 29 U.S.C. § 1332(a)(3); 29 U.S.C. § 1145; Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc., 883 F.2d 454, 459 (6th Cir. 1989) (duty imposed by § 1145 "is not dependent on the existence of a [CBA, but] may arise 'under the terms of the plan *or* under the terms of a [CBA]'").

34

The audit provisions in the Trust Agreements and Fund policies do not say that the Funds may not carry out an audit after expiration of a CBA. The Policy on Payment provides for an audit "at any time." *R.* 77-8, PageID 3613.

Moreover, an audit necessarily is a backward-looking remedy/procedure and given the six-year statute of limitations applicable to collection actions, Op. Eng. 324 Health Care Plan v. G & W Const., 783 F.3d 1045, 1054 (6th Cir. 2015); Cent. States Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098, 1108 (6th Cir. 1986), it is rational and proper that audit rights be exercisable *after* expiration in relation to contributions due prior to expiration.

Further, the audit right is the equivalent of a "structural provision" in a collective bargaining agreement, which, like arbitration, is intended to survive the expiration of the agreement in relation to facts and occurrences prior to the expiration. Litton Printing v. NLRB, 501 U.S. 190, 205-208 (1991) ("We presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement" - a post-expiration grievance arises under the contract "where it involves facts and occurrences that arose before expiration [or] where an action taken after expiration infringes a right that accrued or vested under the agreement . . . .") Here, the Fund's request to audit periods prior to June 2018 clearly seek to enforce CBA rights "that arose before expiration".

Under this general rationale, <u>Rudd</u> and other Courts find fund audit rights to survive expiration/termination of a labor agreement.  *See* <u>Bldg. Serv. Emps. Pension Tr. v. Horsemen's Racing Ass'n</u>, 609 F. Supp. 1075, 1080-81 (N.D. Cal. 1985) (the duty to provide relevant information to the trustees, like the duty to arbitrate, survives expiration of the agreement, and is consistent with purposes of ERISA "to protect the pension benefits of those individuals who are entitled to them [and] to enable the trustees to have adequate information to perform their fiduciary duties"); <u>Nw. Adm'rs, Inc. v. Midland Trucking</u>, 2006 WL 2192220, at *3 (W.D. Wash. July 31, 2006) (employer required to comply with audit after employer had "terminated its obligations to the Trust").

## IV.  THE LOWER COURT ERRED IN DISMISING THE FUNDS' CLAIMS TO AUDIT POST-CBA-EXPIRATION TIME PERIODS (FROM 6/1/18 FORWARD)

The lower court found there was no contract sufficient to support the Funds' claims to enforce their audit rights under ERISA or LMRA for periods after the expiration of the Road Agreement.  The lower court focused its analysis on the issue of whether there was mutual assent to a continuing labor contract.  July 2023 Op., p. 2, *R.* 86, PageID 4073.

The lower court erred because Defendant agreed to the Trust Agreements in its post-expiration certifications which were accepted by the Funds, and existing

Sixth Circuit precedent allows post-expiration fund collection actions under the facts of this case.   *E.g.*, <u>Behnke</u>, <u>Bricklayers</u>, <u>B&B Mech</u>.

## A.   The Plan Documents Require Employer Audits Enforceable Under ERISA and/or LMRA § 301

The Funds' Trust Agreements and collection policy, which were expressly agreed to by Defendant in the Road Agreement, and Defendant's certifications submitted with each contribution payment *after* June 1, 2018, expressly provide for the Funds' audit rights sought to be enforced in the Funds' motion for partial summary judgment.

The Trust Agreements and collection policy are <u>plan documents</u>, and the audit provisions therein are enforceable by plan trustees under ERISA's express enforcement provisions.   *See, e.g.,* 29 U.S.C. § 1132(a)(3) (allowing a civil action by a fiduciary "to enforce any provisions of this subchapter or <u>the terms of the plan</u>") (emphasis added); 29 U.S.C. §1145 (an employer's obligation to contribute "under the terms of the plan <u>or</u> under the terms of a collectively bargained agreement" is an ERISA obligation) (emphasis added).

