23-1699

---

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

---

## OPERATING ENGINEERS' LOCAL 324 FRINGE BENEFIT FUNDS and TRUSTEES OF THE OPERATING ENGINEERS' LOCAL 324 FRINGE BENEFIT FUNDS,

*Plaintiffs-Appellants,*

v.

## RIETH-RILEY CONSTRUCTION CO., INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Hon. David M. Lawson
Case No. 20-10323

---

## APPELLEE'S BRIEF

---

Philip J. Gutwein II
Emily A. Kile-Maxwell
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
(317) 237-0300
philip.gutwein@faegredrinker.com
emily.kilemaxwell@faegredrinker.com

*Counsel for Defendant-Appellee, Rieth-Riley Construction Co., Inc.*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Sixth Circuit Case Number:          23-1699

Case Name:                          *Operating Engineers' Local 324 Fringe Benefit Funds and Trustees of the Operating Engineers' Local 324 Fringe Benefit Funds v. Rieth-Riley Construction Co., Inc.*

Pursuant to Sixth Circuit Rule 26.1, Defendant-Appellee Rieth-Riley

Construction Co., Inc. makes the following disclosure:

1.  Defendant-Appellee is not a subsidiary or affiliate of a publicly owned corporation.

2.  No publicly owned corporation, not a party to this appeal, has a financial interest in the outcome of this appeal.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT .................................................. 1

JURISDICTIONAL STATEMENT ...................................................................... 2

STATEMENT OF THE ISSUES ......................................................................... 3

STATEMENT OF THE CASE ............................................................................ 4

1. The Parties ........................................................................................... 4

2. Negotiation and Expiration of the Road Agreement .......................... 5

3. The Funds' Refusal to Accept Post-Expiration Contributions............ 6

4. Rieth-Riley's Repeated—and Rejected—Manifestations of Intent ..... 8

5. The Parties' Discovery of Rieth-Riley's Statutory Contribution Obligations............................................................................................ 9

6. The Funds' Amended Complaint ....................................................... 13

7. The District Court's Dismissal for Lack of Subject-Matter Jurisdiction .......... 14

8. This Court's Remand .......................................................................... 14

9. The District Court's Grant of Summary Judgment for Rieth-Riley and Against the Funds ............................................................................... 15

STANDARD OF REVIEW ............................................................................... 16

SUMMARY OF THE ARGUMENT .................................................................. 17

ARGUMENT .................................................................................................. 20

    I.    The District Court Properly Granted Rieth-Riley Summary Judgment on the Funds' Post-Expiration Audit Claims. ................................. 20

        A.    Labor Contracts Require Mutual Assent, and the Funds Cannot Enforce a Contract They Rejected. ......................................... 20

            1.    Labor Contracts Require Mutual Assent. ........................... 22

            2.    The Funds and Local 324 Withheld Their Assent. ............ 25

            3.    Rieth-Riley's Compliance With its Status Quo Obligations Did Not Form a Contract. .............................. 30

            4.    The Funds Cannot Distinguish Away *Thompson*. ................ 32

B.    The Trust Agreements Are Not Independently Enforceable
Contracts.................................................................................. 33

II.    The District Court Properly Granted Rieth-Riley Summary Judgment
on the Funds' Pre-Expiration Audit Claims.................................. 37

A.    The Funds Have Forfeited Any Pre-Expiration Contract Claim. ........ 37

B.    The Funds Did Not Plead a Pre-Expiration Audit Claim.................... 39

C.    The Funds' Audit Rights Did Not Survive Expiration of the
Road Agreement. ................................................................. 42

III.    The District Court Properly Granted Summary Judgment for Rieth-
Riley on the Funds' LMRA Claim. ........................................... 45

CONCLUSION ................................................................................. 46

CERTIFICATE OF COMPLIANCE WITH RULE 32................................. 48

CERTIFICATE OF SERVICE ........................................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alaska Trowel Trades Pension Fund v. Lopshire,*
103 F.3d 881 (9th Cir. 1996) ............................................. 32

*Building Service Employees Pension Trust v. Horsemen's Quarter Horse Racing Association,*
609 F. Supp. 1075 (N.D. Cal. 1985) ........................................ 44

*Bobbie Brooks, Inc. v. International Ladies' Garment Workers Union,*
835 F.2d 1164 (6th Cir. 1987) .............................. 22, 24, 38, 40

*Cement Masons Health & Welfare Trust Fund for Northern California v. Kirkwood-Bly, Inc.,*
692 F.2d 641 (9th Cir. 1982) .............................................. 45

*Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,*
472 U.S. 559 (1985) .................................................... 20, 42

*Central States, Southeast & Southwest Areas Pension Fund v. General Materials, Inc.,*
535 F.3d 506 (6th Cir. 2008) ............................................. 31

*CNH Industries N.V. v. Reese,*
138 S. Ct. 761 (2018) .................................................... 45

*Colorado Fire Sprinkler, Inc. v. NLRB,*
891 F.3d 1031 (D.C. Cir. 2018) .......................................... 11

*Commercial Property Services, Inc.,*
304 NLRB 134 (1991) .................................................... 44

*Davis v. Echo Valley Condominium Association,*
945 F.3d 483 (6th Cir. 2019) ............................................. 41

*Derrico v. v. Sheehan Emergency Hospital,*
844 F.2d 22 (2d Cir. 1988) ....................................... 28, 35, 45

*DiPonio Construction Co. v. International Union of Bricklayers & Allied Craftworkers, Local 9,*
687 F.3d 744 (6th Cir. 2012) ......................................... 10, 23

*Dugan v. R.J. Corman R.R. Co.,*
344 F.3d 662 (7th Cir. 2003) ...............................................................28, 31, 35

*Fortney & Weygandt, Inc. v. American Manufacturers Mutual Insurance Co.,*
595 F.3d 308 (6th Cir. 2010) ................................................................... 16

*H.K. Porter Co. v. NLRB,*
397 U.S. 99 (1970) ...............................................................................24, 25

*International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers – Local 1603 v. Transue & Williams Corp.,*
879 F.2d 1388 (6th Cir. 1989) ................................................................ 22

*International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union 1199 v. Pepsi-Cola General Bottlers, Inc.,*
958 F.2d 1331 (6th Cir. 1992) ...........................................................22, 24

*Island Creek Coal Co. v. Wilkerson,*
910 F.3d 254 (6th Cir. 2018) ................................................................. 43

*Jackson v. Ford Motor Co.,*
842 F.3d 902 (6th Cir. 2016) ................................................................. 39

*JGR, Inc. v. Thomasville Furniture Industries, Inc.,*
550 F.3d 529 (6th Cir. 2008) ................................................................. 39

*Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.,*
484 U.S. 539 (1988) ..........................................................................passim

*Litton Fin. Printing Division v. NLRB,*
501 U.S. 190 (1991) ............................................................... 11, 43, 44, 45

*M&G Polymers USA, LLC v. Tackett,*
574 U.S. 427 (2015) ..........................................................................passim

*National Leadburners Health & Welfare Fund v. O.G. Kelley & Co.,*
129 F.3d 372 (6th Cir. 1997) ................................................................... 6

*NLRB v. Katz,*
369 U.S. 736 (1962) ............................................................................... 10

*Northwest Administrators v. Midland Trucking,*
No. C06-400-JPD, 2006 WL 2192220 (W.D. Wash. July 31, 2006)........................ 44

*Operating Engineers Local 324 Fringe Benefit Funds v. Rieth-Riley Construction Co., Inc.*,
   43 F.4th 617 (6th Cir. 2022) ...............................................................................passim

*Phillips v. UAW International*,
   854 F.3d 323 (6th Cir. 2017) ......................................................................... 38

*Rafferty v. Trumbull County, Ohio*,
   758 F. App'x 425 (6th Cir. 2018) ................................................................... 41

*RiverStone Group, Inc. v. Midwest Operating Engineers Fringe Benefit Funds*,
   33 F.4th 424 (7th Cir. 2022) ......................................................................... 24

*Rudd v. Baker Furniture*,
   967 F. Supp. 984 (M.D. Tenn. 1997).............................................................. 44

*San Diego Building Trades Council v. Garmon*,
   359 U.S. 236 (1959) ................................................................... 17, 21, 33, 44

*Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*,
   920 F.2d 1491 (9th Cir. 1990) ................................................................ 34, 35

*Sheet Metal Employers Industry v. Absolut Balancing Co.*,
   830 F.3d 358 (6th Cir. 2016) ......................................................................... 22

*Taylor Warehouse Corp. v. NLRB*,
   98 F.3d 892 (6th Cir. 1996)........................................................................... 25

*Trustees Painters Union Deposit Fund v. Euginio Painting Company*,
   No. 2:22-cv-12416, 2023 WL 6850570 (E.D. Mich. Oct. 17, 2023) ....................... 44

*Tucker v. Union of Needletrades, Industrial & Textile Employees*,
   407 F.3d 784 (6th Cir. 2005) ......................................................................... 41

*United States v. Moored*,
   34 F.3d 1419 (6th Cir. 1994) ......................................................................... 45

*United States v. Morris*,
   259 F.3d 894 (7th Cir. 2001) ......................................................................... 39

*Vonderhaar v. Waymire*,
   797 F. App'x 981 (6th Cir. 2020) ................................................................... 41

FEDERAL STATUTES

28 U.S.C. § 1291 ................................................................................ 2

28 U.S.C. § 1331 ................................................................................ 2

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .............................. 18, 33

ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A) ................................... 4

ERISA § 515, 29 U.S.C. § 1145 ......................................21, 28, 33

LMRA § 301, 29 U.S.C. § 185.......................................................... 45

LMRA § 302, 29 U.S.C. § 186.........................................6, 32, 33

NLRA § 8(a)(5), 29 U.S.C. § 158(a)(5) .......................10, 44, 46

NLRA § 8(f), 29 U.S.C. § 158(f) ...............................10, 11, 36

NLRA § 9(a), 29 U.S.C. § 159(a) ....................................passim

RULES

Federal Rule of Appellate Procedure 3(a)(1)................................ 2

Federal Rule of Appellate Procedure 4(a)(1)(A) ......................... 2

Federal Rule of Appellate Procedure 34(a)(2)(C) ....................... 1

Federal Rule of Civil Procedure 56(a) ...................................... 17

Federal Rule of Civil Procedure 8(a)(2) .................................. 40

## STATEMENT REGARDING ORAL ARGUMENT

The district court granted Rieth-Riley's motion for summary judgment because it determined, on the undisputed facts, that no reasonable jury could find that the Funds' claims are governed by a live contract and, instead, that the Funds' rights, if any, arise solely from Rieth-Riley's statutory obligations under the National Labor Relations Act. The district court's order is well supported in the record and applies settled, hornbook law. Its judgment can be affirmed on the briefs without oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

US.360715409.12

# JURISDICTIONAL STATEMENT

The Funds' jurisdictional statement is incomplete and incorrect.

The district court had federal-question subject-matter jurisdiction over the Funds' claims under 28 U.S.C. § 1331, because the Funds' claims arise under Section 502 of ERISA, 29 U.S.C. § 1132, and Section 301 of the LMRA, 29 U.S.C. § 185. (Am. Compl., R.12, PageID #63, ¶ 6.) *See Operating Eng'rs Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co., Inc.*, 43 F.4th 617, 622 (6th Cir. 2022) ("*Rieth-Riley I*").

This Court has subject-matter jurisdiction under 28 U.S.C. § 1291 because the Funds' appeal is from a July 6, 2023 order granting summary judgment for Rieth-Riley and against the Funds on all of the Funds' claims. (Order, R.86, PageID ##4072-4101.) On July 18, 2023, the district court entered final judgment. (Judgment, R.87, PageID #4102; Corrected Judgment, R.88, PageID #4103.) The district court clerk inadvertently backdated the original final judgment to July 6, 2023. (Order Striking Judgment, R.89, PageID #4104.) The district court subsequently struck the original judgment and entered a corrected judgment, the operative final judgment in this case, on July 18, 2023. (*Id.*; *see also* Corrected Judgment, R.88, PageID #4103.)

