**23-1699**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

## OPERATING ENGINEERS' LOCAL 324
## FRINGE BENEFIT FUNDS;  TRUSTEES
## OF THE OPERATING ENGINEERS' LOCAL
## 324 FRINGE BENEFIT FUNDS,

*Plaintiffs-Appellants,*

**v.**

## RIETH-RILEY CONSTRUCTION CO., INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Hon. David M. Lawson
Case No. 20-10323

---

### APPELLANTS' REPLY BRIEF

---

WEISMAN YOUNG & RUEMENAPP, P.C.
By:    Nancy H. Pearce (P(P38323)
       Daniel G. LeVan (P48776)
30100 Telegraph Road, Suite 428
Bingham Farms, MI  48025
Phone No.:  248.258.2700
Fax No.:  248.258.8927
npearce@wyrpc.com
dlevan@wyrpc.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION .................................................................................. 1

ARGUMENT .......................................................................................... 4

I.    THE FUNDS' REQUEST TO AUDIT PRE-CBA-EXPIRATION
      PERIODS ....................................................................................... 4

      A.    The Funds properly pled a claim to compel an audit regarding pre-
            expiration time periods ....................................................... 4

      B.    The Funds did not forfeit the right to audit pre-expiration time periods ... 8

      C.    The existence of specific cause to audit certain periods does not
            preclude audit relief as to other time periods ........................... 12

      D.    The argument that the Funds' audit request could not be "bifurcated"
            is erroneous ........................................................................ 12

II.   THE FUNDS' REQUEST TO AUDIT POST-CBA-EXPIRATION
      PERIODS ..................................................................................... 13

      A.    Neither Defendant nor the district court meaningfully addressed the
            Funds' primary arguments or the most directly applicable Sixth
            Circuit authorities ............................................................... 13

      B.    The Funds did not have the power to enter into or refuse to extend the
            Road Agreement – The Funds refused Defendant's contributions for a
            period only because applicable law and the Funds' Trust Agreements
            precluded acceptance of the contributions .............................. 16

      C.    Defendant is independently bound by both its contribution reports
            and the Funds' Trust Agreements .......................................... 17

III.  THE FUNDS' LMRA CLAIM ....................................................... 19

CONCLUSION .................................................................................... 22

CERTIFICATE OF COMPLIANCE .................................................... 23

CERTIFICATE OF SERVICE ............................................................. 24

## TABLE OF AUTHORITIES

**Cases**

Bassett v. NCAA, 528 F.3d 426 (6th Cir. 2008) ........................................6

Blanchet v. Charter Communs., LLC, 27 F.4th 1221 (6th Cir. 2022)....................21

Carter-Jones Lumber Co. v. Dixie Distrib. Co., 166 F.3d 840 (6th Cir. 1999).......13

Cent. States Pension Fund v. Cent. Transp., Inc., 472 U.S. 559 (1985).................12

Cent. States Pension Fund v. Gen. Materials, Inc.,

    535 F.3d 506 (6th Cir. 2008) ...........................................................1, 14

Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.,

    883 F.2d 454 (6th Cir. 1989) ......................................... 1, 14, 16, 17, 19

Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.,

    365 F.3d 435 (6th Cir. 2004) ...........................................................13

Gavitt v. Born, 835 F.3d 623 (6th Cir. 2016) ............................................6

Hall v. City of L.A., 697 F.3d 1059 (9th Cir. 2012)................................10

Howe v. City of Akron, 801 F.3d 718 (6th Cir. 2015) .................................. 10, 20

Int'l Union of Auto. Workers v. Park-Ohio Indus.,

    687 F. Supp. 338 (N.D. Ohio 1987) .....................................................13

Merrimen v. Paul F. Rost Elec., Inc., 861 F.2d 135 (6th Cir.  1988) ......................16

Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Nw. Const., Inc.,

    116 F.3d 1480 (6th Cir. 1997) ......................................... 1, 14, 15, 17, 19

Nationstar Mortg. LLC v. River Glider Ave. Tr.,

    No. 20-17271, 2022 U.S. App. LEXIS 1627 (9th Cir. Jan. 20, 2022)................10

Ohio Nat. Life Ins. Co. v. United States, 922 F.2d 320 (6th Cir. 1990).................11