*See*, *also*, <u>Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.</u>, 472 U.S. 559 n.4 (1985) (permitting enforcement of Fund audit rights in fund action filed under ERISA § 502, 29 U.S.C. § 1132, and LMRA § 301(a), 29 U.S.C. § 185(a)); <u>DeMarco v. C & L Masonry, Inc.</u>, 891 F.2d 1236, 1239-1240 (6th Cir. 1989)

37

(Upholding trustee audit rights, provided for in the plan's trust agreement, pursuant to *Central Transport*). Upon Defendant's submission of contributions and the Funds' acceptance of same, the Funds independently have a right to audit under ERISA and the Plan Documents. *Id.*

**B.    Sixth Circuit Precedent Permits Fund Collection Actions After Expiration of a Labor Agreement Where the Employer's Conduct Evidences its Intent to Comply With the Expired Agreement's Benefit Provisions**

In Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc., 883 F.2d 454 (6th Cir. 1989), this Court noted that federal courts "have jurisdiction under ERISA, 29 U.S.C. §§ 1102, 1145, to enforce contractual obligations to contribute ('promised contributions') established by independent, unexpired trust and participation agreements, which, by their terms, extend beyond the expiration of a CBA." *Id.* at 464. Behnke thus found jurisdiction was proper for the fund's ERISA action for "post-contract contributions" – in that case because it arose from "independent contractual promises" reflected in interim, participation, and trust agreements." *Id.*

Following Behnke, the Sixth Circuit issued Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Nw. Const., Inc., 116 F.3d 1480 (6th Cir. 1997) (unpublished), which involves post-CBA-expiration facts very similar to those in the present matter. The Bricklayers Court observed that after expiration, "[a]n expired, signed collective bargaining agreement . . . may continue to bind an employer if the

employer demonstrates an intent to continue to be bound." *Id.*, *citing* <u>Behnke</u>, *supra.* It held that the employer in that case demonstrated an intent to continue to be bound by the benefit fund provisions of the expired agreement, by (i) continuing to remit fund contributions with completed forms stating that those contributions were "<u>in accordance with the obligations assumed</u>" by it under the "<u>current applicable bargaining agreement</u>";  (ii) continuing to make payroll deductions for union dues under the terms of the expired CBA;  and (iii) increasing the amount of those payroll deductions in accordance with the terms of the new CBA before it was signed.  *Id.* (emphasis added).

The <u>Bricklayers</u> Court rejected the employer's <u>Advanced Lightweight</u> argument that the lawsuit was actually an action to enforce NLRA status quo obligations, reasoning that the employer "took actions that its duty to maintain the status quo did not require" – which included the employer's execution of Fringe Benefits Reports that "suggested an intention to be bound by the terms of the expired agreement, rather than merely to preserve the status quo."  <u>Bricklayers</u>, 116 F.3d 1480, p. 2.  In the present case, the language of Defendant's certification clauses is *extremely* similar to that in <u>Bricklayers</u> deemed to reflect "an intention to be bound by the terms of the expired agreement, rather than merely to preserve the status quo." *Id.*

The Funds submit that Defendants Fringe Benefits Reports and certifications, by themselves, constitute "signatures of assent" sufficient to obligate Defendant to be bound by the expired CBA's fringe benefit contribution provisions. *See* Merrimen v. Paul F. Rost Elec., Inc., 861 F.2d 135, 139 (6th Cir. 1988).

In the lower court's earlier decision on the jurisdiction issue, as well its subsequent decision at issue in the present appeal dismissing the Funds claims under Fed.R.Civ.P. 56, it declined to apply the Bricklayers ruling based on conduct of the Funds vis-à-vis Defendant during the discrete period following expiration of the CBA when all involved parties were under (and specifically responding to) the mutually mistaken belief that Defendant's relationship with the Union had altogether terminated. *See* Opinion, *R.* 62, Page ID# 2390-2391.