The Funds filed a timely Notice of Appeal on August 2, 2023. (Second Notice of Appeal, R.90, PageID #4105.) *See* Fed. R. App. P. 3(a)(1); Fed. R. App. P. 4(a)(1)(A).

US.360715409.12

## STATEMENT OF THE ISSUES

I.    Did the district court err in holding that, on the undisputed facts, the source of Rieth-Riley's contribution obligations to the Funds is solely statutory, not contractual, and that Rieth-Riley is not independently bound by contract to the Funds' trust agreements, when the Funds and Local 324 rejected forming the very contract with Rieth-Riley (or any contract) that the Funds have now sued to enforce?

II.    Did the district court err in holding that the Funds had failed to plead a separate contract claim to enforce the Road Agreement for pre-expiration time periods, when the Funds' Amended Complaint asserts a single audit claim that clearly seeks to enforce post-expiration obligations?

III.    Did the district court err in applying this Court's explicit mandate that the Funds waived their LMRA claim?

3

## STATEMENT OF THE CASE

### 1.    The Parties

The Operating Engineers' Local 324 Fringe Benefit Funds[1] ("Funds") are multiemployer benefit plans under ERISA § 3(37)(A).[2] They collect fringe benefit contributions from employers who are required to make them on behalf of eligible members of the International Union of Operating Engineers Local 324 ("Local 324") and administer plans for the benefit of those members.[3] Each Fund is administered pursuant to a trust agreement between Local 324 and certain multiemployer associations that collectively bargain with it.[4]

Rieth-Riley is a large road and highway construction contractor in Michigan that employs a number of workers represented by Local 324.[5]  At all times relevant to this action, Rieth-Riley had authorized the Michigan Infrastructure and Transportation Association ("MITA"), a trade association of road construction

---

[1]    The Operating Engineers' Local 324 Pension Fund; the Operating Engineers' Local 324 Health Care Plan; the Operating Engineers' Local 324 Vacation & Holiday Fund of Michigan; the Operating Engineers' Local 324 Retiree Benefit Fund; the Operating Engineers' Local 324 Journeyman and Apprentice Training Fund, Inc.; and the Operating Engineers' Local 324 Defined Contribution Pension Plan.

[2]    29 U.S.C. § 1002(37)(A); Am. Ans., R.18, PageID #124, ¶ 2.

[3]    First LaLonde Decl., R.77-11, PageID #3656-66, ¶ 4.

[4]    Funds' Trust Agreements, R.77-2 through 77-7, PageID ##3436-3609.

[5]    Am. Ans., R.18, PageID #124, ¶ 4; July 2022 NLRB Order, R.76-28, PageID #3362.

employers, to bargain with Local 324 on its behalf by giving MITA its power of attorney ("POA") for collective bargaining.[6]

## 2.    Negotiation and Expiration of the Road Agreement

MITA negotiated the CBA at issue here (the "Road Agreement") with Local 324 on behalf of Rieth-Riley and the other contractors who had signed a POA with MITA ("POA Contractors").[7] Other contractors who had not given a POA to MITA ("Non-POA Contractors") bargained directly with Local 324.[8]

The Road Agreement expired by its own terms on May 31, 2018.[9] Prior to its termination, to avoid triggering its evergreen (automatic renewal) clause, MITA timely terminated the Road Agreement and then attempted to negotiate a successor agreement with Local 324 on behalf of all POA Contractors, including Rieth-Riley.[10] Local 324 accepted MITA's termination *and* individually terminated the Road Agreement as to "each and every one of" the POA Contractors, including

---

[6]    MITA POA Rescission, R.76-15 at 2, 4, PageID ##2943, 2945; Rieth-Riley POA Rescission, R.76-16 at 3, PageID #2953; Jan. 2022 NLRB Order, R.76-27 at 3, 5-6, PageID ##3293, 3295-96.

[7]    Road Agreement, R.76-1, PageID #2496.

[8]    Local 324 Ltr. re: POA Contractors, R.76-3 at 2, PageID #2543; Funds' Email re: POA Contractors R.76-7 at 2, PageID #2554; Jan. 2022 NLRB Order, R.76-27 at 19, PageID #3309.

[9]    Road Agreement, R.76-1 at 41, Art. XIII, PageID #2533.

[10]    Road Agreement Term. Ltrs., R.76-2 at 3, PageID #2541; Jan. 2022 NLRB Order, R.76-27 at 18-19, PageID ##3308-09.

5

Rieth-Riley.[11] Local 324 immediately began negotiating successor CBAs with the Non-POA Contractors.[12] Not so for the POA Contractors. Instead, Local 324 withdrew from multiemployer bargaining and refused to negotiate with MITA, or any POA Contractors individually, for a successor CBA.[13]

### 3.    The Funds' Refusal to Accept Post-Expiration Contributions

Section 302(a) of the LMRA prohibits employers from contributing to multiemployer funds unless "the detailed basis on which such payments are to be made is specified in a written agreement with the employer." *Nat'l Leadburners Health & Welfare Fund v. O.G. Kelley & Co.*, 129 F.3d 372, 374 (6th Cir. 1997). In lockstep with Local 324's refusal to bargain, then, the Funds refused to accept contributions from Rieth-Riley and the POA contractors after the Road Agreement expired. For a period of time, they returned each and every one of Rieth-Riley's post-expiration contribution checks with a letter informing Rieth-Riley that "there is no legal basis for

---

[11]    Road Agreement Term. Ltrs., R.76-2 at 2, PageID #2540; Local 324 Ltr. re: POA Contractors, R.76-3 at 2, PageID #2543.

[12]    Local 324 Ltr. re: POA Contractors, R.76-3 at 2, PageID #2543; Funds' Emails re: POA Contractors, R.76-7 at 2, PageID #2554; MITA POA Rescission, R.76-15 at 7, PageID #2948; Jan. 2022 NLRB Order, R.76-27 at 19, PageID #3309.

[13]    Road Agreement Term. Ltrs., R.76-2 at 2, PageID #2540; Local 324 Ltr. re: POA Contractors; R.76-3 at 2, PageID #2542; Ajax POA Contractors Emails, R.76-5 at 4, PageID #2549; MITA Ltr. re: POA Contractors, R.76-6 at 2, PageID #2552; Funds' Emails re: POA Contractors, R.76-7 at 2, PageID #2554; MITA Ltr. re: POA Contractors, R.76-8 at 2, PageID #2558; MITA POA Rescission, R.76-15 at 6-9, PageID ##2947-2950; Jan. 2022 NLRB Order, R.76-27 at 3, PageID #3293.

US.360715409.12

accepting contributions without a written agreement between [Rieth-Riley] and IUOE Local 324."[14]

The Funds treated the Non-POA Contractors, who had been signatories to the very same road agreement as Rieth-Riley, differently. Local 324 had *mutually agreed* with the Non-POA Contractors to extend the Road Agreement while they negotiated for a successor CBA, and the Funds continued to accept post-expiration contributions from the Non-POA Contractors in the meantime.[15] Because Local 324 and the Non-POA Contractors had mutually agreed to extend the Road Agreement, the Funds believed that the Road Agreement continued to satisfy Section 302's "written agreement" requirement as to the Non-POA Contractors.[16]

The Funds' refusal to accept contributions from the POA Contractors stripped the POA Contractors' employees—*union members and plan participants*—of their bargained-for benefits.[17] Those union members sued the Funds in the Eastern District of Michigan, alleging that the Funds' support of Local 324's preference for Non-POA

---

[14] Returned Contributions, R.76-9 at 2-5, PageID ##2562-65; *see also* Jan. 2022 NLRB Order, R.76-27 at 3, 25, PageID ##3293, 3315.

[15] Local 324. Ltr. re: POA Contractors, R.76-3 at 2, PageID #2543; Funds' Emails re: POA Contractors, R.76-7 at 2, PageID #2554.

[16] Funds' Emails re: POA Contractors, R.76-7 at 2, PageID #2554; Returned Contributions, R.76-9 at 2-5, PageID ##2562-65; *Thompson* Hr'g Tr., R.76-10 at 7:13-19, 14:13-16, 16:5-19, PageID ##2573, 2570, 2582; *id.* at 18:20-25, PageID #2584.

[17] *See generally Thompson* Compl., R.76-11 at 17-18, 20-22, ¶¶ 80-82, 99-108, PageID ##2861-82, 2684-86; *Thompson* Order, R.76-24 at 15, PageID #3281.

US.360715409.12

Contractors violated their fiduciary duties under ERISA. *See generally Thompson v. Stockwell*, No. 2:18-cv-12392-LJM-EAS (E.D. Mich. Aug. 2, 2018). To defend themselves in *Thompson*, the Funds affirmed their distinction between the POA Contractors and Non-POA Contractors, which was that the Funds and the non-POA Contractors had either already signed a new agreement or were currently negotiating with Local 324 for a successor agreement.[18] As for the POA Contractors, including Rieth-Riley, the Funds told the district court that there was no contract and that Local 324 would never negotiate for a successor agreement.[19]

### 4. Rieth-Riley's Repeated—and Rejected—Manifestations of Intent

Local 324 and the Funds were adamant: unlike the Non-POA Contractors, with whom Local 324 had *mutually agreed* to extend the Road Agreement, or enter into a new agreement, Rieth-Riley had no contract with Local 324 or the Funds that allowed for or required the Funds to accept contributions from Rieth-Riley. Rieth-Riley pushed to change that in an attempt to preserve its employees' bargained-for benefits. And the Funds and Local 324 rejected each and every one of those attempts.

First, Rieth-Riley and the POA Contractors offered to enter into a separate participation agreement ("Assent of Participation") with the Funds, allowing the POA Contractors to "participate and remain a party in the same manner and form as any

---

[18] *Thompson* Hr'g Tr., R.76-10 at 7:13-19, 14:13-16, 16:5-19, 18:20-25, PageID ##2573, 2580, 2582, 2584.

[19] *Thompson* Hr'g Tr., R.76-10 at 16:14-19, PageID #2582.

8

other participating employer."[20] But the Funds rejected that offer, believing that the Assent of Participation was "unilaterally created by MITA" and could not create independent contractual contribution obligations.[21]

Second, because Local 324 and the Funds represented that the POAs were the obstacles to negotiating a successor CBA with Local 324 and then the Funds, in turn, accepting its contractors' post-expiration contributions, MITA revoked all POAs with the POA contractors, including Rieth-Riley.[22] Local 324 rejected MITA's revocation.[23] Local 324 also rejected Rieth-Riley's separate attempt to rescind its POA, and the Funds continued to reject Rieth-Riley's post-expiration contributions.[24]

## 5.    The Parties' Discovery of Rieth-Riley's Statutory Contribution Obligations

The Funds were eventually forced to accept Rieth-Riley's post-expiration contributions, but not because they or Local 324 wavered from their "no contract"

---

[20]    Assent of Participation, R.76-13 at 2, PageID #2747.

[21]    *Thompson* Mot. Evid. Hr'g, R.76-14 at 24 n.3, PageID #2771; *see also Thompson* Hr'g Tr., R.76-10 at 12:12-16, PageID #2577 (Funds' current counsel, Nancy Pearce, arguing that a "participation agreement" or "assent of participation" "must be subject to an agreement between the bargaining parties in order for the contributions to come into the fund").

[22]    MITA POA Rescission, R.76-15 at 2-5, PageID ##2943-46; Jan. 2022 NLRB Order, R.76-27 at 23-24, PageID ##3313-14.