Operating Engineers' Local 324 Fringe Ben. Funds v. Rieth-Riley Constr. Co.,

    43 F.4th 617 (6th Cir. 2022) ("Rieth Riley I")...................... 2, 8, 10, 20

Plumbers, Pipe Fitters v. B & B Mech. Servs., Inc.,

    813 F.3d 603 (6th Cir. 2015)......................................... 1, 14, 15, 17, 19

Rhoades v. United States, 953 F. Supp. 203 (S.D. Ohio 1996)...............................11

Robbins v. Lynch, 836 F.2d 330 (7th Cir.  1988)......................................................15

Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491 (9th

   Cir. 1990).............................................................................................................18

United States v. Campbell, 168 F.3d 263 (6th Cir. 1999) ........................................8

**Statutes**

ERISA § 502, 29 U.S.C. § 1132(g)(2)......................................................................13

**Rules**

6 Cir. R. 32(b) ..........................................................................................................23

Fed.R.App.P. 32(a)(5)...............................................................................................23

Fed.R.App.P. 32(a)(6)...............................................................................................23

Fed.R.App.P. 32(a)(7)(B) .........................................................................................23

Fed.R.App.P. 32(f)....................................................................................................23

Fed.R.Civ.P. 12(b)(6)..................................................................................................6

Fed.R.Civ.P. 8(a)(1)-(3).............................................................................................5

## INTRODUCTION

The arguments in Defendant's appeal brief fail to refute that the Funds are entitled to their requested audit relief. Defendant *fails to address* the Funds' detailed argument as to why the contribution reports establish an independent basis to enforce Defendant's Trust Agreement and audit obligations pursuant to <u>Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Nw. Const., Inc.</u>, 116 F.3d 1480 (6th Cir. 1997), <u>Plumbers, Pipe Fitters v. B & B Mech. Servs., Inc.</u>, 813 F.3d 603 (6th Cir. 2015), and <u>Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.</u>, 883 F.2d 454 (6th Cir. 1989).

Defendant's appeal brief in large part ignores its hundreds of contribution reports submitted to the Funds *after expiration of the CBA* which include *clear and express language of contracting*, as follows:

> By filing this report, the above-named Employer certifies the accuracy of information of the report and <u>agrees to be bound by</u> all terms of payment to the foregoing named Funds, as set forth in the current applicable Collective Bargaining Agreements between Operating Engineers Local 324 and Employer Associations, and to <u>all the terms of the Trust Agreements of these Funds</u>. [emphasis added]

Defendant devotes only a few lines in its appeal brief to addressing the contribution reports, referring to the district court's characterization to them as "boilerplate" and this Court's opinion in <u>Cent. States Pension Fund v. Gen. Materials, Inc.</u>, 535 F.3d 506 (6th Cir. 2008). Appellees' Br. p. 31.

1

Scrutiny of Defendant's appeal brief and the lower court decision reveals that, rather than focus on the arguments that were *actually* made by the Funds post-remand, the district court, and Defendant in their present appeal brief, largely focus on and respond to arguments that had been made by the Funds in response to the *prior* motion to dismiss which were *not* made post-remand.  In fact, the Funds narrowed and refined their arguments post-remand, focusing on their claims to enforce their audit rights, and relying largely on Defendant's independent obligations under the Trust Agreements and contribution reports.

Defendant contends that the Funds' arguments made in the district court and this Court pre-remand, and this Court's decision in <u>Rieth Riley I</u>, limited the arguments and claims that could be raised by the Funds post-remand.  Defendant is incorrect.  Nowhere in <u>Rieth-Riley I</u> did this Court state that the Funds were limited to raising the exact same arguments and claims on remand.  Defendant's waiver arguments are otherwise without merit for a number of reasons, including: (a) the timing and subject matter of the prior appeal - a preliminary jurisdictional motion – not a merits motion, (b) the lack of any clear mandate from this Court limiting the merits arguments that could be made by the Funds post-remand, (c) the lack of applicable supporting legal authority, and (d) the lack of any prejudice to Defendant in allowing the Funds' refined arguments post-remand.

2

Defendant repeatedly suggests that the Funds' positions and arguments are *"disingenuous." E.g.,* Appellees' Br. P. 30. But if anything is disingenuous, it is Defendant's arguments and mischaracterizations of the Funds' claims and positions. For example, Defendant incorrectly claims that the Funds' complaint did not assert a claim to audit pre-CBA-expiration time periods. Similarly, Defendant repeatedly claims *the Funds* "withheld" their assent to form a labor contract prior to discovery of the 9(a) recognition agreement, *e.g.,* Appellees' Br. p. 20, but multiemployer funds are only third-party beneficiaries of labor agreements and the Funds here <u>could not have formed or extended the Road Agreement at issue</u>.