Cases permitting Funds to bring a post-CBA expiration ERISA collection action, where the employer's conduct evidences an intent to be bound by the expired agreement's benefit provisions, do not state any further requirement of assent from the fund or the union. In fact, Bricklayers observed that "*[u]nilateral* actions by an employer that foster an impression that the employer intends to be bound by an expired collective bargaining agreement are sufficient to trigger ERISA liability." 116 F.3d 1480, p. 3, *citing* Robbins v. Lynch, 836 F.2d 330 (7th Cir. 1988) (emphasis added). Furthermore, Defendant never expressed anything to controvert its repeated manifestation of intent to agree to the terms of or to adopt the CBA for purposes of

contributing to the Funds as expressed in Defendant's continuous certifications and payment of fringe benefit contributions.

The Funds submit that the lower court's conclusions that these authorities do not apply due to a lack of "mutual assent" – derived solely from its interpretation of Fund and Union actions during the period of mistaken belief – is factually and legally incorrect for a number of additional reasons.  *See* discussion, *infra.*

### C.   This Court's Opinion in <u>General Materials</u> Did Not Preclude Consideration of Defendant's Fringe Benefit Report Certifications

In dismissing the Funds' audit claims, the lower court disregarded Defendant's certifications in its signed Fringe Benefits Reports based on this Court's decision in <u>Cent. States Pension Fund v. Gen. Materials, Inc.</u>, 535 F.3d 506 (6th Cir. 2008).  The lower court cited <u>General Materials</u> for its conclusion that the fringe benefit certifications and Trust Agreements have no contractual significance in the absence of a "live" (non-expired) collective bargaining agreement.    July 2023 Op. p. 22, *R.* 86, PageID 4093 ("Without a live CBA, the Trust Agreements are 'incognizable,' because they 'depend wholly' on the existence of an enforceable collective bargaining agreement").  The lower court also cited to its earlier opinion in this case prior to this Court's remand order, which likewise relied upon <u>General Materials</u>. *Id.*

The lower court's holding that the certification clauses have no contractual significance in the absence of a live (non-expired) collective bargaining agreement

41

interprets <u>General Materials</u> too broadly and its misplaced.  The lower court did not address the following points regarding <u>General Materials</u> in its July 2023 Opinion.  The Funds submit that, when <u>General Materials</u> and the timing of the certifications at issue in that case, is viewed in conjunction with, and compared to, other Sixth Circuit decisions addressing the issue of post-CBA-expiration contributions, <u>General Materials</u> actually *supports* the contractual significance of Defendant's certifications.

In <u>General Materials</u>, unlike the present case, the participation agreements were signed concurrently with, and expressly incorporated the terms of, a collective bargaining agreement, and the employer executed no documents of agreement and engaged in no bargaining after its termination of the CBA.  This Court subsequently noted in <u>Plumbers, Pipe Fitters & Mech. Equip. Serv. Pension Fund v. B & B Mech. Servs., Inc.</u>, 813 F.3d 603 (6th Cir. 2015), that its ruling in <u>General Materials</u> was specific to "the facts of that case" and approvingly cited authority that "certification language <u>is</u> significant, and <u>may be sufficient</u>, to the extent that it *incorporates* other written agreements with the employer . . . ."  <u>B&B Mechanical</u>, 813 F.3d at 613, *quoting* <u>Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc.</u>, 385 F.3d 761, 771 n. 9 (7th Cir. 2004) (underline added, italics in original).  Here, in contrast to <u>General Materials</u>, Defendant submitted <u>hundreds</u> of certifications *after* the CBA expired, Defendant *did* bargain with the Union for a

successor CBA, and the certifications expressly incorporated and promised to comply with the payment terms of the "applicable" collective bargaining agreement, *i.e.* identifying the expired Road Agreement by name.

In General Materials, the employer signed a series of collective bargaining agreements and pension fund participation agreements over a 21 year period. Each time a new CBA was executed, the employer would, *at the same time,* execute a new pension fund participation agreement covering the same period as the CBA. *Id.* at 507-508. The last CBA, executed in 1991, was timely terminated by the employer. After the termination, the employer *executed no other CBAs or participation agreements* and instead initiated its own pension plan. *Id.* at 508. The employer continued to contribute after the termination for two employees for a period and then stopped.