[23]    MITA Ltr. re: Bargaining, R.76-6 at 2, PageID #2552; Jan. 2022 NLRB Order, R.76-27 at 23, PageID #3313.

[24]    MITA Ltr. re: Bargaining, R.76-6 at 2, PageID #2552; Rieth-Riley POA Rescission, R.76-16 at 3, PageID #2953; Jan. 2022 NLRB Order, R.76-27 at 24, PageID #3314.

9

position as to Rieth-Riley. Instead, Rieth-Riley and Local 324 uncovered a critical fact distinguishing the statutory bargaining relationship between Rieth-Riley and Local 324 from that of most of the other Road Agreement signatories (POA and Non-POA Contractors alike).

The NLRA establishes two different kinds of bargaining relationships. The most common, which is governed by Section 9(a) of the NLRA, is established when a union has been "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes." 29 U.S.C. § 159(a); *see also Rieth-Riley I*, 43 F.4th at 620. In the construction industry, though, the more common relationship is one governed by Section 8(f) of the NLRA, which allows "unions and employers in the construction industry to enter into CBAs without requiring the union to establish that it has the support of a majority of the employees in the unit covered by the CBA." *DiPonio Constr. Co. v. Int'l Union of Bricklayers & Allied Craftworkers, Loc. 9*, 687 F.3d 744, 749 (6th Cir. 2012); *see also* 29 U.S.C. § 158(f).

That distinction matters when a CBA expires. As this Court is well aware, the NLRA requires employers and unions with Section 9(a) relationships to bargain collectively with each other in good faith. *See* 29 U.S.C. § 158(a)(5); *id.* § 158(d); *Rieth-Riley I*, 43 F.4th at 620. That obligation extends even after a collective bargaining agreement expires, and in the post-expiration period, "an employer's unilateral change in conditions of employment under negotiation" is as much a violation of its obligation to bargain in good faith as a "flat refusal" to bargain. *NLRB v. Katz*, 369

10

U.S. 736, 743 (1962). Therefore, both sides have a statutory duty to maintain the status quo under the predecessor CBA while they bargain in good faith for a new one, including any fringe benefit contribution obligations under the expired CBA. *See, e.g.,* *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991); *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 544 n.6 (1988). Parties to a Section 8(f) agreement, by contrast, have *no* statutory duty to bargain with each other and, therefore, have no statutory duty to maintain the status quo with respect to the terms of a Section 8(f) CBA when it expires. *See, e.g., Colo. Fire Sprinkler, Inc. v. NLRB*, 891 F.3d 1031, 1035-36 (D.C. Cir. 2018).

Most signatory employers to the Road Agreement, including Rieth-Riley, were building and construction industry contractors, so when the Road Agreement expired, they and Local 324 assumed that they had Section 8(f) bargaining relationships, meaning that they had no duty to bargain for a successor agreement and no statutory duty to maintain the status quo under the Road Agreement in the meantime.[25] Rieth-Riley and Local 324 turned out to be wrong. In October 2018, Rieth-Riley discovered a 1991 Section 9(a) recognition agreement between it and Local 324 that required the parties to bargain in good faith for a successor CBA.[26]

---

[25] Jan. 2022 NLRB Order, R.76-27 at 19 n.44, PageID #3309; Ltr. re: Section 9(a) Agreement, R.76-17 at 2, PageID #2955.

[26] Ltr. re: Section 9(a) Agreement, R.76-17 at 2, PageID #2955; Recognition Agreement, R.76-18 at 3-5, PageID ##2958-60; Jan. 2022 NLRB Order, R.76-27 at 32, PageID #3322.

11

Rieth-Riley's Section 9(a) bargaining relationship with Local 324 meant that, despite the parties having no *contract* obligations to each other, Rieth-Riley was statutorily obligated to make, and the Funds were statutorily obligated to accept, Rieth-Riley's post-expiration contributions while Rieth-Riley and Local 324 negotiated for a successor agreement. Once Rieth-Riley produced evidence of its Section 9(a) relationship with Local 324, the Funds immediately began accepting the contributions.[27] And the Funds defended their refusal to accept-post-expiration contributions from the remaining POA Contractors in the *Thompson* litigation on that basis.[28]

The Funds began accepting contributions from other POA Contractors only when those contractors individually entered into a new contract with Local 324, either a separate Memorandum of Understanding or a new CBA.[29] The Funds' careful treatment of the POA Contractors shows that the Funds were willing to accept contributions from them in only two circumstances: (1) the contractor produced evidence of a Section 9(a) relationship, giving rise to *statutory* contribution obligations; or (2) the contractor entered into a separate written agreement with Local 324, giving

---

[27] *Thompson* Hr'g Tr., R.76-10 at 45:6-46:9, PageID ##2611-12; Ltr. re: Fringe Benefit Contributions, R.76-26 at 2, PageID #3288; Jan. 2022  NLRB Order, R.76-27 at 32, PageID #3322.

[28] *Thompson* Hr'g Tr., R.76-10 at 39:1-7, 45:22-46:9, PageID ##2605, 2611-12; *Thompson* Mot. to Dismiss, R.76-19 at 9-10 n.2, PageID #2969-70.

[29] MOU, R.76-20 at 2-3, PageID ##3238-39; Returned Ajax Checks, R.76-21 at 10, PageID #3249.

US.360715409.12

rise to new *contractual* contribution obligations. But in no circumstance did Local 324 or the Funds consider the Road Agreement to be an ongoing source of *contractual* contribution obligations for the POA Contractors after it expired.

As the NLRB recently confirmed, "Rieth-Riley and the Union have been negotiating a successor contract since November 2018, but have not reached an agreement."[30] At all times relevant to this lawsuit, since discovering its Section 9(a) relationship with Local 324, Rieth-Riley continued to make—and the Funds continued to accept and credit—fringe benefit contributions to the Funds, retroactively to the expiration of the Road Agreement.[31]

## 6. The Funds' Amended Complaint

The Funds' Amended Complaint alleged that Rieth-Riley is delinquent in its contributions to the Funds "from August 1, 2019 onward" and asked the district court to order Rieth-Riley to submit to an audit of its books and records and to pay the Funds the delinquent amounts, as well as attorneys' fees, audit fees, interest, and liquidated damages.[32] The Funds admitted that the Road Agreement has expired, but they alleged that Rieth-Riley "has acted as if the expired collective bargaining agreement continued in effect … through compliance with its explicit terms,"

---

[30]   July 2022 NLRB Order, R.76-28 at 4, PageID #3362; *see also* Jan. 2022 NLRB Order, R.76-27 at 39, PageID #3329.

[31]   Ltr. re: Fringe Benefit Contributions, R.76-26 at 2, PageID #3288; Jan. 2022 NLRB Order, R.76-27 at 2, PageID #3329.

[32]   Am. Compl., R.12 at 8, 10-12, PageID ##68, 70-72.

including through its continued contributions to the Funds at the rates and in the manner required under the Road Agreement.[33]

**7.      The District Court's Dismissal for Lack of Subject-Matter Jurisdiction**

Rieth-Riley moved to dismiss for lack of subject-matter jurisdiction on August 25, 2020, arguing that its contribution obligations to the Funds are solely statutory, not contractual, and are within the exclusive jurisdiction of the National Labor Relations Board ("NLRB") under *Advanced Lightweight*, 484 U.S. 539.[34] The district court granted that motion.[35]

**8.      This Court's Remand**

On August 8, 2022, this Court reversed the district court's original dismissal in a narrow opinion, holding that *Advanced Lightweight* is not a jurisdictional rule and that the existence (or nonexistence) of a contractual contribution goes to the merits of the Funds' claims under ERISA, not the district court's jurisdiction to hear them. *Rieth-Riley I*, 43 F.4th at 618-19. Regarding the merits, this Court previewed that, on remand, "the Funds' contract claims may fall flat for the reasons the district court gave": that no contract binds Rieth-Riley to make contributions to the Funds. *Id.* at 623.

---

[33]  *Id.*, ¶¶ 16-17, PageID ##65-66.

[34]  Mot. to Dismiss, R.19, PageID ##140-75.

[35]  Mot. to Dismiss Order, R.62, PageID #2379-97.

US.360715409.12

9.    **The District Court's Grant of Summary Judgment for Rieth-Riley and Against the Funds**

On remand, the parties engaged in additional discovery, but that discovery produced no evidence that changed the facts the district court considered the first time around.[36] If anything, the additional discovery reinforced the district court's prior factual findings, as Rieth-Riley produced and relied on two rulings from the NLRB that confirmed them.[37] The parties therefore filed cross-motions for summary judgment on "largely the same facts and … largely the same materials as their papers on" Rieth-Riley's original motion to dismiss.[38] One difference, though, is that the Funds now *only* seek an audit of Rieth-Riley's contributions, rather than the contributions themselves (although they claim they may later sue to collect any "shortfalls" revealed by their requested audit).[39]

Because the facts were unchanged, as this Court predicted, "the Funds' contract claims [fell] flat for the reasons the district court gave" in its original order.

---

[36]    Summ. J. Order, R.86 at 2, PageID #4073; *see also* Summ. J. Hr'g Tr., R.92 at 11:23-12:25, PageID ##4119-20. The only new evidence the Funds cited is that, contrary to a stray reference in the district court's original order, the Funds were not pursuing contribution claims before the NLRB. *Id.* (12:13-17), PageID #4120. But at oral argument, the Funds agreed with the district court's characterization of this fact as "a frolic and detour of irrelevancy" in the district court's prior opinion and confirmed that it made no difference in the outcome. *Id.* (12:18-25).

[37]    Rieth-Riley's Mot. Summ. J., R.75 at 11-12, PageID ##2465-66; *see also* Jan. 2022 NLRB Order, R.76-27, PageID ##3292-3355; July 2022 NLRB Order, R.76-28, PageID ##3360-99.

[38]    Summ. J. Order, R.86 at 2, PageID #4073.

[39]    Funds' Mot. Summ. J., R.77 at 6, PageID #3411.

*Rieth-Riley I*, 43 F.4th at 623. Specifically, the district court held that "on this record, no jury reasonably could find that the parties mutually assented to enter an express or implied CBA after the Road Agreement expired."[40]

The Funds also asserted a brand-new claim in their motion for summary judgment: they sought to enforce the Road Agreement as an unexpired contract, on its own, as to pre-expiration time periods. The district court rejected that, too, holding that the Funds had not pleaded this claim and that, in any event, it failed on the merits because the Funds had only demanded that Rieth-Riley produce records "through the date of the audit," which precluded the court from bifurcating a pre-expiration audit (if the Amended Complaint had requested one) from a post-expiration audit (which the Amended Complaint clearly requested).[41]

The district court granted Rieth-Riley's motion for summary judgment and denied the Funds' motion.[42]

## STANDARD OF REVIEW

This Court reviews the district court's summary judgment decision *de novo*. *Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 310 (6th Cir. 2010). Summary judgment is appropriate if there is "no genuine dispute as to any material

---

[40]  Summ. J. Order, R.86 at 23, PageID #4094.

[41]  *Id.* at 25-26, PageID ##4096-97.

[42]  *Id.* at 30, PageID #4101.

US.360715409.12

fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## SUMMARY OF THE ARGUMENT

As this Court confirmed in *Rieth-Riley I*, the Funds' ERISA claims require a "live contract." 43 F.4th at 618. Obligations arising solely from the NLRA's *statutory* obligation to maintain the status quo of the terms and conditions of an expired collective bargaining agreement are not contractual and are not enforceable under ERISA. *Id.* at 617-18; *see also Advanced Lightweight*, 484 U.S. at 546-47; *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959).

The district court faithfully discharged this Court's mandate and applied this rule to the merits of the Funds' claims, not its jurisdiction to hear them. But nothing about the facts or the black-letter law has changed since this Court issued *Rieth-Riley I*. So, just as this Court predicted, "the Funds' contract claims [fell] flat for the reason[] the district court [originally] gave," *Rieth-Riley I*, 43 F.4th at 623, which is that no contract exists to support them.