Defendant also incorrectly claims that "nothing about the facts . . . has changed since this Court issued Rieth Riley I". Appellees' Br. P. 17. In fact, there were significant changes: (1) discovery confirmed that the Funds were *not* and *never were* litigating contribution claims against Defendant before the NLRB (contrary to an erroneous finding the district court repeatedly had stated and relied upon in its prior jurisdiction decision); and (2) Defendant *acknowledged* in discovery responses that it had not submitted contributions on all persons, but refused to provide an explanation of the factors it used to determine which employees to submit contributions for and which to withhold contributions. Df's Resp. to 2d Rogs, No. 11-12, p. 12-14, *R.* 77-18, PageID 3951-3953.

Lastly, the policy and purpose underlying the legal standards and remedies available in ERISA collection actions, implicit in the ERISA statute, is to make it *easier* for multiemployer funds to collect delinquent contributions. *See, e.g.,* Behnke, 883 F.2d at 459 (ERISA and its provision authorizing remedies "were instituted to assure prompt payment of contributions and to facilitate recovery of costs incurred in recovering delinquencies"). The Funds submit that the approach of the district court and Defendant in this case, however, inappropriately turn those standards on their head by making it extremely difficult and burdensome for the Funds to obtain basic audit relief (*e.g.*, extremely heightened pleading and evidentiary standards).

## ARGUMENT

## I. THE FUNDS' REQUEST TO AUDIT PRE-CBA-EXPIRATION PERIODS

### A. The Funds properly pled a claim to compel an audit regarding pre-expiration time periods

Defendant argues that post-remand the Funds asserted a "brand new" claim to compel an audit as to pre-CBA-expiration time periods. Appellees' Br. P. 16. Defendant argues that the district court properly dismissed the Funds' audit relief claim as to that time period on the basis that the Funds had not pled such a claim and that by the Fund requesting the production of records "through the date of the audit," the district court was precluded from "bifurcating" a pre-expiration audit from a post-expiration audit. *Id.*

4

Defendant is incorrect. The Funds' complaint clearly satisfied federal court notice pleading standards. In stating a claim for relief, a pleading need only contain "a short and plain statement of the court's jurisdiction", "a short and plain statement of the claim showing that the pleading is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed.R.Civ.P. 8(a)(1)-(3) (emphasis added).

As shown below, the Complaint expressly references and seeks to enforce the audit requested in the fund payroll auditor's October 1, 2019 correspondence to Defendant. First Amended Complaint ("Complaint") ¶ 18-19 & relief requested 1 & 2 [ECF 12, PageID# 67-68, 70-71]; Nichols Declaration, *R.* 77-16, PageID 3929-3932. The letter requested an audit of the records of Defendant's locations in Michigan for periods of time since the most recent audits, from January or June 2016, 2017 or 2018 through the present. Audit Letter, *R.* 77-10, PageID 3662-3663; Auditor Declaration ¶3, *R.* 77-16, PageID 3929-3932. *See, also,* 10-6-20 Auditor Dec., *R.* 27-17, PageID 1667-1668. Thus, the audit request was not limited to periods after the May 31, 2018 expiration of the Road Agreement. Three of Defendant's work locations had audit time frames starting *before* June 2018, *i.e.* Charlevoix (January 2017 through present), Lansing (January 2017 through present), and Ada (January 2016 through present). *Id.*

It is well-established, in the context of Rule 12(b)(6) motions and/or motions for judgment on the pleadings, that documents referred to in a complaint and which are central to the claims, are properly considered as part of the pleading. <u>Bassett v. NCAA</u>, 528 F.3d 426 (6th Cir. 2008); <u>Gavitt v. Born</u>, 835 F.3d 623, 640 (6th Cir. 2016).

The audit-related allegations and request for relief in the First Amended Complaint state, in relevant part:

> 18.    On October 1, 2019, the Funds through their auditors requested Defendant to produce records for an audit of Defendant. In response, Defendant produced some records but refused to produce other requested records, including payroll information on all employees, Federal and Michigan tax forms, documents relating to transactions with subcontractors and information on Defendant's jobs and equipment and work performed on them.

> 19.    Defendant maintains indebtedness to the Funds for work performed by its employees from August 1, 2019 onward when Defendant began selectively paying contributions for some but not all of its employees performing covered work. <u>Defendant may owe additional money to the Funds based on other work performed by employees of Defendant or work of its subcontractors, the amount of which can only be determined through Defendant producing records that the Funds requested to enable completion of the requested audit</u>.