In General Materials, the fund attempted an audit and sued to collect contributions. Citing Behnke, the fund argued that that participation agreement (which had not been expressly terminated) continued to obligate the employer to continue to contribute after expiration of the CBA. This Court disagreed, distinguishing Behnke in multiple respects.

First, the General Materials Court noted that in Behnke, the parties executed a new trust agreement and participation agreement "during the *negotiation* period for a new CBA," while in General Materials, the employer did not execute a new

participation agreement and engaged in no further negotiations for a new CBA. *Id.* at 509. Second, the <u>General Materials</u> Court found that, "unlike the Participation Agreement in <u>Behnke</u>, the 1991 Participation Agreement can be understood only by reference to the contemporaneously signed 1991 CBA." *Id.* at 509. The Court reasoned:

> General and Local 164 signed the 1991 CBA and 1991 Participation Agreement on the same day, unlike the Participation Agreement in *Behnke,* which Behnke and the union signed after one CBA expired and before the next became effective. The fact that General signed the two documents on the same day supports the view that the 1991 Participation Agreement cannot be understood apart from the 1991 CBA. In fact, the terms of the 1991 Participation Agreement depend wholly on the 1991 CBA. . . . After the 1991 CBA expired, the orphan 1991 Participation Agreement became incognizable. . . . As a result, the 1991 Participation Agreement did not obligate General to contribute after the 1991 CBA expired. *Id.* at 509 (footnote and citation omitted).

*Id.* at 509.

Finally, <u>General Materials</u> rejected the fund's argument that the certification clauses required by the participation agreement extended the employer's obligation to contribute, given its previous conclusions that the participation agreement was inexorably linked to the terminated CBA. *Id.* at 509-510. *See, also*, <u>B & B Mech.</u>, 813 F.3d at 613 (6th Cir. 2015) (distinguishing <u>General Materials</u>).

The distinctions from <u>Behnke</u> that were dispositive to the ruling in <u>General Materials</u> do not exist in the present matter. In this case, multiple certifications were executed *after* the expiration of the CBA and *during* the negotiation period

between Defendant and the Union for a new CBA. Further, unlike the certification language in General Materials (which linked its affirmation to its "obligations required by *the* collective bargaining agreement"), the certifications in the present case were repeatedly executed during the negotiation period, specifically referenced the expired CBA and promised compliance with the terms of the "applicable" CBA (*i.e.* the expired CBA – which is expressly identified in the certifications by name – the Road Agreement) and the Funds' Trust Agreements. *See* Fringe Benefits Reports, *R.* 27-3 through *R.* 27-9, Page ID# 758 through 1493.

Defendant's representations in the certifications must have meaning. To conclude otherwise would improperly treat Defendant's multiple certifications as if they did not exist.

### D.    The Trust Agreements Survived Expiration of the CBA

The lower court held there is no genuine question that the Trust Agreement obligations did not survive expiration of the CBA and, therefore, did not bind Defendant to its audit obligations. July 2023 Op. p. 23, *R.* 86, PageID 4094. In doing so, the lower court held that the Funds "do not identify anything in the text of the agreement or the record that suggests that the parties intended for the audit provisions to remain in force post-termination." *Id.* This is incorrect. The hundreds of Defendants' post-expiration Contribution Reports in the record *expressly* state that Defendant agreed to the terms of the Trust Agreements as to the contributions

being submitted; and it is undisputed that the Funds *accepted* those contributions and certifications (submitted on forms which were drafted by the Funds) - so the Funds clearly also intend for the Trust Agreement obligations to remain in force.