That has to be true, because the formation of a labor contract requires mutual assent, and the undisputed facts show that both the Funds and Local 324 rejected every attempt by Rieth-Riley to extend the Road Agreement or form a new contract after it expired. The Funds' audit rights, if any, arise solely from Rieth-Riley's statutory obligation under the NLRA to maintain the status quo of the terms and conditions of the Road Agreement while Rieth-Riley and Local 324 continue to negotiate for a

17

successor agreement. And as this Court acknowledged in *Rieth-Riley I*, those statutory rights are enforceable only before the NLRB, not as a contract claim under ERISA in federal court. *Rieth-Riley I*, 43 F.4th at 618.

The Funds argue that labor contracts are an exception to the universal rule that the formation of a contract requires mutual assent. In their view, mutual assent is not required to form a contract when an employer manifests an intent to be bound by an expired collective bargaining agreement, even when the union or fringe benefit funds *reject* the very same contract. They are wrong. There is no "ERISA exception" to the rule that contract formation requires mutual assent, and there is no dispute that the Funds and Local 324 withheld their assent from Rieth-Riley.

That principle resolves the Funds' entire appeal: the Funds simply cannot enforce a contract they rejected. But all of the Funds' other theories fail on their merits, too.

First, the Funds claim that because their Trust Agreements purport to give them the right to audit contributing employers, they are entitled to enforce those agreements against Rieth-Riley under ERISA Sections 502(a)(3) and 515, which provide a cause of action in federal court for the Funds to enforce their plan documents. But as this Court acknowledged in *Rieth-Riley I*, there is more than one way that an employer may be bound to a multiemployer fund's governing documents (contract or statute), and ERISA provides a remedy in federal court only to enforce one kind of obligation (those that arise by contract, not statute). Rieth-Riley is not

18

contractually bound to the Trust Agreements, so the Funds have no remedy to enforce them under ERISA.

Second, the Funds now claim that they are entitled to enforce the Road Agreement as an unexpired contract to audit *pre-expiration* time periods. Even assuming the Funds had pleaded a pre-expiration audit claim, they forfeited it by failing to raise it in response to Rieth-Riley's original motion to dismiss or in *Rieth-Riley I*. In fact, this claim is nowhere in their Amended Complaint, which unambiguously seeks to enforce only *post-expiration* obligations. For that reason, this newfound claim fails on its merits, too. The Funds' pre-expiration audit requests simply cannot be bifurcated from the single audit request in their Amended Complaint, made over a year after the Road Agreement expired and clearly encompassing post-expiration time periods.

None of this should surprise the Funds. They have known since 2018 that they have no contract rights against Section 9(a) contractors like Rieth-Riley that are only performing their status quo obligations because they said exactly that to the district court in *Thompson*.[43] Knowing that, they and Local 324 refused to enter into any new contract with Rieth-Riley and then defended their no-contract position so aggressively that they cut off their own members' benefits to prove it. Their rejection of a contractual relationship with Rieth-Riley is exhaustively documented and undisputed.

---

[43] *See Thompson* Mot. for Reconsideration, R.76-14 at 10-11, 23-25, 31, PageID ##2757-58, 2770-72, 2778.

US.360715409.12

Since then, all that's changed is that, now, the Funds want to sue Rieth-Riley in federal court under ERISA using a cause of action that requires a contract; so they've changed their tune, distanced themselves from the evidence in the record and the arguments they made in *Thompson*, and decided to argue that there had been a contract in place all along as a result of Rieth-Riley's unilateral conduct. To quote the district court, it's all "highly disingenuous."[44]

The district court rejected the Funds' gamesmanship, and this Court should, too. The district court's judgment should be affirmed.

## ARGUMENT

## I.   The District Court Properly Granted Rieth-Riley Summary Judgment on the Funds' Post-Expiration Audit Claims.

The district court properly granted Rieth-Riley summary judgment on the Funds' claims to audit Rieth-Riley's post-expiration contributions. Labor contracts require mutual assent, and it is undisputed that the Funds withheld theirs. Under these circumstances, the Funds' Trust Agreements are not independently enforceable contracts against Rieth-Riley, which has only statutory status quo obligations to the Funds under Section 9(a) of the NLRA, not contractual obligations.

### A.   Labor Contracts Require Mutual Assent, and the Funds Cannot Enforce a Contract They Rejected.

A multiemployer fund's right to audit contributing employers, if any, is created by contract. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Trans., Inc.*, 472 U.S. 559,

---

[44]   Summ. J. Order, R.86 at 20, PageID #4091.

US.360715409.12

581 (1985). Nothing in ERISA "independently confer[s] on [the Funds'] trustees a right to perform the sort of audit demanded in this case." *Id.* And as the Supreme Court held in *Advanced Lightweight*, and as this Court confirmed in *Rieth-Riley I*, ERISA Section 515 is only available to enforce obligations created by a contract. *Advanced Lightweight*, 484 U.S. at 546-49 (holding that Section 515 is "limited to the collection of 'promised contributions'"); *Rieth-Riley I*, 43 F.4th at 619-20 (holding that only "[i]f the duty stems from a live contract" does "ERISA give funds a claim for delinquent contributions in federal district court"). That's because obligations created by the NLRA's statutory duty to maintain the status quo of the terms and conditions of an expired CBA are within the exclusive jurisdiction of the NLRB under *Garmon*, 359 U.S. at 244, and cannot be enforced in federal court, *Advanced Lightweight*, 484 U.S. at 552.

Here, the Funds attempted to thread the *Garmon* preemption needle by suing under a contract that they alleged Rieth-Riley formed *unilaterally*, claiming that Rieth-Riley bound itself to the expired Road Agreement by "demonstrating an intent to abide by and continue to be bound by" it.[45] But as the district court correctly held, the undisputed facts show that Local 324 and the Funds themselves *rejected* the formation of any contract after the Road Agreement expired. The Funds cannot now sue to enforce a contract they rejected.

---

[45]    Am. Compl., R.12, ¶ 17, PageID #66.

### 1. Labor Contracts Require Mutual Assent.

Courts "interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015). One of those "ordinary principles of contract law" is that contracts can only be formed by mutual assent.[46] *See, e.g., Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers Union*, 835 F.2d 1164, 1168 (6th Cir. 1987) ("A meeting of the minds of the parties must occur before a labor contract is created."); *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers – Loc. 1603 v. Transue & Williams Corp.*, 879 F.2d 1388, 1393 (6th Cir. 1989) (applying *Bobbie Brooks* and considering whether "both the Union and [employer]" intended to be bound by contract). Therefore, although a party can *accept* a labor contract the other side has offered with "conduct manifesting an intention to be bound by agreed-upon terms," a "'meeting of the minds' between the parties must still occur before a labor contract is created." *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union 1199 v. Pepsi-Cola Gen. Bottlers, Inc.*, 958 F.2d 1331, 1335 (6th Cir. 1992).

*Michigan Bricklayers*, relied on by the Funds for their absurd argument that labor contracts do not require mutual assent, *see* App. R. 18 at 49, actually proves the rule. The Funds cite *Michigan Bricklayers* for the supposed rule that "[u]nilateral actions by

---

[46]  "[T]hreshold questions of contract formation in the labor relations context are governed by … substantive federal common law." *Sheet Metal Emps. Indus. v. Absolut Balancing Co.*, 830 F.3d 358, 362 (6th Cir. 2016).

22

an employer that foster an impression that the employer intends to be bound by an expired collective bargaining agreement are sufficient to trigger ERISA liability." *Id.* (quoting *Michigan Bricklayers*, 116 F.3d 1480 (table), at *3). Despite its reference to supposedly "unilateral" actions by the employer, however, *Michigan Bricklayers* in fact rested on a finding of mutual assent. The majority held that an employer bound itself to an expired collective bargaining agreement by manifesting an intent to do so. 115 F.3d 1480 (table), at *3. The dissent and majority split, though, over the factual question whether the union also "intended to be bound by the CBA after its termination." *Id.* at *5 (Beckwith, J., dissenting). The majority concluded that the record supported a finding that the union, too, intended to be bound, thus establishing mutual assent to the contract, *id.* at *3, while the dissent concluded that evidence of the union's intent was "[g]laringly absent" from the record, and, therefore, insufficient to establish mutual assent, *id.* at *5 (Beckwith, J., dissenting). Indeed, the Funds themselves recognized *Bricklayers* to stand for this point in the *Thompson* litigation, when their counsel (the same counsel currently representing them in this appeal) distinguished *Bricklayers* and other similar cases on the ground that they "are course of conduct cases where the Union has not objected and so the agreement continues *with the permission of the parties*."[47]

---

[47] *Thompson* Hr'g Tr., R.76-10 at 10:18-20, PageID #2575 (emphasis added); *see also id.*, R.76-10 at 17:14-19, PageID #2582 (Nancy Pearce distinguishing "course of conduct" cases and arguing that "in these circumstances, the Union is saying, No, it's not having an agreement with these employers. And it's not just saying 'No,

The Funds are asking the Court to create a "unilateral-manifestation-of-intent" exception to *Advanced Lightweight* and *Rieth-Riley I*. But consistently with black-letter contract law, neither *Advanced Lightweight* nor *Rieth-Riley I* holds that ERISA requires a contract *unless* the employer unilaterally manifests an intent to be bound by an expired agreement. Instead, they require a "contract." *See Advanced Lightweight*, 484 U.S. at 546 (ERISA requires a "contractual obligation to make contributions"); *Rieth-Riley I*, 43 F.4th at 624 ("'In the absence of a contractual' duty, an employer's 'duty to preserve the status quo … is an issue for the NLRB.'" (quoting *RiverStone Grp., Inc. v. Midwest Operating Eng'rs Fringe Benefit Funds*, 33 F.4th 424, 431 (7th Cir. 2022)). And has long been settled in this circuit and everywhere, the formation of labor contracts, like all contracts, requires mutual assent. *See Bobbie Brooks*, 835 F.2d at 1168; *Pepsi-Cola Gen. Bottlers*, 958 F.2d at 1335.

At bottom, the Funds have cited no authority for the risible proposition that one party, by conduct, can create a labor contract that the other party refuses to form.[48] Indeed, that would be irreconcilable with the NLRA. "[F]reedom of contract" is a "fundamental polic[y]" of the NLRA. *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 108

we're not having it', they're saying, 'No, we're not ever going to have an agreement with these employers.' And in those circumstances, the employers can't contribute to the funds.")

[48] Indeed, the Funds said it best themselves in *Thompson*, when they rejected the POA Contractors' Assent of Participation as "unilaterally created by MITA" and insufficient to create independent contractual contribution obligations. Mot. Evid. Hr'g, R.76-14 at 24 n.3, PageID #2771.

24

(1970). For that reason, neither federal courts nor the NLRB have the "power to compel a company or a union to agree to any substantive contractual provision of a collective bargaining agreement." *Taylor Warehouse Corp. v. NLRB*, 98 F.3d 892, 903 (6th Cir. 1996) (quoting *H.K. Porter*, 397 U.S. at 102). Allowing one party to unilaterally bind another to a collective bargaining agreement with its conduct runs afoul of the same rule.

### 2.  The Funds and Local 324 Withheld Their Assent.

Here, the undisputed facts clearly establish that Local 324 and the Funds rejected every single one of Rieth-Riley's attempts to extend the Road Agreement or form a new agreement post-expiration:

- MITA terminated the Road Agreement on February 19, 2018 to avoid triggering the Road Agreement's evergreen clause and to open negotiations for a successor agreement.[49] But instead of accepting MITA's offer to negotiate a successor agreement, Local 324 (i) accepted MITA's termination; (ii) individually counter-terminated the Road Agreement as to "each and every one of the POA Contractors," including Rieth-Riley; and (iii) withdrew from multiemployer bargaining with MITA and refused to negotiate with MITA or any POA Contractors individually for a successor CBA.[50]

---

[49]  Road Agreement, R.76-1 at 41 (Art. XIII), PageID #2533; Road Agreement Term. Ltrs., R.76-2 at 3, PageID #2541.