> \* \* \*

> 22.    Defendant and any successor in interest to or alter ego of Defendant maintains obligations to:

> > a.    <u>Produce all books and records necessary for the Funds to complete their audit to determine amounts Defendant and its subcontractors owe for covered work **from dates requested through the date of the audit**</u>, including payroll records of all

6

employees who worked in the State of Michigan, documents on subcontracts, information on Defendant's individual road construction projects, and work performed on such projects and on pieces of equipment.

b.    Pay the Funds all amounts determined to be owing as disclosed in an audit or other means.

\* \* \*

WHEREFORE, Plaintiffs pray for this Honorable Court to issue a judgment commanding Defendant and any successor in interest to or alter ego of Defendant to:

1.    Produce all books and records necessary for the Funds to determine amounts Defendant and its subcontractors owe for covered work from dates requested through the date of the audit, including payroll records of all employees who worked in the State of Michigan, documents on subcontracts, information on Defendant's individual road construction projects, and work performed on such projects and on pieces of equipment.

2.    Pay the Funds all amounts determined to be owing as disclosed in an audit or other means. . . .

First Amended Complaint p. 7-11, *R. 12*, PageID 67-71 (emphasis added).

The Funds' First Amended Complaint specifically pled and sought to enforce the audit request set forth in the fund auditor's October 1, 2019 correspondence, which clearly sought to audit pre-expiration time periods as to several of Defendant's locations.   This more-than-satisfies federal notice pleading standards.

**B.    The Funds did not forfeit the right to audit pre-expiration time periods**

Defendant argues the Funds "forfeit[]ed]" the right to seek relief compelling an audit of pre-expiration time periods, by not arguing pre-expiration time periods in response to the prior jurisdictional motion or the prior appeal of that ruling. Appellees' Br. P. 37. Without supporting authority, Defendant argues that the Funds were required to make the argument when its complaint was initially on the "chopping block" of Defendants' initial motion to dismiss. Appellees' Br., p. 39.

But Defendant's motion to dismiss was based *solely* on a claimed of lack of subject matter jurisdiction[1] - and was ultimately *rejected* by this court in Rieth Riley I. It was not a motion on the merits of the claims, and thus did not put the Complaint on a merits-based "chopping block". Indeed, a very point of this Court's decision in Rieth Riley I was that merits issues could not properly be decided pursuant to Defendant's jurisdictional motion at issue in that appeal.

This Court in Rieth Riley I issued a general remand. A general remand permits the district court "authority to address all matters as long as remaining consistent with the remand." United States v. Campbell, 168 F.3d 263, 265 (6th Cir. 1999) ("Remands . . . can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the district court and create a narrow

_____

[1] *See* Def's 8/25/20 Motion to Dismiss for Lack of Subject Matter Jurisdiction, *R.* 19, PageID 140-141.

framework within which the district court must operate. . . .  General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand.  In essence, the mandate rule is a specific application of the law-of-the-case doctrine. . . 'the trial court may consider those issues not decided expressly or impliedly by the appellate court or a previous trial court'") (internal citations omitted).  "The difference between the limited mandates and the general mandates is the presence of limiting language." United States v. O'Dell, 320 F.3d 674, 680 (6th Cir. 2003).

Once it was determined by this Court that Defendant's jurisdiction motion should have been denied, and issued a general remand without placing any explicit limits on the arguments that could be made by the Funds on the merits, the Funds were free to refine their merits arguments on remand – so long as consistent with the pleadings – and it cannot be disputed that the pleadings here *were* consistent as discussed above.  Indeed, neither Defendant, nor the district court in its decision presently at issue, cited any controlling authority holding that a party opposing a jurisdictional challenge motion is limited to making the exact same merits arguments or relief requests during the remainder of the case.

There is no language in this Court's opinion in Rieth Riley I explicitly limiting the arguments or requests for relief that could be made by the Funds on remand. The mandate language reads: "[W]e reverse the district court's dismissal of the

Funds' claim for lack of subject-matter jurisdiction and remand for proceedings consistent with this decision." Operating Engineers' Local 324 Fringe Ben. Funds v. Rieth-Riley Constr. Co., 43 F.4th 617, 624 (6th Cir. 2022) ("Rieth Riley I").