Defendant's contribution report certifications expressly establish obligations independent of the CBA, as the Sixth Circuit held under analogous facts in Bricklayers.  The lower court alluded to its earlier jurisdiction decision and citation to General Materials, 535 F.3d 506 (6th Cir. 2008) in finding no contractual significance in the certifications.  July 2023 Op., *R.* 86, PageID 4092-4093.  But the Funds, in their brief in opposition to Defendant's SJ Motion, thoroughly distinguished General Materials under the present facts and show why Sixth Circuit precedent *permits* post-expiration contribution claims given the timing of the certifications in the present case.  Fund Resp. at 19-23, *R.* 82, PageID 4034-4038, and the lower court's summary judgment opinion did not address those points and distinctions.  The Funds respectfully submit that dispositive factual distinctions preclude application of General Materials' ruling here, for reasons previously set forth.  *See, id.*

### E. The Lower Court Erred In Finding a Lack of Required Mutual Assent To Contract Based on the Funds' and/or Union's Conduct At Issue in the Thompson Litigation

The lower court's decision hinged on its analysis of certain actions of the Funds and Union vis-à-vis Defendant during an approximately four month period in

2018 – which were the subject of a putative class action filed against the Funds and some of their Trustees in the Eastern District of Michigan in <u>Stockwell v. Thompson</u>, E.D. Mich. Case No. 18-12392 (Hon. Laurie Michelson). The lower court concluded that the "evidence does not support an inference that any contract existed beyond the stated durational terms of the CBA or that the parties mutually agreed to be bound by the expired CBA." July 2023 Op. p. 18, *R.* 86, PageID 4089.

The Funds submit it was an inappropriate leap of logic by the lower court to infer a lack of required assent based upon the <u>Thompson</u> litigation and conduct undisputedly occurring during a four-month period when all parties were mutually mistaken as to the fundamental nature of the relationship between the Union and Defendant and its employees. During that period, all parties believed that the relationship between the Union and Defendant was governed under § 8(f) of the NLRA. As such, Defendant could not contribute to the Funds even under the Trust Agreements. The Union, Defendant and the Funds subsequently learned that § 9(a) of the NLRA controlled the Union and Defendant's relationship. This permitted contributions under the Funds' Trust Agreements. *See, e.g.,* Funds' Motion for Evid. Hrg in <u>Thompson</u> at p. 7-10, *R.* 76-14, PageID 2760-2763.

Under established labor law, upon expiration of an 8(f) agreement, there is no requirement that parties bargain for a new agreement or that the "status quo" be maintained in connection with terms and conditions of employment, as there is in a

Section 9(a) relationship in which the union has demonstrated majority status.[5]

The Funds' actions at issue in the Thompson litigation were based on a good faith belief that, following termination of the MITA CBA there was no basis under the Trust Agreements to accept contributions without violating LMRA Section 302. The Funds' initial refusal to accept contributions was not the result of a discretionary decision not to "contract" or reach an "agreement" with certain employers;  it resulted from the desire to comply with a fundamental requirement for

---

[5]Section 8(f) of the NLRA "creates an exception to the general rule that it is an unfair labor practice for an employer to enter a collective bargaining agreement with a union before the union has attained majority status among the employer's workforce . . . Unlike the more restrictive Section 9 relationship, where the union has majority support among the employer's workforce, thus obligating the employer to bargain with it, Auciello Iron Works, Inc v. NLRB, 517 U.S. 781 (1996), pre-hire agreements . . . are enforceable during their term, but upon their expiration, the employer may withdraw recognition from the union, thereby avoiding any obligation to bargain for a successor contract." Iron Workers Plan v. Carter Construction, 530 F. Supp. 2d 1021, 1029 (N.D. Ill. 2008) (citations omitted).  "[I]f the employer has only an 8(f) relationship with the union, there is no obligation to bargain for a successor contract.  Thus, at the end of each contract, the employer [and the union] has an opportunity to decide anew whether to bargain for a successor contract." *Id*., *citing* Luterbach Constr. Co, 315 NLRB 976, 980 (1994).