[50]  Road Agreement Term. Ltrs., R.76-2 at 2, PageID #2540 (accepting MITA's termination of Road Agreement and "withdraw[ing] from multi-employer bargaining with MITA"); Local 324 Road Agreement Term. Ltr., R.76-4 at 2, PageID #2545 (individually terminating Road Agreement with Rieth-Riley); Local 324 Ltr. re: POA Contractors, R.76-3 at 2, PageID #2543 (explaining that "[t]here are no plans" to negotiate with POA Contractors).

- Rieth-Riley attempted to continue making contributions to the Funds after the Road Agreement expired, but the Funds refused to accept them (from Rieth-Riley and from any other POA Contractors).[51] They returned each and every one of Rieth-Riley's post-expiration contributions with a letter informing Rieth-Riley that "there is no legal basis for accepting contributions without a written agreement between [Rieth-Riley] and IUOE Local 324."[52]

- Rieth-Riley and the other POA Contractors offered to enter into the Assent of Participation, a separate participation agreement that would allow the POA Contractors to "participate and remain a party in the same manner and form as any other participating employer."[53] That, too, the Funds rejected, claiming that the Assent of Participation was "unilaterally created by MITA" and therefore could not create independent contractual contribution obligations.[54]

- Finally, taking Local 324 and the Funds at their word that its POA with MITA was the obstacle to negotiating a successor agreement, Rieth-Riley and MITA mutually rescinded Rieth-Riley's POA.[55] That, too, Local 324 rejected.[56]

At every turn, Local 324 and the Funds rejected Rieth-Riley's offers to extend the Road Agreement, negotiate a successor agreement, or enter into a new agreement

---

[51] Returned Contributions, R.76-9 at 2-5, PageID ##2562-65.

[52] *Id.*

[53] Assent of Participation, R.76-13 at 2, PageID #2747.

[54] *Thompson* Mot. Evid. Hr'g, R.76-14 at 24 n.3, PageID #2771; *see also Thompson* Hr'g Tr., R.76-10 at 12:12-16, PageID #2577 (Funds' current counsel, Nancy Pearce, arguing that a "participation agreement" or "assent of participation" "must be subject to an agreement between the bargaining parties in order for the contributions to come into the fund").

[55] MITA POA Rescission, R.76-15 at 2-4, PageID ##2943-45 (MITA's POA revocation); Rieth-Riley POA Rescission, R.76-16 at 2-3, PageID ##2952-53 (Rieth-Riley's POA rescission).

[56] MITA Ltr. re: Bargaining, R.76-6 at 2, PageID #2552 (recounting Local 324's rejection of POA rescissions).

so that Rieth-Riley could continue to make contributions to the Funds. Not until Rieth-Riley, Local 324, and the Funds discovered Rieth-Riley's Section 9(a) relationship with Local 324 did the Funds relent and accept Rieth-Riley's contributions.

The Funds have never disputed these facts – just their legal significance. In their view, their post-expiration conduct is irrelevant, because they claim that "but for the mutual mistake of the parties with respect to the 8(f) / 9(a) issue, the collective bargaining agreement would always have continued." App. R. 18 at 59. Their implication is that the parties' performance of their status quo obligations *after* they discovered Rieth-Riley's Section 9(a) obligations somehow created a contract. This argument fails under the law and the undisputed facts.

First, if Rieth-Riley and Local 324 had been aware of their Section 9(a) relationship when the Road Agreement expired, the only legal significance of that is that Rieth-Riley and the Funds would have begun performing their statutory status quo obligations earlier – when the Road Agreement expired, rather than several months later, when the Section 9(a) agreement was discovered. In fact, once the parties discovered Rieth-Riley's Section 9(a) agreement, the Funds demanded Rieth-Riley's post-expiration contributions retroactively to the day the Road Agreement

US.360715409.12

expired, when Rieth-Riley's status quo obligations arose, not some later date on which the parties allegedly established new contractual obligations.[57]

Moreover, compliance with Section 9(a) status quo obligations, on its own, cannot create a contract enforceable under Section 515 and *Advanced Lightweight. See, e.g.*, *Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 669 (7th Cir. 2003) (finding that mere compliance with statutory status quo obligations is not "voluntary" and is "not an acknowledgment of a contractual obligation" sufficient to create an implied contract); *cf. Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 29 (2d Cir. 1988) (holding that "deriv[ing] an implied contract … from the very post-expiration maintenance of status quo that the [NLRA] *requires* would raise the chaotic prospect that mere compliance with the NLRA would give rise to a contractual commitment," which is "anathema to the NLRA"). *Advanced Lightweight* requires a mutual *agreement* to extend the expired agreement, not mere compliance with the law. And there is **zero** evidence in the record that Local 324 or the Funds would have agreed to extend the Road Agreement with Rieth-Riley if only they had known about Rieth-Riley's Section 9(a) agreement when the Road Agreement expired. Instead, the evidence in the record is that Local 324 and the Funds rejected Rieth-Riley's post-expiration efforts to extend the Road Agreement or form a new contract at every turn, including after they discovered Rieth-Riley's Section 9(a) agreement.

---

[57]  Jan. 2022 NLRB Order, R.76-27 at 33, PageID #3323.

US.360715409.12

Second, the Funds themselves confirmed to the district court in the *Thompson* litigation, through the same counsel that represents them in this appeal, that the *only* reason they began accepting Rieth-Riley's post-expiration contributions was because they understood Rieth-Riley to have a statutory duty to make, and the Funds to have a statutory duty to accept, the contributions:

> When they discovered these 9(a) recognition agreements, **both parties stepped back** and said, Okay, we are going to agree that these are still in full force and effect and that we have a 9(a) relationship and based upon the recognition agreement that the Union now represents the employees and the employer has the obligation to maintain the status quo, contributions will be accepted under this recognition - - as a result of this 9(a) relationship.

> So, as far as I'm aware, **the parties have not negotiated a successor agreement.** The contributions are being accepted by the Funds because under the National Labor Relations Act, the rules, the bargaining rules are where you have a 9(a) relationship and contract expires, **you must maintain the status quo** that was in effect prior to termination of the agreement. And that means the employer has to continue to submit contributions to the funds and they have to continue to operate under that terminated agreement.

> **So, these employers, with 9(a) relationships, <u>are operating under maintaining the status quo under the terminated agreement</u>.** And the Funds are obligated to accept **because that's what the National Labor Relations Act says**.[58]

---

[58] *Thompson* Hr'g Tr., R.76-10 at 46:14-47:9, PageID ##2611-12 (Nancy Pearce, current counsel for the Funds, arguing to the district court in *Thompson*) (emphasis added); *see also Thompson* Mot. to Dismiss, R.76-19 at 9-10 n.2, PageID ##2969-70 (Funds' filing in *Thompson* litigation, stating that the "Amended Complaint resulted from discovery that the original Plaintiff Michael Thompson's employer, Rieth-Riley, has a § 9(a) bargaining relationship with the Union. As a result, Rieth-Riley is <u>obligated</u> under federal labor law to make contributions to the Funds while the

The district court did not err in taking the Funds at their word in statements *made to the district court* months after Rieth-Riley and Local 324 discovered their Section 9(a) relationship[59] and in defense of the Funds' continued refusal to accept contributions from other POA Contractors. (*See* Order, R.86 at 20, PageID #4091 ("The plaintiffs' newfound insistence that they assented to a new CBA as soon as they resolved 'the 8(f)/9(a) issue' is *highly disingenuous*." (emphasis added).) As the district court correctly concluded, the undisputed facts show that the Funds "plainly understood that their obligation to accept [Rieth-Riley's] contributions arose *despite* their refusal to contract with" Rieth-Riley, not because the parties suddenly agreed to revive the Road Agreement. (*Id.*) The only "meeting of the minds," App. R. 18 at 58, was as to Rieth-Riley's and the Funds' Section 9(a) obligations.

### 3.    Rieth-Riley's Compliance With its Status Quo Obligations Did Not Form a Contract.

There is simply no evidence in the record that Rieth-Riley and the Funds bound themselves to each other as a matter of contract at any time after the Road Agreement expired – not even Rieth-Riley's use of the Funds' standard administrative contribution forms for submitting its post-expiration status quo contributions. As the

---

bargaining parties engage in negotiations and Thompson has no standing or claims against [the Funds].'").

[59] The Funds' insistence that the district court considered only evidence arising "*before* the discovery of [Rieth-Riley's] 9(a) status" is a gross misrepresentation of the record. The district court explicitly cited evidence from *after* the discovery of Rieth-Riley's Section 9(a) agreement. Summ. J. Order, R.86 at 20, PageID #4091 (citing evidence of Funds' conduct from "November 2018 – more than a month after [Rieth-Riley] learned about the section 9(a) relationship").

district court acknowledged, it "is true that Rieth-Riley continued to submit fringe benefit reports that included boilerplate language referencing 'the current applicable Collective Bargaining Agreements'" after the parties discovered Rieth-Riley's Section 9(a) obligations.[60] But as this Court recognized in *Central States, Southeast & Southwest Areas Pension Fund v. General Materials, Inc.*, 535 F.3d 506, 510 (6th Cir. 2008), such boilerplate language cannot, on its own, create a contract in the absence of other evidence of contractual intent. *See also Dugan*, 344 F.3d at 668 (rejecting similar "boilerplate" language as insufficient to create a contract). And here, the undisputed facts show that, before discovering Rieth-Riley's Section 9(a) relationship with Local 324, the Fund *rejected* all of the post-expiration contributions that Rieth-Riley made on those very same forms.[61] The Funds' reliance on the certification clauses is just

---

[60]   *Id.* at 20, PageID #4091.

[61]   Returned Contributions, R.76-9 at 2-5, PageID ##2562-55; (rejecting Rieth-Riley's contributions between August and November 2018), Contribution Reports Pt. A, R.27-3 at 1-122, PageID ##758-879 (Rieth-Riley's rejected contribution forms from June 2018 through September 2018, crossed out with "DNA," presumably meaning "do not accept"); Contribution Reports Pt. B, R.27-4 at 1-38, PageID ##880-917 (same, for September 2018 through October 2018).) Moreover, at some point after the parties discovered Rieth-Riley's Section 9(a) obligations, Rieth-Riley's contribution forms were marked "9A" in the section identifying the bargaining agreement for Rieth-Riley's contributions. *See, e.g.*, Contribution Reports Pt. C, R.27-7 at 60-62, PageID #1337-39; Contribution Reports Pt. 1, R.77-13 at 2-22, PageID ##3675-95; *id.* at 44-120, PageID ##3717-93 (labeling "special agmt" as "F9A," referencing line F in the section identifying the applicable contribution rates, for the Road Agreement); Contribution Reports Pt. 2, R.77-14 at 2-64, PageID ##3794-3857 (same); Contribution Reports Pt. 3, R.77-15 at 2-71, PageID ##3859-3928 (same).

31

another version of their argument that Rieth-Riley unilaterally created a contract by complying with its statutory status quo obligations.