"For a prior decision to control [under the law of the case doctrine], the prior tribunal must have actually decided the issue." Howe v. City of Akron, 801 F.3d 718, 739–40 (6th Cir. 2015). Courts permit parties to present new or different arguments on remand that are not clearly precluded by the mandate from the appeals court. It has been stated that "the rule of mandate allows a lower court to decide anything not foreclosed by the mandate" and the lower court is limited only "when the scope of the remand is clear." Hall v. City of L.A., 697 F.3d 1059, 1067 (9th Cir. 2012) ("when a court is confronted with issues that the remanding court never considered, the 'mandate[ ] require[s] respect for what the higher court decided, not for what it did *not* decide'"); Nationstar Mortg. LLC v. River Glider Ave. Tr., No. 20-17271, 2022 U.S. App. LEXIS 1627, at 4 (9th Cir. Jan. 20, 2022) (holding district court erred in refusing to consider new arguments on remand where prior appellate decision "did not impose clear limits on the scope of the remand").

There otherwise is no good rationale or policy basis, *e.g.,* prejudice to the opposing party, to declare a forfeiture of the Funds' argument in the present context. It is commonplace for parties in litigation to refine their arguments over time. There is no good reason why a party which makes legal arguments which are successful in

10

opposing a motion to dismiss a case for lack of jurisdiction should be limited to making the identical legal arguments throughout the remainder of the case. Moreover, the motion to dismiss for lack of subject matter jurisdiction was heard and decided by the district court before discovery was even completed.

The sole issue in the previous appeal was subject matter jurisdiction, i.e. whether the lower court even had the power to hear the case. Sixth Circuit precedent recognizes the preliminary nature of a motion challenging jurisdiction, holding that factual findings made in that context are limited to the jurisdictional issue. Ohio Nat. Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990) (binding effect of factual findings made in addressing a factual challenge to subject matter jurisdiction is limited to the jurisdictional issue); Rhoades v. United States, 953 F. Supp. 203, 205–06 (S.D. Ohio 1996) ("The district court's factual findings [in addressing a factual challenge to subject matter jurisdiction] do not bind the Court in future proceedings")

Further, "the rationale for why [this Court] generally do[es] not entertain issues not raised below [is] that it is essential that parties have the opportunity to offer all the evidence they believe relevant to the issues. . . . When a new argument presents a question of pure law, neither party has been denied the opportunity to offer relevant evidence in making its case," and "both sides have had a full opportunity to present whatever legal arguments they may have on this particular

11

issue." United States v. Hamm, 952 F.3d 728, 743 (6th Cir. 2020) (internal quotations omitted). Here, this Court's decision in Rieth Riley I resulted in a remand to the district court, where the case continued, discovery was permitted, and both parties had the opportunity to file dispositive motions. *See, e.g.,* Post-Remand Order Amending Scheduling Order, *R.* 72, PageID 2451.

### C.   The existence of specific cause to audit certain periods does not preclude audit relief as to other time periods

Defendant's brief does not refute that the Supreme Court has specifically authorized random audits provided for in trust agreements. *See, e.g.,* Cent. States Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 584 n. 4 (1985). Given the well-established rule that random audits (without any specific cause to audit) may be judicially enforced by Court action, *see id.*, the fact that the Complaint here cites specific cause to audit a portion of post-expiration periods does not preclude, or establish a basis for denying, audit relief as to all pre-expiration time periods which are also referenced in the Complaint.

### D.   The argument that the Funds' audit request could not be "bifurcated" is erroneous

Defendant argues that the district court correctly held that it could not "bifurcate" its ruling to order an audit for pre-expiration periods but not for post-expiration periods. This rationale for denying relief was incorrect. In fact, it is fundamental that federal courts may fashion appropriate equitable relief. *See, e.g.,*

12

ERISA § 502, 29 U.S.C. § 1132(g)(2), invoked in the Funds' Complaint, *R.* 12 ¶ 21, PageID 69 (permitting in delinquent contribution actions "such other legal or equitable relief as the court deems appropriate" in addition to the other remedies specifically provided therein). *See, also*, Int'l Union of Auto. Workers v. Park-Ohio Indus., 687 F. Supp. 338, 340 (N.D. Ohio 1987) ("[T]he Court has broad discretion in fashioning a remedy. ERISA grants the Court wide discretion in fashioning legal and equitable relief to make the plan whole and protect the rights of beneficiaries. . . . The standard the Court should use in fashioning relief is what would best carry out the purposes of the plan").

Indeed, this is the very nature of equitable relief. *See, e.g.,* Coal. for Gov't Procurement v. Fed. Prison Indus., Inc., 365 F.3d 435, 460 (6th Cir. 2004) ("It is well-established that federal courts possess broad discretion to fashion equitable remedies"); Carter-Jones Lumber Co. v. Dixie Distrib. Co., 166 F.3d 840, 846 (6th Cir. 1999) ("[f]ederal courts are courts in law and in equity, and a court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in a particular case") (emphasis added).