In an 8(f) relationship, upon expiration of the collective bargaining agreement, "the signatory union will enjoy no presumption of majority status, and either party may repudiate the 8(f) bargaining relationship." John Deklewa & Sons, 282 NLRB 1375 (1987), *enforced sub nom*., Iron Workers Local 3 v. NLRB, 843 F.2d 770 (3rd Cir. 1988).  In this regard, the enforceable "Section 9(a) status" provided to a union during an 8(f) bargaining relationship "is only coextensive with the bargaining agreement that is the source of its exclusive representational authority.  Beyond the operative term of the contract, the signatory union acquires no other rights and privileges of a 9(a) exclusive representative." *Id.* at 1387 (emphasis added).

multiemployer plans under LMRA 302.  In fact, the Funds do not negotiate collective bargaining agreements nor are they parties to them.  The LMRA's requirement for a written agreement to accept contributions "effectively forces pension funds, which are third-party beneficiaries of labor agreements, to be <u>more vigilant as to the formalities of execution than are the parties to those agreements</u>." <u>Merrimen v. Paul F. Rost Elec., Inc.</u>, 861 F.2d 135, 139 (6th Cir. 1988) (emphasis added, footnote omitted).

 Here, the Fund conduct relied upon by the lower court all occurred *before* the discovery of Defendant's 9(a) status, i.e., that Defendant recognized the Union as the representative of Defendant's bargaining unit employees.

The record is undisputed that, *after* the initial mistake was clarified, Defendant continued to submit contributions with written certifications of assent to the benefit provisions of the expired CBA and Trust Agreements – which the Funds accepted – and to which neither the Union nor the Funds objected.  After the 9(a) discovery, there clearly *was* a "meeting of the minds" as to Defendant continuing to make contributions in accordance with the expired CBA, thus satisfying LMRA Section 302's "written agreement" requirement and providing a written basis for ERISA jurisdiction. *See* <u>Behnke</u>, <u>Bricklayers</u>.

Further, Defendant affirmed its agreement to the terms of the expired CBA through submission of at least 312 Fringe Benefit Reports to the Funds over 28

months expressly acknowledging that it was bound to the CBA and Trust Agreements. Furthermore, statements on behalf of the Funds at oral argument in the Thompson litigation as to why certain contributions could not be accepted applied only to the 8(f) employers that case involved – not Defendant, a 9(a) employer.

### F.   Mutual Mistake

As discussed above, but for the mutual mistake of the parties with respect to the 8(f) / 9(a) issue, the collective bargaining agreement would always have continued. If Defendant had correctly disclosed its 9(a) status from the beginning, the contributions would have continued without objection by the Funds and the Union and cases permitting an ERISA action clearly would apply. Behnke, Bricklayers, and B&B Mechanical.

Due to the mutual mistake as to a basic assumption, the positions taken by the Funds or Union in relation to that contract are without logical or legal significance, similar to the rationale underlying the rule that contracts entered into under a mutual mistaken of fact are void or voidable by the parties thereto. *See, e.g.,* Cincinnati, I. & W.R. Co. v. Indianapolis Union Ry. Co., 36 F.2d 323, 324 (6th Cir. 1929) (equity may, and often will, permit obligations to be reformed or rescinded because based upon a mistake of law); Akahoshi v. S. Waste Servs., 181 F. Supp. 2d 711, 714 (E.D. Mich. 2001) ("rescission of a contract for mutual mistake is available where the mistake relates to a basic assumption about a fact in existence at the time of the

execution of the contract upon which the contract is made and which materially affects the agreed performance"); Restatement (Second) of Contracts § 153 ("Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake . . . .").

The lower court rejected the Funds' mutual mistake argument, reasoning that "although contracts sometimes may be rescinded on the basis of mutual mistake, they cannot be *formed* by virtue of mutual mistake," July 2023 Op., *R.* 86, PageID 4093-4094. The court then reasoned that it "lacks power to impose a contract on the parties solely because the plaintiffs mistakenly believed that they could not enter one, and that plaintiffs have cited no authority stating otherwise." *Id.*

The Funds did not argue, however, that the parties' mutual mistake *formed* a contract. The Funds argue that existing Sixth Circuit precedent involving analogous facts (Behnke, Bricklayers, etc.) and the parties' conduct (*e.g.,* Defendant's post-expiration certifications *accepted* by the Funds) establish a sufficient basis to support ERISA claims post-CBA-expiration; and that the short period of mutual mistake here does not *negate* the significance of those authorities and facts.