### 4. The Funds Cannot Distinguish Away *Thompson*.

The Funds' final attempt to dodge these undisputed facts is to distinguish them away, claiming that their statements in *Thompson* related only to the "written agreement" requirement of Section 302 of the LMRA. *See* App. R. 18 at 57-58. This is true, but the Funds' reliance on Section 302 of the LMRA only underscores their "no-contract" position. After the Road Agreement expired and before Rieth-Riley and Local 324 discovered their Section 9(a) agreement, the Funds concluded that it would be illegal to accept Rieth-Riley's (and all of the other POA Contractors') contributions under Section 302, which prohibits contributions to a multiemployer fund without a "written agreement" between the employer and union setting forth the "detailed basis" upon which the contributions are to be made.[62] The Funds claimed that the expired Road Agreement could not satisfy the "written agreement" requirement without an *actual agreement* between the employers and Local 324 to extend the Road Agreement.[63] Rieth-Riley's discovery of its Section 9(a) relationship solved that problem, because an expired Section 9(a) collective bargaining agreement "satisfies the … writing requirement," even though it is "no longer in force" as a contract. *Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 883 (9th Cir. 1996). So the

---

[62]  29 U.S.C. § 186(c)(5)(B).

[63]  *See, e.g.*, *Thomson* Mot. to Dismiss, R.76-19 at 24-26, PageID ##2984-86.

US.360715409.12

Funds' reliance on Section 302 proves the point: after the Road Agreement expired, just as the Funds claimed, no contract existed between Rieth-Riley and Local 324 that required or allowed Rieth-Riley to continue to make contributions to the Funds. And after the parties discovered Rieth-Riley's Section 9(a) obligations, there still was no contract (as the Funds told the district court in *Thompson*) – only a statutory contribution obligation that, defined by the substantive terms of the Road Agreement, the Funds recognized as satisfying the LMRA's "written agreement" requirement.

### B. The Trust Agreements Are Not Independently Enforceable Contracts.

The Funds also claim that they are entitled to enforce audit requirements in their Trust Agreements and collection policy under ERISA Sections 502(a)(3) and 515, because the "Trust Agreements and collection policy are *plan documents*, and the audit provisions therein are enforceable by plan trustees under ERISA's express enforcement provisions." App. R. 18 at 31. *See* 29 U.S.C. § 1132(a)(3) (providing cause of action for "appropriate equitable relief" to enforce the terms of ERISA or an ERISA-governed plan); § 1145 (requiring every employer bound to a multiemployer plan to act in accordance with plan documents). But ERISA does not entitle the Funds to enforce their governing documents in a vacuum, against any employer at any time; because of *Garmon* preemption, it only entitles the Funds to enforce them against employers who are bound to them by contract, not statute. *Advanced Lightweight*, 484 U.S. at 546-49 (holding that Section 515 is "limited to the collection of

33

'promised contributions'"); *Rieth-Riley I*, 43 F.4th at 619-20 (holding that only "[i]f the duty stems from a live contract" does "ERISA give[] funds a claim for delinquent contributions in federal district court"). Here, Rieth-Riley may be bound to the substantive terms of the Trust Agreements as a matter of its *statutory status quo obligations*, to the extent the Road Agreement incorporates them. But no *contract* binds Rieth-Riley to the Trust Agreements, so they are not enforceable against Rieth-Riley under ERISA.

To try and fit within these legal standards, the Funds first argue that Rieth-Riley bound itself to the Trust Agreements as a matter of contract by continuing to make contributions to the Funds after the Road Agreement expired, citing *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491 (9th Cir. 1990). *See* App. R. 18 at 38. *Miramar*, however, involved an employer that was bound by an active collective bargaining agreement – a contract – when the multiemployer fund demanded an audit pursuant to its trust agreement. By its own terms, the trust agreement bound contributing employers who were bound by contract to make contributions to the fund. *Id.* at 1493-94. And the trust agreement permitted the fund to conduct the audit it demanded. *Id.* at 1493. So, because the employer was contractually bound to make the contributions by an active collective bargaining agreement, and because the trust agreement bound any contributing employer that was required by contract to contribute to the fund, the Ninth Circuit held that the

34

fund could enforce the trust agreement against the employer, even though the collective bargaining agreement did not incorporate the trust agreement.

*Miramar* does not stand for the proposition that Rieth-Riley, on its own, created a contract by complying with its status quo obligations, even while Local 324 and the Funds *rejected* Rieth-Riley's offers to extend the Road Agreement or enter into a new contract. Again, the Funds cannot enforce a contract that they refused to form, and Rieth-Riley's performance of its status quo obligations cannot bind Rieth-Riley to any contract. *Derrico*, 844 F.2d at 29 (holding that "deriv[ing] an implied contract … from the very post-expiration maintenance of status quo that the [NLRA] *requires* would raise the chaotic prospect that mere compliance with the NLRA would give rise to a contractual commitment"); *see also, e.g.*, *Dugan*, 344 F.3d at 669 (holding that compliance with status quo obligations is "not an acknowledgment of a contractual obligation"). Simply put, the Funds cannot enforce the Trust Agreements against Rieth-Riley under ERISA because Rieth-Riley is not bound to the Trust Agreements by contract.

Next, the Funds argue that the Trust Agreements survived as independent contracts after the Road Agreement expired. App. R. 18 at 54. For that argument, too, the Funds cite nothing other than Rieth-Riley's compliance with its status quo obligations and submission of contributions on the Funds' standard forms, neither of which created a contract. Moreover, for *years*, the Funds have insisted that no employer can be independently bound to their Trust Agreements without an active

35

collective bargaining agreement with Local 324. They even acknowledge this in their brief: two pages after they insist that "the Trust Agreements survived expiration of the CBA," they candidly admit that they informed Rieth-Riley and the other POA Contractors that the Trust Agreements were *not* independent contracts that allowed them to contribute to the Funds. *Compare* App. R. 18 at 54 *with id.* at 56 ("As such, Defendant could not contribute to the Funds *even under the Trust Agreements*." (emphasis added)).

Indeed, that is exactly what the Funds said in *Thompson*. There, the Section 8(f) POA Contractors argued that they could independently be bound by the health care plan document even without an active collective bargaining agreement.[64] The Funds rejected that position, and their witnesses testified by affidavit, *under penalty of perjury*, that the Funds have never interpreted their Trust Agreements to be independent contracts allowing employers to contribute to the Funds absent an active collective bargaining agreement.[65] In a brief signed by the same counsel representing them in this appeal, the Funds repeatedly claimed that "the Trust Agreement requires a CBA between POA Employers and the Union," that "the Funds' Trustees have consistently interpreted the Trust Agreements to require an agreement with the Union," and that "the Funds' Trustees have not interpreted the Trust Agreement to

---

[64]  *E.g.*, *Thompson* Second Am. Compl., R.76-12, ¶¶ 47-49, PageID ##2711-12.

[65]  *Thompson* Mot. for Reconsideration, R.76-14 at 13-16, PageID ##2760-63.

36

permit contributions to the Funds in the absence of a CBA (or extended CBA) between the Union and the Funds."[66]

## II. The District Court Properly Granted Rieth-Riley Summary Judgment on the Funds' Pre-Expiration Audit Claims.

In their motion for summary judgment, for the first time in this litigation, the Funds claimed they could enforce the Road Agreement as an unexpired contract against Rieth-Riley to audit *pre-expiration* time periods, even though they did not demand an audit from Rieth-Riley until over a year after the Road Agreement expired.

The Funds' new pre-expiration audit claim fails for three independent reasons. First, the Funds forfeited this claim by failing to raise it at any point in the litigation prior to their motion for summary judgment. Second, this claim is nowhere in the Funds' Amended Complaint. And third, this claim fails on its merits because the Funds' new request for pre-expiration documents cannot be excised from the single audit request in their Amended Complaint, which was made post-expiration and encompasses post-expiration obligations.

### A. The Funds Have Forfeited Any Pre-Expiration Contract Claim.

Independently of its other shortcomings, the Funds forfeited this theory by not raising it in response to Rieth-Riley's original motion to dismiss for lack of subject-matter jurisdiction or on appeal in *Rieth-Riley I*.[67] Throughout this litigation, the Funds

---

[66] *Id.*

[67] The district court did not consider this issue, but this Court "may affirm a decision of the district court for any reason supported by the record, including on grounds

have always claimed that Rieth-Riley bound itself to a *new* implied contract after the Road Agreement expired by, among other things, complying with its terms.[68] That is a claim to enforce the Road Agreement as an implied CBA formed by conduct. *See, e.g.*, *Bobbie Brooks*, 835 F.2d at 1168 (holding that existence of implied CBA "can be shown by conduct manifesting an intention to abide by agreed-upon terms"). It is different in character from a claim to enforce the Road Agreement *itself*, retroactively to time periods before it expired, which the Funds raised for the first time in their motion for summary judgment.

The Funds say that they did not raise this claim before now because *Rieth-Riley I* "dealt solely with the preliminary issue of subject matter jurisdiction." App. R. 18 at 42. But the district court's prior dismissal and *Rieth-Riley I* both considered whether the Funds' *entire* Amended Complaint could proceed *at all*. If the Funds thought their Amended Complaint pleaded a claim to enforce *the Road Agreement* as its own unexpired contract for pre-expiration time periods, surely they would have told the district court so (as it would have provided a contractual basis for the district court to find jurisdiction under its analysis). And if the Funds thought the district court had

---

different from those on which the district court relied." *Phillips v. UAW Int'l*, 854 F.3d 323, 326 (6th Cir. 2017) (citation omitted).

[68]   *See, e.g.*, Funds' Mot. to Dismiss Resp. at 25, PageID #660 ("[I]n this case the question is whether Rieth-Riley's conduct manifested an intent to adopt or agree to the expired Road Agreement and whether Rieth-Riley must comply with the Road Agreement.").

US.360715409.12

misunderstood their claim, surely they would have told *this* Court so in *Rieth-Riley I*. They did neither.

The Funds' belated effort to advance this new theory has legal significance. Had the Funds raised their pre-expiration contract claim for the first time on appeal, it would have been forfeited. *See, e.g.*, *Jackson v. Ford Motor Co.*, 842 F.3d 902, 906 (6th Cir. 2016). And under the law of the case rule, even if the Funds had raised this claim initially in the district court, they nonetheless forfeited it for remand by not addressing it on appeal in *Rieth-Riley I*. A "party that fails to appeal an issue 'waives his right to raise the issue before the district court on remand or before [this Court] on appeal after remand.'" *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008) (cleaned up); *see also, e.g.*, *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001) (stating that "parties cannot use the accident of remand as an opportunity to reopen waived issues"). If the Funds intended to plead and preserve an independent contract claim to enforce the Road Agreement as to pre-expiration time periods, they had an obligation to raise it when their Amended Complaint was first on the chopping block.

### B.    The Funds Did Not Plead a Pre-Expiration Audit Claim.

As the district court correctly concluded, independently of forfeiture, the Funds simply did *not* plead a claim to audit pre-expiration time periods. This claim appeared for the first time in the case in the Funds' motion for summary judgment.[69]

---

[69]    Summ. J. Order, R.86 at 26, PageID #4097.

The Funds' Amended Complaint alleges that Rieth-Riley "demonstrat[ed] an intent to abide by and continue to be bound by the [Road Agreement] and engag[ed] in a course of conduct that constituted *adoption of the expired [Road Agreement]* through compliance with its explicit terms.[70] That is a claim to enforce the Road Agreement as an implied CBA formed by conduct after the Road Agreement expired, not a claim to enforce the Road Agreement as an unexpired contract. *See, e.g., Bobbie Brooks*, 835 F.2d at 1168. The Amended Complaint seeks contributions only "from August 1, 2019 onward," over a year after the Road Agreement expired.[71] It states no claims to enforce *pre-expiration* contractual rights; rather, no fewer than seven times, it expressly identifies the period relevant to the Funds' claims as commencing in June 2018, *after* the Road Agreement expired, and contains claims focused solely on Rieth-Riley's alleged manifestation of intent to remain bound by the Road Agreement during that post-expiration time period.[72]

The Funds had an obligation under Federal Rule of Civil Procedure 8(a)(2) to provide Rieth-Riley and the district court with "a short and plan statement" of their claim. The Funds were not permitted to raise a new, unpleaded, pre-expiration contract claim in their motion for summary judgment. If they had wanted "to expand their claim mid-stream …[,] 'the proper procedure … [was] to amend the complaint

---

[70]   Am. Compl., R.12 at ¶ 17, PageID #66.