## II.   THE FUNDS' REQUEST TO AUDIT POST-CBA-EXPIRATION PERIODS

### A.   Neither Defendant nor the district court meaningfully addressed the Funds' primary arguments or the most directly applicable Sixth Circuit authorities

13

Defendants' appeal brief gives extremely limited attention to the hundreds of Contributions Reports submitted by Defendant to the Fund *after expiration of the CBA* and which included *clear and express language of agreement to comply with the expired CBA and to the Funds' Trust Agreements.* Defendant's brief on appeal, and the district court's opinion, *fail to address* the Funds' primary argument as to why Sixth Circuit precedent makes clear Defendant's contribution reports are sufficient to support an ERISA claim.

In their summary judgment briefs to the District Court, and their appeal brief to this Court, the Funds devoted at least five pages of detailed, substantive briefing showing that Sixth Circuit precedent in <u>Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Nw. Const., Inc.</u>, 116 F.3d 1480 (6th Cir. 1997), <u>Plumbers, Pipe Fitters v. B & B Mech. Servs., Inc.</u>, 813 F.3d 603 (6th Cir. 2015), and <u>Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.</u>, 883 F.2d 454 (6th Cir. 1989), compel a finding of ERISA jurisdiction given the language and timing of Defendant's contribution reports in this case. *See, e.g.,* Funds' Summary Judgment Brief in District Court p. 19-23, *R.* 77, PageID 3429-3433; Funds' Resp. Def. SJ Motion, p. 19-23, *R.* 82, PageID 4034-4038; Appellants' Brief, p. 23-24, 41-45. The Funds' analysis explains in detail that, under this Court's ruling in <u>B&B Mechanical</u>, the ruling in <u>General Materials</u> (relied upon by the district court in its initial jurisdictional decision to disregard Defendant's reports), is limited to its facts, and

14

that given their submission *after* the expiration of the CBA, Defendant's contribution reports are significant evidence of an obligation independent of the expired CBA and/or a Section 9(a) statutory duty and thus support ERISA liability.

When Defendant gets around to addressing this argument, it gives it extremely "short-shrift".  Appellees' Brief, p. 30-31, 35.  Defendant basically cites General Materials and calls the contribution language "boilerplate."  P. 31.  Defendant thus ignores the detailed and lengthy analysis in the Funds' brief which distinguishes General Materials, ignores Sixth Circuit authority in B&B Mechanical indicating that General Materials is limited to its facts and that post-expiration contribution reports are meaningful evidence of an independent obligation enforceable under ERISA.

Notably, the District Court, in its present opinion being appealed, like Defendants' present appeal brief, fails to address the points made in this section of the Funds' brief.   For the reasons already stated by the Funds, this Court's opinions in B&B Mechanical and Bricklayers[2] compels a conclusion that the audit relief requested by the Funds is enforceable under ERISA as well as the LMRA.

---

[2]Indeed, as noted previously, this Court in Bricklayers observed that "*[u]nilateral* actions by an employer that foster an impression that the employer intends to be bound by an expired collective bargaining agreement are sufficient to trigger ERISA liability." 116 F.3d 1480, p. 3, *citing* Robbins v. Lynch, 836 F.2d 330 (7th Cir.  1988) (emphasis added).

15

**B. The Funds did not have the power to enter into or refuse to extend the Road Agreement – The Funds refused Defendant's contributions for a period only because applicable law and the Funds' Trust Agreements precluded acceptance of the contributions**

Defendants repeatedly argue that *the Funds* "withheld" their assent to form a labor contract prior to the 9(a) recognition agreement discovery – thus precluding "mutual assent". *See, e.g.,* Appellees' Br., p. 20. But it is fundamental that labor agreements are negotiated between the union and the employer, entities which are completely separate and distinct from the funds. Funds do not participate in the formation of the labor agreements. Funds enforce collective bargaining agreements in collection actions as a third-party beneficiary. *See, e.g.,* Behnke, 883 F.2d at 460.