### G.    The Lower Court Erred In Dismissing The Funds' LMRA Section 301 Claims

As set forth above, ERISA provides subject matter jurisdiction for the Funds' claims in this case.  To the extent there were any doubts as to the source of jurisdiction over the Funds' claims to enforce an audit or collect contributions, jurisdiction also would be proper under Labor Management Relations Act ("LMRA") Section 301.  LMRA Section 301(a), 29 U.S.C. § 185(a), "provides a federal forum for suits to enforce labor contracts, including pension and welfare fund agreements."  <u>Schneider Moving and Storage Co. v. Robbins</u>, 466 U.S. 364, 366 n.2 (1984).

## H.    The Funds Did Not Forfeit Their LMRA Claims

Defendant argued below that this Court's earlier decision in this case, where it stated in a footnote that the Funds "forefeited" the LMRA issue for not briefing it in more detail, precludes the Funds from pursuing their LMRA § 301 claim on remand.  With regard to that argument, the lower court stated "there is some question whether the LMRA claim is still in play," however, it then stated that "nothing in [this Court's earlier opinion] suggests that the Funds may assert their LMRA claims again on remand" and ultimately ruled that therefore "the Funds may not pursue their LMRA claim on remand."  July 2023 Opinion, p. 28, *R.* 86, PageID 4099.    The Funds submit that lower court was incorrect on this issue.

The Funds submit that this Court intended only that the Funds waived their right to rely on that LMRA claim for purposes of that appeal on the jurisdiction issue.

52

This Court did not state in that opinion that the Funds lost the right to assert or rely upon its § 301 claims on remand.   It is critical to note the procedural posture under which the prior appeal was heard, *i.e.*, an appeal of a motion to dismiss for lack of subject matter jurisdiction.   The Court was not deciding whether the facts or evidence in the record were sufficient to state a claim; only whether the district court had the jurisdictional authority to hear the Funds' claims.   This Court ultimately decided that the district court *does* have that ability.   And notably, given the outcome of the prior appellate decision, the Funds' § 301 argument was not necessary.

## CONCLUSION

Plaintiff-Appellant Funds respectfully request that this Court reverse the District Court's Opinion and Order Granting Defendant's Motion for Summary Judgment, Denying Plaintiffs' Motion for Summary Judgment, and Dismissing Case With Prejudice, *R.* 86, PageID 4072-4095, and remand for further proceedings.

Respectfully submitted,

/s/Nancy Harris Pearce
Finkel Whitefield Feldman
Attorney for Appellants
npearce@fwf-law.com
P38323

/s/Daniel G. LeVan
Finkel Whitefield Feldman
Attorney for Appellants
dlevan@fwf-law.com
P48776

Dated:  November 22, 2023

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed.R.App.P. 32(f) and 6 Cir. R. 32(b), it contains 12,982 words.

This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

/s/ Daniel G. LeVan
Daniel G. LeVan (P48776)
Attorney for Appellants

# CERTIFICATE OF SERVICE

The undersigned certifies that on November 22, 2023, the foregoing brief was served upon all parties by filing it with the Court using the ECF system which will send notification of the filing to the following attorneys for Appellee:

Philip Gutwein, II

Emily A. Kile-Maxwell

Dated:  November 22, 2023                     /s/ Daniel G. LeVan
                                              Daniel G. LeVan (P48776)
                                              Attorney for Appellants

23-1699

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**OPERATING ENGINEERS' LOCAL 324
FRINGE BENEFIT FUNDS;  TRUSTEES
OF THE OPERATING ENGINEERS' LOCAL
324 FRINGE BENEFIT FUNDS,**

*Plaintiffs-Appellants,*

**v.**

**RIETH RILEY CONSTRUCTION CO., INC.,**

*Defendant-Appellee.*

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Hon. David M. Lawson
Case No. 20-10323

**APPELLANTS' DESIGNATION OF RELEVANT LOWER COURT
DOCUMENTS**

Pursuant to 6 Cir. R. 28(b)(1)(A)(i) and 6 Cir. R. 30(g)(1), Appellants
Operating Engineers' Local 324 Fringe Benefit Funds and Trustees of the Operating
Engineers' Local 324 Fringe Benefit Funds designate the following relevant
documents from the district court's electronic record.