[71]   *Id.*, ¶ 19, PageID #68.

[72]   *Id.*, ¶ 17, PageID ##66-67.

in accordance with Rule 15(a).'" *Vonderhaar v. Waymire*, 797 F. App'x 981, 990 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005)). This rule protects defendants from the "unfair surprise" of facing a new claim for the first time in response to a motion for summary judgment. *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019) (quotations omitted).

In addition to their Amended Complaint pleading an entirely different legal theory than the one they advance now, their Amended Complaint seeks contributions from only August 2019 onward, rendering an audit for any period before then irrelevant to their claims.[73] And although the Amended Complaint references the Funds' October 1, 2019 audit request letter, it does not attach it or say anything about that letter's apparent request for a pre-expiration audit. The pre-expiration audit claim in the Funds' motion for summary judgment was nothing short of an amended complaint disguised as a motion for summary judgment. *See, e.g.*, *Davis*, 945 F.3d at 496 (rejecting plaintiff's attempt to "fram[e] her 'claim' at a high level of generality" to encompass new theories raised for the first time at summary judgment); *Rafferty v. Trumbull Cnty., Ohio*, 758 F. App'x 425, 430 (6th Cir. 2018) (affirming district court's refusal to consider "novel theory" not pleaded in complaint and not raised until summary judgment).

---

[73]    *Id.*, ¶ 19, PageID #68.

US.360715409.12

### C.    The Funds' Audit Rights Did Not Survive Expiration of the Road Agreement.

Notwithstanding the Funds' forfeiture of and failure to plead their newfound pre-expiration contract claim, the district court addressed the claim on the merits and correctly held it failed there, too.

As the district court noted, the Funds brought a single audit claim based on a single audit request made in October 2019, over a year *after* the Road Agreement expired, and that clearly seeks records generated after, and to enforce contribution obligations arising after, the Road Agreement expired.[74] Their newfound theory would require the Court to bifurcate their single claim into pre-expiration and post-expiration time periods, which is unsupported by the Funds' Amended Complaint and the "ordinary principles of contract law" that govern their claims and prohibit courts from extending the terms of the Road Agreement beyond expiration absent explicit contract language saying so. *Tackett*, 574 U.S. at 435.

The Funds admit that they did not request an audit from Rieth-Riley until October 2019, over a year *after* the Road Agreement expired.[75] Any audit rights the Funds can enforce under ERISA rise and fall with their contract rights. *See, e.g.*, *Central Transport*, 472 U.S. at 581-82. By October 2019, the Funds had no contract rights – only statutory status quo rights enforceable by the NLRB. *See, e.g.*, *Advanced Lightweight*,

---

[74]    Summ. J. Order, R.86 at 25, PageID #4096.

[75]    *See, e.g.*, Am. Compl., R.12, ¶ 18, PageID ##67-68.

US.360715409.12

484 U.S. at 544 n.6. No contractual audit rights survived expiration of the Road Agreement for the Funds to enforce at any point, and certainly not now, in federal court under ERISA. *See, e.g., Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 207 (1991) (holding that most "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement," unless the contract explicitly provides otherwise);[76] *Tackett*, 574 U.S. at 442 (holding that when a contract is "silent as to the duration" of a contractual term, "a court may not infer that the parties intended those benefits" to extend beyond the terms of the CBA).

It is not true, as the Funds claim, that there is no way to enforce their audit rights for pre-expiration periods once the collective bargaining agreement expires. They just have to choose the right forum. *Cf. Rieth-Riley I*, 43 F.4th at 618. In exactly this circumstance, the NLRB has held that a failure to submit to an audit request made *after* the relevant collective bargaining agreement has expired constitutes, if

---

[76] The Funds' argument under *Litton* that audit rights are "the equivalent of … 'structural provision[s]' in a collective bargaining agreement, which, like arbitration, is intended to survive the expiration of the agreement," App. R. 18 at 44, was raised for the first time in their summary judgment reply brief and is therefore forfeited. *Compare* Funds' Summ. J. Mot., R.77, PageID ##3406-3434 (nowhere citing *Litton*); *and* Funds' Summ. J. Resp., R.82, PageID ##4012-39 (same) *with* Funds' Summ. J. Reply, R.84 at 7, PageID #4055 (citing *Litton* for the first time); *see also Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) (citation omitted) ("Time, time, and time again, we have reminded litigants that we will treat an 'argument' as 'forfeited when it was not raised in the opening brief.'").

US.360715409.12

anything, an unfair labor practice under Section 8(a)(5).[77] *Commercial Prop. Servs., Inc.*, 304 NLRB 134, 135 (1991) (rejecting contract claim to enforce audit request made after collective bargaining agreement expired but holding that employer's refusal "may render the employer liable under Section 8(a)(5)" of the NLRA). That claim, of course, is enforceable only by the NLRB. *See Garmon*, 359 U.S. at 244. The authorities cited by the Funds for a contrary rule are inapposite,[78] not binding on this Court, and, to the extent they hold that a fund's contractual audit rights *always* survive expiration of the relevant collective bargaining agreement, are irreconcilable with *Tackett* and *Litton*, which prohibit courts from extending terms beyond the expiration of a collective bargaining agreement absent explicit language to that effect in the

---

[77] The Court need not decide in this case whether the Funds could sue post-expiration to enforce an audit request made pre-expiration. But that is exactly what happened in *Rudd v. Baker Furniture*, 967 F. Supp. 984, 988 (M.D. Tenn. 1997), one of the cases relied on by the Funds: the audit request arose "during the pendency of the collective bargaining agreement."

[78] Three of them involve claims under *existing* contracts. *See Rudd*, 967 F. Supp. at 986-87 (enforcing trust agreements as independent contract); *Northwest Administrators v. Midland Trucking*, No. C06-400-JPD, 2006 WL 2192220, at *3 (W.D. Wash. July 31, 2006) (same); *Bldg. Serv. Emps. Pension Tr. v. Horsemen's Quarter Horse Racing Ass'n*, 609 F. Supp. 1075, 1080 (N.D. Cal. 1985) (applying existing collective bargaining agreements). And like the other cases cited by the Funds, *Trustees Painters Union Deposit Fund v. Euginio Painting Company*, No. 2:22-cv-12416, 2023 WL 6850570 (E.D. Mich. Oct. 17, 2023), is unpersuasive for its failure to meaningfully address this line of contrary Supreme Court authority. *Euginio* also inexplicably cites the district court's ruling in this case as support for its pre-expiration audit theory, even though the district court here held exactly the opposite. *Id.* at *7.

44

agreement. *See Tackett*, 574 U.S. at 442; *Litton*, 501 U.S. at 206; *see also CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 766 (2018).

## III. The District Court Properly Granted Summary Judgment for Rieth-Riley on the Funds' LMRA Claim.

Finally, the district court was correct to dismiss the Funds' LMRA Section 301 claim as forfeited. In *Rieth-Riley I*, this Court held that the Funds had forfeited their LMRA claim by failing to develop it on appeal. 43 F.4th at 621 n.1. Under the mandate rule, that means it was no longer in the case on remand. *See, e.g.*, *United States v. Moored*, 34 F.3d 1419, 1421 (6th Cir. 1994) ("The law of the case doctrine and the mandate rule generally preclude a lower court from reconsidering an issue expressly or impliedly decided by a superior court."). This Court was unequivocal in its holding that the Funds' LMRA claim failed on forfeiture grounds. *Rieth-Riley I*, 43 F.4th at 621 n.1. The district court was bound by that ruling on remand. *See, e.g.*, *Moored*, 34 F.3d at 1421. The Funds' LMRA claim simply did not survive *Rieth-Riley I* to be remanded to the district court.

Irrespective, as the district court correctly concluded, the Funds' LMRA claim fails on its merits anyway. Like ERISA, Section 301 of the LMRA requires a "contract[] between an employer and a labor organization."[79] It "has no application in the absence of a currently effective CBA" and cannot be used to enforce statutory obligations. *Derrico*, 844 F.2d at 25; *see also Cement Masons Health & Welfare Tr. Fund for*

---

[79]  29 U.S.C. § 185(a).

*N. Calif. v. Kirkwood-Bly, Inc.*, 692 F.2d 641 (9th Cir. 1982), *aff'g and adopting* 520 F. Supp. 942, 944 (N.D. Cal. 1981).

## CONCLUSION

The Funds' claims under ERISA require a live contract obligating Rieth-Riley to submit to their demand for an audit. The undisputed facts show that none exists and, instead, that the Funds' audit rights, if any, arise under Section 8(a)(5) of the NLRA and are enforceable only by the NLRB. The district court's grant of summary judgment in favor of Rieth-Riley and against the Funds should be affirmed.

US.360715409.12

Respectfully submitted,


s/ *Philip J. Gutwein II*
Philip J. Gutwein II
Emily A. Kile-Maxwell
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
(317) 237-0300
philip.gutwein@faegredrinker.com
emily.kilemaxwell@faegredrinker.com

*Counsel for Defendant-Appellee,*
*Rieth-Riley Construction Co., Inc.*

US.360715409.12

## CERTIFICATE OF COMPLIANCE WITH RULE 32

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 11,323 words, excluding the parts exempted by Rule 32(f). *See* Fed. R. App. P. 32(a)(7)(B).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 ProPlus version of Word in 14-point Garamond.

Respectfully submitted,

*s/ Philip J. Gutwein II*

*Counsel for Defendant-Appellee, Rieth-Riley Construction Co., Inc.*

48

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2023, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Respectfully submitted,

*s/ Philip J. Gutwein II*

*Counsel for Defendant-Appellee, Rieth-Riley
Construction Co., Inc.*

49

23-1699

---

## UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

---

## OPERATING ENGINEERS' LOCAL 324 FRINGE BENEFIT FUNDS and TRUSTEES OF THE OPERATING ENGINEERS' LOCAL 324 FRINGE BENEFIT FUNDS,

*Plaintiffs-Appellants,*

v.