Defendant's repeated argument that the Fund refused contributions from Rieth Riley for a period because the Funds allegedly did not want a contract with Defendant is incorrect and mischaracterizes the record. As noted, the Fund could not "form" or agree to extend the Road Agreement, as the Fund is a third-party beneficiary of a labor agreement between a union and an employer. *Id.*

As noted previously, it is explicitly recognized that funds are "force[d] . . . to be more vigilant as to the formalities of execution than are the parties to those agreements." Merrimen v. Paul F. Rost Elec., Inc., 861 F.2d 135, 139 (6th Cir. 1988). In fact, Defendant eventually *concedes* in its appeal brief that the Funds' positions in the Thompson litigation were based only on the "written agreement" requirement of LMRA § 302. Appellee's Br., p. 32. Due to the believed 8(f)

16

bargaining relationship that existed between the Union and the POA Contractors, the Funds' Trustees were of the belief that it was <u>illegal</u> to accept contributions from POA Contractors with whom the Union had indicated it was no longer engaging in multiemployer bargaining through MITA – but it ultimately turned out that there never was an 8(f) bargaining relationship between Rieth Riley and the Union during the relevant period.  So, the Funds' concerns with POA Contractors did not, in fact, apply to Rieth Riley, and the Sixth Circuit authorities which provide for ERISA jurisdiction based on contribution reports and/or Trust Agreements – post-contract expiration in a 9(a) setting – clearly do apply to support ERISA jurisdiction.  *See* <u>Bricklayers</u>, <u>B&B Mech.</u>, <u>Behnke</u> & discussion, *supra*.

### C.   Defendant is independently bound by both its contribution reports and the Funds' Trust Agreements

Defendant repeatedly argues that the Funds are only trying to enforce Defendant's statutory NLRA duties to comply with the expired CBA and/or that the Funds erroneously contend that there was "mutual assent" to the CBA by the Union and/or the Funds after discovery of the 9(a) recognition agreement.  In fact, the Funds are seeking to enforce Defendants' independent agreements and obligations under its contribution reports and the Funds' Trust Agreements.

For the reasons already set forth above, Defendant is independently bound by virtue of its contribution reports under Sixth Circuit precedent.   <u>Bricklayers</u>, <u>B&B Mechanical</u>, <u>Behnke</u>.

17

Separate and independent from its agreement to the Trust Agreements by submission of the contribution reports, Defendant became an "Employer" under (and bound by) the terms of the Trust Agreements once it became clear that Defendant legally could contribute to the Funds and contributions were accepted post-expiration.

Irrespective of whether the source of a contribution obligation is from an unexpired labor agreement or a statutory NLRA status quo obligation, an employer that is legally and properly contributing to the Funds is independently bound under the terms of the Funds' Trust Agreements. *See, e.g.,* Art. I(b) of each of the Trust Agreements ("**Employer** or **Contributing Employer** means: . . . (b) any other Employer engaged in work coming within the jurisdiction of the Union who contributes to the Trust Fund <u>or</u> who is obliged by a collective bargaining agreement, or other written agreement, to make Contributions to the Trust Fund") (emphasis added). *E.g., R.* 27-10, PageID 1493; *R.* 27-11, PageID 1529; *R.* 27-12, PageID 1551; *R.* 27-13, PageID 1574; *R.* 27-14, PageID 1602; *R.* 27-15, PageID 1627.

As noted in the Funds' primary brief, Appellant's Br. p. 29, the Ninth Circuit has specifically held that the fact an employer participates in a fund and accepts fund benefits for its employees is sufficient to bind the employer to the Trust Agreement's audit provisions. *See* <u>Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.</u>, 920 F.2d 1491 (9th Cir. 1990), where the Court held:

> While Miramar is not a signatory to the Trust Agreement, it is
> undisputed that it contributed to the Fund and intended its employees
> to receive the benefits from the Fund. Miramar would not make
> contributions if it did not intend its employees to receive benefits from
> the Fund.
>
> If Miramar's employees are participants in the Fund, then it necessarily
> follows that Miramar is an employer under the Trust Agreement.
> Miramar cannot have it both ways. The Trust Agreement contemplates
> that contributing employers be either signatories or contributors under
> a collective bargaining agreement and be bound to the terms of the
> Trust Agreement. Miramar and its employees cannot receive the
> benefits of the Fund yet escape its attendant burdens, in this case, the
> provision of the Trust Agreement permitting the Trustees to audit an
> employer's books and records.

*Id.* at 1494.

The district court ultimately ruled that, on this record, "no jury reasonably

could find that the parties mutually assented to enter an express or implied CBA after

the Road Agreement expired," 7/1/23 Decision p. 34, and that "no jury could find

that the parties agreed to extend the audit provisions beyond June 1, 2018 . . . ." *Id.*

p. 40. This was error because there were independent promises and obligations,

pursuant to the Trust Agreements, and contribution reports executed *after* the

expiration, which are enforceable under ERISA pursuant to this Court's decisions in

Bricklayers, B&B Mechanical, and Behnke, *supra*.