| District Court Record Entry No. | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1 – 12 |
| 9 | Answer to Complaint | 26 – 42 |
| 10 | Rule 26(f) Discovery Plan | 43 – 49 |
| 11 | Scheduling Order | 50 – 60 |
| 12 | Amended Complaint | 61 – 72 |
| 18 | Amended Answer to First Amended Complaint | 123 - 139 |
| 19 through 19-34 | Motion to Dismiss & Exhibits | 140 - 596 |
| 24 | Plaintiffs' Brief in Opposition to Motion to Dismiss | 603 - 635 |
| 25 through 25-2 | Exhibits 1 through 2 to Plaintiffs' Brief in Opposition to Motion to Dismiss | 636 - 718 |
| 26 | Order Rejecting Stipulation to Extend Briefing Deadlines | 719 |
| 27 through 27-27 | Plaintiffs' Brief in Opposition to Motion to Dismiss & Exhibits 3 through 14 & copy of Bricklayers decision | 720 - 1716 |
| 28 | Defendant's Reply In Support Of Motion To Dismiss | 1717 - 1725 |
| 62 | Opinion and Order Granting Motion to Dismiss, Dismissing Case Without Prejudice, and Dismissing Other Pending Motions | 2379 – 2397 |

| 63 | Judgment | 2398 |
|---|---|---|
| 65 | Notice of Appeal | 2401 – 2403 |
| 68 | Transcript of Argument on Motion to Dismiss | 2407 – 2434 |
| 69 | Opinion and Judgment from Sixth Circuit Court of Appeals | 2435 - 2447 |
| 70 | Notice to Appeal for status conference (amended) | 2448 |
| 71 | Sixth Circuit Letter & Order denying motion to stay issuance of mandate pending filing of a petition for a writ of certiorari | 2449 - 2450 |
| 72 | Order Amending Scheduling Order | 2451 |
| 73 | Mandate from the Sixth Circuit Court of Appeals | 2452 - 2453 |
| 74 | Letter from U.S. Supreme Court re petition for certiorari filed and docketed for 11/8/22 | 2454 |
| 75 | Defendant's Motion for Summary Judgment | 2455 - 2489 |
| 76 through 76-29 | Index of Exhibits (76) & Exhibits to Defendant's Motion for Summary Judgment (76-1 through 76-29) | 2490 – 2492 (Index)<br><br>2493 – 3405 (Exhibits) |
| 77 through 77-20 | Plaintiffs' Motion for Summary Judgment (77), Index of Exhibits (77-1) and Exhibits (77-2 through 77-20) | 3406 – 3434 (Motion)<br>3435 (Index )<br>3436 – 3972 (Exhibits) |
| 80 | Order Extending Time To Respond To Motions for Summary Judgment | 3977 |

| 81 | Defendant's Response to Plaintiffs' Motion for Summary Judgment | 3978 – 4011 |
| 82 | Plaintiffs' Response To Defendant's Motion for Summary Judgment | 4012 – 4039 |
| 83 | Defendant's Reply to Plaintiffs' Response To Defendants' Motion for Summary Judgment | 4040 – 4048 |
| 84 through 84-3 | Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Summary Judgment, Index (84-1) & Exhibits (84-2 through 84-3) | 4049 - 4070 |
| 85 | Letter from U.S. Supreme Court Denying Petition for Certiorari | 4071 |
| 86 | Opinion and Order Granting Defendant's Motion for Summary Judgment, Denying Plaintiffs' Motion for Summary Judgment, and Dismissing Case With Prejudice | 4072 – 4101 |
| 88 | Corrected Judgment | 4103 |
| 90 | Notice of Appeal | 4105 – 4107 |
| 92 | Transcript of 6/21/23 Hearing on Summary Judgment Motions | 4109 - 4131 |

Dated:   November 22, 2023

R:\NHP-WY\56074.025\Appeal\SIxth Circuit\Appeal II Brief final.docx