## RIETH-RILEY CONSTRUCTION CO., INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Hon. David M. Lawson
Case No. 20-10323

---

## APPELLEE'S DESIGNATION OF DISTRICT COURT DOCUMENTS

---

Philip J. Gutwein II
Emily A. Kile-Maxwell
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
(317) 237-0300
philip.gutwein@faegredrinker.com
emily.kilemaxwell@faegredrinker.com

*Counsel for Defendant-Appellee, Rieth-Riley Construction Co., Inc.*

## DESIGNATION OF DOCUMENTS

| R. | Description | PageID # |
|---|---|---|
| 1 | Complaint | 1-12 |
| 9 | Answer | 26-42 |
| 12 | First Amended Complaint ("Am. Compl.") | 61-72 |
| 14 | Rieth-Riley's Motion for Leave to File Amended Answer | 89-117 |
| 15 | Rieth-Riley's Notice Withdrawing Motion for Leave to File Amended Answer | 118-120 |
| 16 | Stipulation for Amended Answer | 121 |
| 17 | Order Permitting Rieth-Riley to File Amended Answer | 122 |
| 18 | Amended Answer to First Amended Complaint ("Amended Ans.") | 123-139 |
| 19 | Rieth-Riley's Rule 12(h)(3) Motion to Dismiss ("Motion to Dismiss") | 140-175 |
| 19-2 | Declaration of Chad Loney in Support of Motion to Dismiss ("Loney Decl.") | 179-183 |
| 19-3 | Declaration of Michael Nystrom in Support of Motion to Dismiss ("Nystrom Decl.") | 185-190 |
| 19-4 | Declaration of Alexander Preller in Support of Motion to Dismiss ("Preller Decl.") | 191-198 |
| 19-5 | Declaration of Philip J. Gutwein II in Support of Motion to Dismiss ("Gutwein Decl.") | 200-201 |
| 62 | Opinion and Order Granting Defendants' Motion to Dismiss, Dismissing Case Without Prejudice, and Dismissing Other Pending Motions ("Motion to Dismiss Order") | 2379-2397 |
| 63 | Judgment ("First Judgment") | 2398 |
| 65 | Notice of Appeal ("First Notice of Appeal") | 2401-2403 |
| 68 | Nov. 10, 2020 Transcript of Hearing on Motion to Dismiss ("Mot. to | 2407-2434 |

| R. | Description | PageID # |
|---|---|---|
| | Dismiss Hr'g Tr.") | |
| 72 | Order Amending Scheduling Order ("Scheduling Order") | 2451 |
| 75 | Rieth-Riley's Motion for Summary Judgment ("Rieth-Riley Mot. Summ. J.") | 2455-2489 |
| 76 | Index of Exhibits in Support of Rieth-Riley's Motion for Summary Judgment | 2490-2492 |
| 76-1 | Rieth-Riley Ex. 1: 2013-2018 Collective Bargaining Agreement Between the Labor Relations Division of the Michigan Infrastructure and Transportation Association, Road Agreement and the International Union of Operating Engineers' Local No. 324 ("Road Agreement") | 2493-2538 |
| 76-2 | Rieth-Riley Ex. 2: Spring 2018 Letters Between Local 324 and MITA Regarding Termination of Road Agreement ("Road Agreement Term. Ltrs.") | 2539-2541 |
| 76-3 | Rieth-Riley Ex. 3: August 10, 2018 Letter from Local 324 to Funds Regarding MITA Termination of Road Agreement ("Local 324 Ltr. re: POA Contractors") | 2542-2543 |
| 76-4 | Rieth-Riley Ex. 4: February 21, 2018 Letter from Local 324 to Rieth-Riley Terminating Road Agreement ("Local 324 Road Agreement Term. Ltr.") | 2544-2545 |
| 76-5 | Rieth-Riley Ex. 5: Emails Between Ajax Paving Industries, Inc. and Local 324 Regarding Termination of CBA and POA Contractors ("Ajax POA Contractors Emails") | 2546-2550 |
| 76-6 | Rieth-Riley Ex. 6: August 29, 2018 Letter to Local 324 from MITA Regarding POA Contractors ("MITA Ltr. re: Bargaining") | 2551-2552 |

| *R.* | *Description* | *PageID #* |
|------|---------------|------------|
| 76-7 | Rieth-Riley Ex. 7: August 10, 2018 Email to Funds Regarding MITA and POA Contractors ("Funds' Emails re: POA Contractors") | 2553-2556 |
| 76-8 | Rieth-Riley Ex. 8: August 9, 2018 Letter from MITA to Funds Regarding POA Contractors ("MITA Ltr. re: POA Contractors") | 2557-2560 |
| 76-9 | Rieth-Riley Ex. 9: Letters from Funds Returning Rieth-Riley's Contribution Payments ("Returned Contributions") | 2561-2565 |
| 76-10 | Rieth-Riley Ex. 10: November 8, 2018 Transcript of Hearing on Motions – *Thompson v. Stockwell* ("*Thompson* Hr'g Tr.") | 2566-2664 |
| 76-11 | Rieth-Riley Ex. 11: Class Action Complaint – *Thompson v. Stockwell* ("*Thompson* Compl.") | 2665-2669 |
| 76-12 | Rieth-Riley Ex. 12: Second Amended Class Action Complaint – *Thompson v. Stockwell* ("*Thompson* Second Am. Compl.") | 2700-2745 |
| 76-13 | Rieth-Riley Ex. 13: July 18, 2018 Assent of Participation ("Assent of Participation") | 2746-2747 |
| 76-14 | Rieth-Riley Ex. 14: Defendants' Motion for Evidentiary Hearing and/or Reconsideration of Opinion and Order Granting Preliminary Injunction and Denying Defendants' Motion to Dismiss [32] and/or for Clarification of Opinion and Order – *Thompson v. Stockwell* ("*Thompson* Mot. Evid. Hr'g") | 2748-2941 |
| 76-15 | Rieth-Riley Ex. 15: August 18, 2018 Letter from MITA to Local 324 Rescinding POA for Multiple Contractors ("MITA POA Rescission") | 2942-2950 |

| *R.* | *Description* | *PageID #* |
|---|---|---|
| 76-16 | Rieth-Riley Ex. 16: August 9, 2018 Rescission of POA from Rieth-Riley to MITA ("Rieth-Riley POA Rescission") | 2951-2953 |
| 76-17 | Rieth-Riley Ex. 17: October 11, 2018 Letter from Rieth-Riley to Local 324 Regarding Section 9(a) Relationship ("Ltr. re: Section 9(a) Agreement") | 2954-2955 |
| 76-18 | Rieth-Riley Ex. 18: 1993 Recognition Agreement Between Rieth-Riley and Local 324 ("Recognition Agreement") | 2956-2960 |
| 76-19 | Rieth-Riley Ex. 19: Defendants' Motion to Dismiss Second Amended Class Action Complaint – *Thompson v. Stockwell* ("*Thompson* Mot. to Dismiss") | 2961-3236 |
| 76-20 | Rieth-Riley Ex. 20: Ajax Paving Industries, Inc. Memorandum of Understanding ("MOU") | 3237-3239 |
| 76-21 | Rieth-Riley Ex. 21: Ajax Paving, Inc. Pre-Memorandum of Understanding Checks Returned by Local 324 ("Returned Ajax Checks") | 3240-3250 |
| 76-22 | Rieth-Riley Ex. 22: January 7, 2019 Letter to Ajax Paving Industries, Inc. Employee Regarding Memorandum of Understanding ("Ajax MOU Letter") | 3251-3252 |
| 76-23 | Rieth-Riley Ex. 23: Order Modifying Injunction, Denying Stay Pending Appeal [36], and Denying Motion to Reconsider [35] – *Thompson v. Stockwell* ("*Thompson* Mot. to Reconsider Order") | 3253-3266 |
| 76-24 | Rieth-Riley Ex. 24: Opinion and Order Granting Plaintiffs' Motion for Preliminary Injunction [23] and Denying Defendants' Motion to Dismiss [25] – *Thompson v. Stockwell* ("*Thompson* Order") | 3267-3283 |
| 76-25 | Rieth-Riley Ex. 25: June 1, 2020 Letter from Local 324's Attorney Requesting Documentation from Rieth-Riley | 3284-3286 |

| *R.* | *Description* | *PageID #* |
|---|---|---|
| | ("Local 324 Info. Request") | |
| 76-26 | Rieth-Riley Ex. 26: Letters Between Rieth-Riley and Local 324 Regarding Vacation and Holiday Fund and Fringe Benefit Contributions ("Ltr. re: Fringe Benefit Contributions") | 3287-3290 |
| 76-27 | Rieth-Riley Ex. 27: January 21, 2022 Decision by Administrative Law Judge Muhl – *Rieth-Riley Construction Co., Inc. v. Local 324, Int'l Union of Operating Engineers* ("Jan. 2022 NLRB Order") | 3291-3358 |
| 76-28 | Rieth-Riley Ex. 28: July 18, 2022 Decision by Administrative Law Judge Muhl - *Rieth-Riley Construction Co., Inc. v. Local 324, Int'l Union of Operating Engineers* ("July 2022 NLRB Order") | 3359-3403 |
| 76-29 | Rieth-Riley Ex. 29: Declaration of Emily A. Kile-Maxwell ("Kile-Maxwell Decl.") | 3404-3405 |
| 77 | Plaintiffs' Motion for Summary Judgment ("Funds' Mot. Summ. J.") | 3406-3434 |
| 77-1 | Index of Exhibits in Support of Plaintiffs' Motion for Summary Judgment | 3435 |
| 77-2 through 77-7 | Funds' Exs. 1 through 6 ("Funds' Trust Agreements") | 3436-3609 |
| 77-8 | Funds' Ex. 7: Policy on Payment ("Payment Policy") | 3610-3615 |
| 77-9 | Funds' Ex. 8: Road Agreement | 3616-3661 |
| 77-10 | Funds' Ex. 9: Audit Letter 10-1-19 ("Audit Letter") | 3662-3663 |
| 77-11 | Funds' Ex. 10: LaLonde Declaration dated 10-6-20 ("First LaLonde Decl.") | 3664-3669 |
| 77-12 | Funds' Ex. 11: LaLonde Declaration dated 12-16-22 ("Second LaLonde Decl.") | 3670-3673 |
| 77-13 | Funds' Ex. 11(a): Fringe Reports 10-20 through 9-21 ("Contribution Reports Pt. 1") | 3674-3793 |

| *R.* | *Description* | *PageID #* |
|---|---|---|
| 77-14 | Funds' Ex. 11(b): Fringe Reports 10-21 through 3-22 ("Contribution Reports Pt. 2") | 3794-3857 |
| 77-15 | Funds' Ex. 11(c): Fringe Reports 4-22 through 9-22 ("Contribution Reports Pt. 3") | 3858-3928 |
| 77-16 | Funds' Ex. 12: Nichols Declaration dated 12-14-22 ("Nichols Decl.") | 3929-3932 |
| 77-17 | Funds' Ex. 13: Rieth-Riley's Response to Second Requests for Admission | 3933-3938 |
| 77-18 | Funds' Ex. 14: Rieth-Riley's Response to Second Set of Interrogatories | 3939-3957 |
| 77-19 | Funds' Ex. 15: DOL/EBSA Field Assistance Bulletin No. 2008-01 | 3958-3964 |
| 77-20 | Funds' Ex. 16: DOL Class Prohibited Transaction Exemption (PTE) 76-1 | 3965-3972 |
| 78 | Notice of Hearing on Motions for Summary Judgment | 3973 |
| 81 | Rieth-Riley's Response to Funds' Motion for Summary Judgment ("Rieth-Riley Summ. J. Resp.") | 3978-4011 |
| 82 | Funds' Response to Rieth-Riley's Motion for Summary Judgment ("Funds' Summ. J. Resp.") | 4012-4039 |
| 83 | Rieth-Riley's Reply in Support of Motion for Summary Judgment ("Rieth-Riley's Summ. J. Reply") | 4040-4048 |
| 84 | Funds' Reply in Support of Motion for Summary Judgment ("Funds' Summ. J. Reply") | 4049-4058 |
| 84-1 | Index of Exhibits in Support of Funds' Reply in Support of Motion for Summary Judgment | 4058 |
| 84-2 | Funds' Reply Ex. 1: 2016 Policy on Payment of Employer Contributions and Audit Procedures | 4059-4064 |
| 84-3 | Funds' Reply Ex. 2: 2008 Policy on Payment of Employer Contributions and Audit Procedures | 4065-4070 |

| *R.* | *Description* | *PageID #* |
|------|---------------|------------|
| 86 | Opinion and Order Granting Defendant's Motion for Summary Judgment, Denying Plaintiffs' Motion for Summary Judgment, and Dismissing Case With Prejudice ("Summ. J. Order") | 4072-4101 |
| 87 | Judgment Dated July 6, 2023 | 4102 |
| 88 | Corrected Judgment Dated July 18, 2023 ("Corrected Judgment") | 4103 |
| 89 | Order Striking Judgment | 4104 |
| 90 | Notice of Appeal | 4105-4107 |
| 92 | Transcript of Motion Hearing Held on 6/21/2023 ("Summ. J. Hr'g Tr.") | 4109-4131 |