## III.   THE FUNDS' LMRA CLAIM

Defendant argues that this Court was "unequivocal" in holding the Funds

forfeited their LMRA claims. Appellees' Br. P. 45. Although this Court was

unequivocal in holding the Funds forefeited their "LMRA *arguments*" as a basis for reversing the district court prior jurisdictional dismissal on appeal, this Court did *not* say that the Funds had forever lost their LMRA *claims*.  Indeed, this Court's prior decision did <u>not</u> address the merits of the Funds' LMRA claims.  <u>Operating Engineers' Local 324 Fringe Ben. Funds v. Rieth-Riley Constr. Co.</u>, 43 F.4th 617, 621 n.1 (6th Cir. 2022).  It stated in a footnote that the Funds had not sufficiently "develop[ed] their LMRA argument [and therefore] forefeit[ed] it" - and declined to address the Funds' "LMRA argument" as to the jurisdictional issue on appeal.  *Id.* This Court did not say the Funds were barred from asserting LMRA claims on remand.  *Id.*  Thus, this Court was *not* "unequivocal" as to whether the Funds were precluded from asserting LMRA claims on remand.  Indeed, the district court conceded in its opinion that "there is some question whether the LMRA claim is still in play . . . ."  July 2023 Opinion, p. 28, *R.* 86, PageID 4099.

"For a prior decision to control [under the law of the case doctrine], the prior tribunal must have actually decided the issue."  <u>Howe v. City of Akron</u>, 801 F.3d 718, 739–40 (6th Cir. 2015).  Here, this Court did not decide whether there was substantive merit to the Funds' LMRA claims and did not say that the Funds were precluded from asserting those claim post-remand.

The Funds submit there was no compelling reason or prejudice to Defendant that would justify precluding the LMRA claims on remand.  The rule that an

argument not developed in the lower court is forfeited on appeal "is justified by two main policy goals.  First, the rule eases appellate review by having the district court first consider the issue.  Second, the rule ensures fairness to litigants by preventing surprise issues from appearing on appeal."  Blanchet v. Charter Communs., LLC, 27 F.4th 1221, 1228 (6th Cir. 2022).  Neither policy goal is implicated in the present context – once the appeal was decided.  The prior remand resulted in a return of the case to the district court for discovery and proceedings on the merits.  The district court permitted discovery as to any and all issues, and the opportunity to raise and develop any issues in cross-summary judgment motions and the resulting briefing. *See, e.g.,* Post-Remand Order Amending Scheduling Order, *R.* 72, PageID 2451.

Thus, there would have been no prejudice or unfairness to Defendant for those claims to have been considered on remand.  There was an opportunity for Defendant to take discovery on any issues it desired, prior to filing of motions, and Defendant had a full and fair opportunity to brief out and argue the claims (just as it would any other claims) prior to the district court's ultimate decision.

## CONCLUSION

Plaintiff-Appellant Funds respectfully request that this Court reverse the District Court's Opinion and Order Granting Defendant's Motion for Summary Judgment, Denying Plaintiffs' Motion for Summary Judgment, and Dismissing Case With Prejudice, *R.* 86, PageID 4072-4095, and remand for further proceedings.

Respectfully submitted,

/s/Nancy Harris Pearce
Weisman Young & Ruemenapp, P.C.
Attorney for Appellants
npearce@wyrpc.com
P38323

/s/Daniel G. LeVan
Weisman Young & Ruemenapp, P.C.
Attorney for Appellants
dlevan@wyrpc.com
P48776

Dated:  January 12, 2024

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed.R.App.P. 32(f) and 6 Cir. R. 32(b), it contains 5,225 words.

This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

/s/ Daniel G. LeVan
Daniel G. LeVan (P48776)
Attorney for Appellants

23

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 12, 2024, the foregoing brief was served upon all parties by filing it with the Court using the ECF system which will send notification of the filing to the following attorneys for Appellee:

Philip Gutwein, II

Emily A. Kile-Maxwell

Dated: January 12, 2024                    /s/ Daniel G. LeVan
                                           Daniel G. LeVan (P48776)
                                           Attorney for Appellants

W:\Mapped Drives\30000\NHP-WY\56074.025\Appeal\SIxth Circuit\Reply Brief final.docx

24